a). Although "mental health concerns" must be considered when a prisoner is transferred to Pontiac, there is no requirement that mentally ill prisoners be excluded and there is no adequate systematic program for screening and evaluating the mental health status of prisoners being proposed for transfer... In fact, prisoners known to have histories of serious mental illness are transferred to Pontiac...

b). There is no requirement that prisoners who decompensate at Pontiac be removed from the facility and no adequate systematic program for identifying such prisoners... Instead, defendants ignore the obvious signs of prisoners' mental deterioration despite their knowledge that the environment at Pontiac tests even the strongest inmate...

c). There is no adequate systematic program to provide care at Pontiac for seriously mentally ill prisoners... Instead, the mental health system operates as an adjunct to the harsh punishment system, by "treating" prisoners with techniques that are, in intent and purpose, methods of punishment which will make seriously ill prisoners sicker, not better... These techniques include

1). Ordering the suicidal inmate to undergo extreme isolation while lying naked in cold, stripped cells, sometimes while bound in four-point restraints and while injected with mind-numbing drugs against his will;

2). allowing guards to handle an inmate more roughly than is necessary while in the Health Care Unit or while bringing him to the Unit or a crisis cell in the cellhouses;

3). Withholding talking therapy from an inmate because he is demonstrating disruptive behavior that is directly caused by his mental illness...

d). Mental Health Treatment at Pontiac lacks the commitment of a psychiatrist to identify and treat in an individualized manner those prisoners suffering from serious mental disorders.... Instead, the prison has been served by a series of psychiatrists whose main function is to prescribe drugs of to oversee the individual monitoring, evaluation, and treatment of prisoners...

e). Defendants Garlic and Massa routinely allow security concerns to compromise their duties to prisoners who are their patients.. For example, they breach their promise of confidentiality to patients by sending written mental health reports to non-medical personnel, and they allow security

Page. (21)

personnel to dictate the mental health sessions be conducted while the prisoner sits uncomfortably with his feet shackled to the stool and his hands cuffed behind his back, in a room where guards can overhear the conversation...

F). Defendants have established three "elevated security" gallery in NorthSeg Unit On One gallrey Where a high percentage of the seriously mentally ill prisoners are unjustifiably isolated as Plaintiff Rasho is isolated in NorthSeg Unit When he was removed from South Mental Unit by defendants... No special mental health treatment is provided and the conditions are even more harsh and isolating than they are elsewhere at Pontiac... The high noise level and the sense of danger and chaos on the gallerys, combined with the reluctance of mental health and other medical personnel to venture there, make the experience of living on these gallerys even worse then the experience of living elsewhere at Pontiac...

g). The assessment and treatment of seriously mentally ill or decompensating prisoners sometimes is delayed unacceptably.... These delays are caused, among other reasons, by 1). Pontiac receipt of sketchy records from other institutions; (2). The repetitive, deliberate failure of correctional officers to respond to mental health emergencies, and (3). The systematic refusal

Page.(22)

of Pontiac mental health staff to identify and treat the high percentage of prisoners who arrive at Pontiac seriously mentally ill just like Plaintiff Rasho did from Tamms mental health Unit on about Nov. 7. 2003...

h). Behavior-altering medications are prescribed and administered in dangerous amounts, by dangerous methods, or without appropriate supervision and periodic evaluation...

i). Plaintiff Rasho is punished for behavior that is directly and obviously a consequence of Mr. Rasho Mental Illnesses... This punishment includes:

1). Discipline meted out informally, such as imposing Pontiac prison disciplinary procedure such as punishing Plaintiff for destroying state property he uses to cut himself with,

2). Criminal Charges was caused to be brought for relatively minor events that normally are overlooked or resolved through the prison disciplinary procedure...

j) Physical restraints are used on Plaintiff improperly to punish rather than to treat and protect this mentally ill prisoner...

Page.(23)

K). Plaintiff is always isolate in a cold stripped cell is used to punish him rather than to treat and protect this Mentally Ill prisoner...

I). Talking sessions are with mental health professionals are used not to treat Plaintiff Rasho but to reward him for submissive conduct that may be harmful to his mental state and that often is impossible for Plaintiff to achieve...

m). The Pontiac Mental Health Care program fails to identify, treat, Plaintiff Ashoor Rasho Mental Illnesses or his suicidal tendencies...

2). DEFENDANTS' DELIBERATE INDIFFERENCE TO PLAINTIFF ASHOOR RASHO SERIOUS MENTAL HEALTH NEEDS ALSO IS SHOWN BY A SERIOUS OF INCIDENTS OF MISTREATMENT

43). The deliberate indifference of defendants to the seriouse mental health needs of Plaintiff Ashoor Rasho is demonstrated by a series of incidents of mistreatment occurring closely together in time.... The incidents are described in the statements about Plaintiff Rasho set forth below...

Page.(24)

44). In creating and then failing and refusing to cure the conditions that allowed these incidents to occur, defendant have acted with deliberate indifference to Plaintiff Ashoor Rasho serious Mental Health Needs of Mr. Rasho and in doing so, have unnecessarily and wantonly inflicted severe pain Mentally and Emotionally...

A). <u>PLAINTIFF ASHOOR RASHO</u>

45). Ashoor Rasho is a 32 year-old man from Cook County, Illinois, who has been at Pontiac since November 7. 2003... He been incarcerated in institutions run by the Department of Corrections since September 1996, originally on a charge of burglary; his tentative release date is 2014...

46). Mr. Rasho came to Pontiac with an extensive history of psychiatric problems, as deffendants knew... (See exhibits G 1 of 9 Pgs). Throughout his incararceration, Mr. Rasho has suffered from a serious Mental Illnesses that has caused him to hear voice and to have other auditory perceptual disturbances... As a consequence of his illness, he has attempted suicide and mutilated is body by cutting and slashing his arms, many times...

While incarcerated at the Department of Corrcetions before coming to Pontiac, Mr. Rasho was treated with psychotherpy and extremely high doses of the anti-depressants For anti-anxiety and Major depression (Sinequan, Wellbutrin, Prozac, Remeron, and Buspar) all these drugs that are medically appropiate for people sufering from serious Mental Illnesses... Several times before coming to Pontiac, Mr. Rasho has been sent to Health Care Unit of the Tamms Prison For mental health reasons on 1st September 1998, the Tamms staff had noted self-inflicted lacerations on his arms, wrists, and abdomen that occurred on June 25, July 8, July 20, August 2, August 4, August 20, September 6, and September 17,, By (September 1998), — Mr. Rasho While at Tamms Supermax arms and wrists were brightly marked with the many slashes he had made to them; one arm was swollen from infection..

47). Mr. Rasho's Mental problems are compounded by grave Medical problems that must be taken into account when administering drug to him... Dr. Chander, Dr. Rhodes, defenants Elyea and Dr. Hopkins who was the chief of Mental Health Services of The State of Illinois STATE it that Mr. Rasho is severely Mentally ill..
(See Ex. H)

Page. (26)

Mr. Rasho had a good relationship with the old Pontiac psychiatrist Dr. Kowalkowski who is not at Pontiac anymore and defendant Massa took his office as South Mental new psychiatrist...
And Dr. Kowalkowski and Mr. Rasho believed that Mr. Rasho was doing fairly well, except when he did not take his medication... (see Exhibits G 1 of 9 pgs.).
On April, 2004, because Mr. Rasho had been doing well but had stopped taking his medication without informing his doctor, the doctor discontinued the prescription he was taking, while determining that Mr. Rasho required supportive therapy and close monitoring "For any breakthrough of anxiety, as well as mood lability and disregulation"... On April 04, and March 21, 2004, Mr. Rasho began to cut himself and end up receiving (15) stitches...

48). On or about May 2004, Mr. Rasho was transferred to Pontiac South Mental Unit by Dr. Kowalkowski.. (see Ex. I) and he was immediatel restart him on his Geodon and they provied him with supportive relationship while he was housed in South Mental Unit and taking his medication...
Then Mr. Rasho stoped taking his medications and immediately, the signs that Dr. Kowalkowski had warned about anxiety and mood lability and disregulation

Page: (27)

began to appear yet Defendants only actions were to punish Mr. Rasho not treat him on March 21, 04. Dr. Ngu Stitche him up and and gave him (15) Stitches, On November 27, 04, Dr. Vade gave him (16) Stitches, On February 1. 05, Dr. Vade gave him (16) Stitches, On April 30. 05 Dr. Larsen gave him (7) Stitches, On June 19. 05 Dr. Vade gave him (8) Stitches, On October 30. 05 Dr. Larson gave him (6) Stitches and (11) runing Stitches and in August 20. 06 Dr. Zhang gave Mr. Rasho (15) Stitches...

49). Yet with Mr. Rasho history defendant Massa and memebers of the Pontiac psychiatry tream had recommeded that Mr. Rasho be transferred of the mentel health Unit... There was "NO" good reason to have removed Mr. Rasho from the Pontiac Mentel Health Unit Knowing Mr. Rasho history which showes that defendants and Dr. Massa did not review his medical Records but based his recommendation on his personal view and not his Professionalism view... If defendants had done so then they would seen that Plaintiff Rasho was properly housed in Pontiac South Mentel Unit to reat his Illnesses...

Page. (28).

50). Yet consistently, the attitude of the Pontiac Staff, including the Mental Health staff, is to ignore these obvious serious danger signals and to interpret Mr. Rasho's cries for help as being manipulative and his motive to be sadistic, despite the fact the person he is harming is himself... For example, Correctional officer and Mental Health Staff even ignore acts of self-destruction that pose the risk of serious physical harm to Mr. Rasho.... On August 19, 2006, Mr. Rasho cut himself and was send to the Health Care Unit... He was then sent back to the South Mental Unit and put on crisis watch and he end up cutting himself once again yet the cellhouse Officers in South Mental told him to call him when he hit a artery and they left him in the cell 7 while he was still cutting himself... Then they came and removed him when he hit the sprinkler-head in his cell 7, then he was removed out his cell and taken to Pontiac Health Care Unit and his arm was raped-up and put in four-points... The next day August 20.06 on Sunday Dr. Zhang gave him (15) stitiches...

51). Despite the disdain of defendants for Mr. Rasho's serious mental problems, the psychiatric staff has not hesitated to medicate Mr. Rasho heavily.... Since coming

Page.(29)

to Pontiac he has received various combinations of antidepressants and antipsychotic drugs which is well document it his Medical Records... Most recently, Mr. Rasho has been transferred out of Pontiac Mental "Health Unit" at Pontiac, where he and 80 or more seriously Mentally Ill prisoners, receive therapy calculated to modify this behavior but not treat his underlying illnesses...

52). The combination of insensitive, hostily treatment, and haphazard administration of potent mind-altering drugs has been devastating for Mr. Rasho, who wishes everyday to be released from Segregation Unit and house him in Mental Health Unit at Dixon Mental Health Unit....

3). DEFENDANTS HAVE UNNECESSARILY AND WANTONLY INFLICTED SEVERE PAIN ON PLAINTIFF ASHOOR RASHO BY EXPOSING HIM TO THE CONDITIONS AT PONTIAC CORRCETION CENTER

53). Defendants are aware that the excessively harsh and psychologically damaging conditions at Pontiac exacerbate existing Mental Illnesses and trigger serious Mental Illnesses in prisoners who are housed at Pontiac Corr. Ctr., or South Mental...

Page(30)

Despite this knowledge with cruelty by NOT treating the illness that prisoner has, and allowing Plaintiff Ashoor Rasho to remain housed in Pontiac NorthSeg Unit for long periods of time as his illnesses worsen do to him not receiving anymore Mental Health Treatment do to the defendants Drs. Garlic and Massa removing him from South Mental Unit... In exposing Mr. Rasho to the conditions at NorthSeg, defendants have unnecessarily and wantonly inflicted pain on Plaintiff Ashoor Rasho by stoping his medication and removing from South Mental Unit then putting him back on his medications while he is housed in NorthSeg Unit where he has been requesting that he gos back to South Mental Unit do to the the pain and suffering he is undergoing while housed in NorthSeg...

Page.(31)

# COUNT.(1)
## DELIBERATE INDIFFERENCE TO SERIOUS MENTAL HEALTH NEEDS IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS

54). In demonstrating deliberate indifference to Plaintiff Ashoor Rasho Mental Health needs as described in this Complaint, the individual defendants violated the rights of Plaintiff Ashoor Rasho to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution...

# COUNT.(2)
## UNCONSTITUTIONAL CONDITIONS FOR SERIOULY MENTALLY ILL PRISONER IN VIOLATION OF THE EIGHTH AND FOURTEENH AMENDMNTS

55). In subjecting Plaintiff Ashoor Rasho to the unconstitutional conditions described herein this Complaint, the individual defendants violated the rights of Plaintiff Ashoor Rasho to be free of cruel and unusual punishment under the Eighth and Fourteenh Amendments to the U.S. Constitution...

Page.(32)

# COUNT.(3)
# VIOLATION TO STATE CREATED LIBERTY OR PROPERTY INTEREST UNDER THE FOURTEETH AMENDMENT

56). Pursuant to 405 ILCS 5/2-102, Seriously Mentally Ill prisoners, as recipients of services for purposes of the Illinois Mental Health and Devlopmental Disabilities Code, are, are entiled to be provided with adequate and humane care and services in the From of Mental Health Treatment by mental Health Professionals who exercise their Professional judgment in delivering this Treatment...
The right created by the State Mental Health Code is a liberty or property interest protected under the due process clause **of** the Fourteenth Amendment...

57). The acting in the manner described in Plaintiff Grievance and herein this Complaint, the individual defendants violated the rights of Plaintiff Ashoor Rasho to these State created liberty or property interests under the Fourteenth Amendment to The U.S. Constitution...

Pags.(33)

# COUNT.(4)
# VIOLATION OF THE ADA ACT

58). Pontiac Corr. Ctr., is operated under the control of the Department, Which is a public entity as that term is defined in 42 U.S.C. §12131...

59). Plaintiff Ashoor Rasho is qualified individual with a disability as deftend under the ADA Act and it's imlementing regulations...

60). The Department has discriminated against the Plaintiff Ashoor Rasho on account of his disabilities in the Following ways:

a). Causing Plaintiff Rasho to suffer unjustified isolation by keeping him is Segergation despite defendants knowledge that he suffered from Serious mental illnesses....

b). Failing to reasonably accommodate Plaintiff Ashoor Rasho disabilities and instead discriminating against him in ways that increase the severity of his illnesses by such methods as adjudicating disciplinary charges without reference to relevant mental health records as outlined under 20 Illinois Admistrative CH.I Sec.504.20 (b)(1) and by failing to assist Plaintiff Rasho knowing he is mentally ill and they acted to thwart his efforts to File

Page.(34)

his Grievances as Plaintiff has shown in this Complaint and pursue the adminstrative how they deny his Grievances or to process them...

C). Denying Plaintiff Rasho access to mental health programs, activities, and services of the Department granted at Illinois prisons in Rasho case he was removed from South Mental Unit do to the many complints filed on the condunts of Correctional officers and Mental Health Stuff...

61). In acting in the manner described in this Coptaint and in his Grievance, the Department has unlawfully discriminated againt Plaintiff Ashoor Rasho in Violation of the Americans with Disabilities Act (the "ADA") 42 U.S.C. §§ 12131, et seq.

## COUNT (5)
## VIOlATION OF SECTION 504 OF THE REHAB ACT

62). The Department receives Federal Financial assistance, thus making is Subject to Section 504 of the Rehabilitation Act (the "Rehab Act"), 29 USC § 794 to be Free of discrimination on account of His disabilitities...

Page (35)

63). Plaintiff Ashoor Rasho qualified individual with a disability as defined in the Rehab Act and implementing regulations..

64). In acting in the manner described in this complaint and herein Plaintiff Grievance, the Department has unlawfully discriminated against Plaintiff Ashoor Rasho, in violation of the Rehab Act....

## COUNT (6)
## Injunctive Relief

1-64). Plaintiff reallege paragraphs 1-64 as if fully set forth herein....

65). Unless enjoined from doing so, defendants will continue to willfully violate the the rights of Plaintiff Rasho.... These continuing violations constitute irreparable injury for which Plaintiff Rasho have no adequat remedy at law...

WHEREFORE, Plaintiff request this Court to grant the following relief:

A). Declare that the actions and inaction of defendants described herein have violated and continue to violates the Plaintiff rights under the Eighth

Page.(36)

and Fourteenth Amendments to the U.S. Constitution...

B). Enjoin defendants from engaging in any action or conduct, or from failing to act in any way, that violate the plaintiff above-mentioned rights...

C). Order defendants to take all action necessary to remedy the violations of his above-mentioned rights Award plaintiff a judgment against defendants separarately and jointly for compensatory damages in and amount deemed proper by the Fact Finder...

E). Award Plaintiff a judgment against defendants separately and jointly for his attorney if these Court appiont one to plaintiff do to his illnesses, Fees and costs....

F). Award Plaintiff a judgment against defendants separtety and jointly for any other relief that the Court deems just and proper...

G). The immediate release from Segregation Unit Wherehe is housed and defendants should transferred to the Departments mental health Unit (at Dixon Correctional

Page. (37)

C-eter) because of the serious mental crises at Pontiac...

H). Any or all Good Conduct Credits he has lost over the 10 years he has been in I.D.O.C.

Respectfully Submitted,

ASHOOR RASHO B#38970
Ashoor Rasho
Pontiac Corr. Ctr.,
P.O. Box 99
Pontiac IL 61764-0099
(217) 522-2666

Page.(38)

State of Illinois  } ss
County of Livingston }

## Affidavit

I ASHOCK RASHO B38970, be duly sworn on oath states he is the Plaintiff in the attached Complaint and Grievance.. He has read the foregoing Complaint and motions and states that contents thereof are true and correct to the best of his knowledge..

/s/. Ashoor Rasho
Plaintiff.

Pursuant to 28 U.S.C § 1746, 18. U.S.C § 1621 or 735 ILCS 5/1-109, I Ashoor Rasho declare, under penalty of perjury, that everthing contained herein is true and accurate to the best of my knowleedge and belief..

Signed on this 6 day of NOV. 2007

Ashoor Rasho B38920
Plaintiff
P.O. Box 99
Pontiac IL, 61764.