State of Illinois Livingston County
Pontiac Correctional Center (Pontiac):

## Memorandum

TO: Prisoner Administrative Review Board, P.O. Box 19277, Springfield IL, 62794-9277.

From: Ashoor RASHO D-38970 NorthSeg 548 cell.

date: February 15, 2007.

Subject: Pontiac Grievance Department Will Not redress Emergency Grievance Dec.19.06 For a) Staff Conduct, b) Disability ADA Act / Rehab Act, and c) Transferred out of South Mental Unit.

Dear Miss/Sir.

I am a mentally ill prisoner at Pontiac Correctional Centiac (Pontiac Illinois).
I am Forwarding your office the Following:

1). Emergency Grievance Dec. 19.06,
2) APPENDIX With All RASHO Exhibies,
3). Memorandum To Grievanc Officer date January 31, 2007 and
4) A Memorandum From Grievance Officer Pontiac Correctional Center Date Feb. 8.07
Date received: Feb. 2. 07 .
My reason(s) for me sending you these Document(s) are that the Pontiac Departional Grievace is Stoping me from

Ex. F 1 of 3 ⇒

Filing my Grievance do to the Nature of The Grievance..

As you can see on the Memo date 2.8.07 the Grievance Officer sent all Document(s) back Stating a) Unable to determine nature of grievance/correspondence. Submit additional specific information and Other: Submitted as a class action issue NOT Grieuable..

With all do respect if you see on Memo under Subject: Staff Conduct so this is a Grievance on Staff Conduct, Disability ADA Act/ Rehab Aac and Transferred out of South Mental Unit so these are the nature of my grievance and the grievance officer also states in there memo Staff Conduct (12-19-06). As for the grievance being a Class action that is not true it's on the Why I have been treat it While in Pontiac and has Pontiac have violate my right(s).. Wherefore it is clear that Pontiac Grievace Depatmental Staff is stoping from exhaust my State remedy Which is a violation(s) of Illinois State Constition(s)   2 of 3

Article 1 § 2, 5 and Amendment(s) to the United States Constitution(s) 5, 8, and 14 that guarantees a mental ill prisoner the right(s) liberty, due process of law. . Wherefore do to the Memorandum date Feb. 8. 07 Pontiac Grievance officer has given me their response to this Grievance Dec. 19. 06 and as also shown this prisoner just cause to forward this Grievance to the A.R.B. to be rederss do to the ~~pre pejudice~~ prejudice Pontiac Grievace Departmenal Staff or officers has caused me to undergo while in Pontiac Correctional Center NorthSeg Unit. .

Pursuant to 735 ILCS 5/-109, 28 U.S.C. §1764 and 18 U.S.C. §1621 Plaintiff Ashoor Rasho declare under penalty of perjury, that everything contained herein this Memo date Feb. 15. 2007. is true and accurate to the best of Plaintiff Ashoor Rasho knowledge and belief. .

Ashoor Rasho B78912
P.O. Box 99
Pontiac IL, 61764-0099.

3 of 3

154. Mr. Rasho continued to experience grave difficulties on the STU. Nevertheless, in November 2003, while he was on enforced medication, mental health staff determined that he had "gained as much as he will from STU programs," and transferred him to Pontiac Correctional Center. *See* outpatient progress notes for November 6 and 7, 2003, attached hereto as Ex. PP.

155. Mr. Rasho was transferred to a regular unit at Pontiac, not to a mental health unit. *See* medical notes from Pontiac Correctional Center dated November 11 and 12, 2003, attached hereto as Ex. QQ. *See also* Chandra Dep. 142-143.

156. According to Dr. Burns, Mr. Rasho's case particularly illustrates the failure of Tamms mental health staff to ascertain and treat serious mental illness in a timely fashion. Burns Rpt. 19-20.

**ARGUMENT**

This case is before the Court on a motion for summary judgment. The standard for granting such a motion is well established. Unless the affidavits and other supporting materials show that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law, this motion must be denied. *See* Fed. R. Civ. P. 56(c).

In passing on a motion for summary judgment, the court is required to view the facts in the light most favorable to the nonmoving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings, depositions and affidavits filed in the case. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). Thus, some courts have gone so far as to say that "summary judgment is an extreme remedy and one which is not to be entered unless the movant has established its right to a judgment with such

Ex. G    1 OF 90

# TREATMENT REVIEW COMMITTEE
# HEARING NOTICE

Institution: **Tamms Correctional Center – Specialized Treatment Unit**
Inmate's Name: **Ashoor Rasho**          Number: **B38970**

    In accordance with Department Rule 415.70, on Friday, June 27 at 10:30 am in the Health Care Unit Interview Room a hearing shall be conducted by the Treatment Review Committee giving you the opportunity to contest the administration of psychotropic medication against your will. Dr. Chandra has diagnosed you as having Borderline Personality Disorder, Severe and ordered that involuntary psychotropic medication is necessary as you are gravely disabled, posing a risk of serious harm to yourself and others. Your history indicates that you are greatly helped when taking psychotropic medications but that you are non-compliant with the medications prescribed.

    You have the right to appear at this hearing unless your attendance would likely pose a substantial risk of serious harm to you or a threat to the safety of others. Leslie Markel has been appointed as a Staff Assistant to assist you as may be necessary. The Staff Assistant shall appear at the hearing whether or not your appear.

X _Rsho A B38970_
Committed Person's Signature

☐ Committed Person Refused To Sign

_Kelly A Rhodes PhD_          _K Rhodes, PhD_          6-26-03
Serving Employee's Printed Name     Employee's Signature     Date Served
                                                             10:30 am
                                                             Time Served

---

(Detach and submit to the Treatment Review Committee in advance of the hearing.)
Hearing Date:_____ I,_____, Number:_____
                                    (Name)
request the following witnesses be interviewed (you may submit written questions for witnesses.)

1. Name of Witness: _____ Number: _____
   Question: _____
   _____

2. Name of Witness: _____
   Question: _____
   _____

Distribution:     1) Medical File          3) Treatment Review Committee
                  2) Committed Person      4) Staff Assistant
                  5) Treating Psychiatrist

DC 7046
IL 426-13239


2 of 9

# HEARING SUMMARY

Committed Person: __Ashoor Rasho__   Number: __B38970__
Staff Assistant: __Leslie Markel__
Hearing Date: __6-27-03__   Time: __10:30 AM__ (a.m.)/p.m.
Facility __Tamms CC__   Location: __Health Care Unit Interview Room__

Witnesses Requested: (Yes) X   __± Attorney__
  No ___
Witnesses Interviewed: Yes ___   __No specific questions / inappropriate__
  No X

___ Request Not Timely: _____
___ Cumulative: _____
_X_ Irrelevant: __Could not offer psychiatric opinion__
___ Other: _____

Summary of Proceedings & Evidence: (see attached)

Basis for Decision:
All of the following factors are present:
  a. _X_ The committed person suffers from a mental illness or mental disorder.
  b. _X_ The medication is in the medical interest of the committed person.
  c. _X_ The committed person is either gravely disabled or poses a likelihood of serious harm to himself or others because, as a result of a mental illness or mental disorder, one or more of the following determinations has been made:
    _X_ The committed person is in danger of serious physical harm resulting from his failure to provide for his essential human needs of health or safety.
    _X_ The committed person manifests serious deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his actions which is likely to jeopardize his health or safety.
    _X_ A substantial risk exists that physical harm will be inflicted by the committed person upon his own self as evidenced by, among other things, threats, or attempted to commit suicide or inflict physical harm on himself.
    _X_ A substantial risk exists that physical harm will be inflicted by the committed person as evidenced by, among other things, behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm.
    ___ A substantial risk exists that physical harm will be inflicted by the committed person upon the property of others as evidenced by, among other things, behavior which has caused substantial loss or damage to the property of others.

Action: ___ Concur with Involuntary Administration of Psychotropic Medication.
        ___ Do Not Concur with Involuntary Administration of Psychotropic medication.

Chairperson: __Dr. Kelly Rhodes__   __Sup clinical psych__   __Rhodes, PhD__   __6/27/03__
                Printed Name           Title                 Signature         Date

Member:     __M. Powers MD__   __Med Director__   __[signature]__   __27 June 03__
                Printed Name        Title               Signature         Date

NOTICE: The committed person has the right to appeal this decision to the Agency Medical Director by filing a written appeal with the Chairperson of the Treatment Review Committee within five days of receipt of this report.

__Sally A. Ramsey CCII__   __7/01/03__   __1:50 p.m__
Employee Serving Copy to Committed Person   Date/Time Serve

Distribution:   1) Medical File          3) Treatment Review Committee   5) Warden
                2) Committed Person      4) Staff Assistant              6) Treating Physician

DC 7047
IL 426-13240

2 OF 9   (Dixon)   (Dr. Elyea)



**Illinois
Department of
Corrections**

ROD R. BLAGOJEVICH
Governor

Roger E. Walker Jr.
Director

James R. Thompson Center / 100 W. Randolph Street / Suite 4-200 / Chicago, IL 60601 / Telephone: (312) 814-3017 / TDD: (800) 526-0844

Date:       July 8, 2003

To:         Offender Ashoor Rasho, #B-38970
            Tamms Correctional Center

From:       Willard O. Elyea, M.D.
            Agency Medical Director

Subject:    Treatment Review Committee Appeal


Thank you for your concern over the involuntary administration of psychotropic medication which was approved for you by the Treatment Review Committee at Tamms Correctional Center on 6/27/03. I personally reviewed the entire packet that was sent to me including your letter of appeal with exhibit A as well as a number of Emergency Enforced Medication Reports and the minutes of the Treatment Review Committee meeting. The process of ordering psychotropic medication to be administered on an involuntary basis was followed and was appropriate in your case. Following review of the medical records as well as the other documents mentioned, I concur with the findings of the Treatment Review Committee. Your appeal is hereby denied.


WOE: dva

cc:    Dr. Kelly Rhodes
       File
       Chron

# TREATMENT REVIEW COMMITTEE
# HEARING NOTICE

Institution: __Tamms Correctional Center__
Inmate's Name: __Ashoor Rasho__                     Number: __B38970__
   In accordance with Department Rule 415.70, on __9/1/98 at 3 pm in the HCU__
                                                       (Date, Time, Place)
a hearing shall be conducted by the Treatment Review Committee giving you the opportunity to contest the administration of psychotropic medication against your will.
Dr. __Frank W. Hayes__ has diagnosed you as:
        (Name)
__Atypical psychosis, provisional; medication compliance; Borderline Personality Disorder; Antisocial Personality Disorder__
                  (Diagnosis)
and ordered that involuntary psychotropic medication is necessary __as you are a danger to yourself without medication__
                                    (Rationale)

   You have the right to appear at this hearing unless your attendance would likely pose a substantial risk of serious harm to you or a threat to the safety of others.
__Angela Winsor__ has been appointed as a Staff Assistant to assist you as may be necessary. The Staff Assistant shall appear at the hearing whether or not your appear.

__Rasho Ashoor__ (signature)
Committed Person's Signature

☐ Committed Person Refused To Sign

__Angela Winsor__                    __[signature]__             __8/31/98__
Serving Employee's Printed Name      Employee's Signature        Date Served
                                                                 __250p__
                                                                 Time Served

---

(Detach and submit to the Treatment Review Committee in advance of the hearing.)
Hearing Date: _____ I, _____, Number: _____
                                   (Name)
request the following witnesses be interviewed (you may submit written questions for witnesses.) *does not request witnesses*

1. Name of Witness: _____ Number: _____
   Question: _____

2. Name of Witness: _____
   Question: _____

Distribution:  1) Medical File          3) Treatment Review Committee
               2) Committed Person      4) Staff Assistant
               5) Treating Psychiatrist

DC 7046
IL 426-13239

"Exhibit G"    Page 4 of 9

## HEARING SUMMARY

Committed Person: __Ashoor, Rasho__ Number: __B38970__
Staff Assistant: __Angela Winsor__
Hearing Date: __9/1/98__ Time: __3pm__ a.m./p.m.
Facility __Tamms C-Max__ Location: __HCU Infirmary__

Witnesses Requested: Yes ___
 No _X_ _____
Witnesses Interviewed: Yes ___
 No _X_ _____

___ Request Not Timely: _____
___ Cumulative: _____
___ Irrelevant: _____
___ Other: _____

Summary of Proceedings & Evidence: **(see attached)**

Basis for Decision:
 All of the following factors are present:
 a. ___ The committed person suffers from a mental illness or mental disorder.
 b. ___ The medication is in the medical interest of the committed person.
 c. _X_ The committed person is either gravely disabled or poses a likelihood of serious harm to himself or others because, as a result of a mental illness or mental disorder, one or more of the following determinations has been made:
  ___ The committed person is in danger of serious physical harm resulting from his failure to provide for his essential human needs of health or safety.
  _X_ The committed person manifests serious deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his actions which is likely to jeopardize his health or safety.
  _X_ A substantial risk exists that physical harm will be inflicted by the committed person upon his own self as evidenced by, among other things, threats, or attempted to commit suicide or inflict physical harm on himself.
  ___ A substantial risk exists that physical harm will be inflicted by the committed person as evidenced by, among other things, behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm.
  ___ A substantial risk exists that physical harm will be inflicted by the committed person upon the property of others as evidenced by, among other things, behavior which has caused substantial loss or damage to the property of others.
Action: ___ Concur with Involuntary Administration of Psychotropic Medication.
 _X_ Do Not Concur with Involuntary Administration of Psychotropic medication.

Chairperson: __MARVIN POWERS__ __MED. DIRECTOR__ _[signature]_ __01 Sept 98__
 Printed Name      Title       Signature    Date

Member: __Kelly Rhodes, PhD__ __Supervising clinical Psychologist__ __Rhodes, PhD__ __9/1/98__
 Printed Name      Title       Signature    Date

NOTICE: The committed person has the right to appeal this decision to the Agency Medical Director by filing a written appeal with the Chairperson of the Treatment Review Committee within five days of receipt of this report.

__Kelly Rhodes, PhD__       __9/2/98  12:58 pm__
Employee Serving Copy to Committed Person  Date/Time Serve
Distribution: 1) Medical File   3) Treatment Review Committee   5) Warden
       2) Committed Person  4) Staff Assistant        6) Treating Physician
DC 7047
IL 426-13240

"Exhibit G" Page 5 OF 9

## Emergency Involuntary Administration of Psychotropic Medication

Name: __Rasho, Ashoor__   Number: __B38970__   Date Administered: __8/24/98__

I, __Frank W. Hayes, MD__ a physician licensed by the State of Illinois to practice medicine in all of its branches, have determined that all of the following factors are present:

a. ☒ The inmate suffers from a mental illness or mental disorder: and _(pt reports auditory hallucinatio which keeps him company + commands. Also reports dissoc like_
b. ☒ The medication is in the medical interest of the inmate: and
c. ☒ The inmate is either gravely disabled or poses a likelihood of serious harm to himself or others because, as a result of a mental illness or mental disorder, one or more of the following determinations has been made:
  - ☐ The inmate is in danger of serious physical harm resulting from his failure to provide for his essential human needs of health or safety.
  - ☒ The inmate manifests serious deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his actions which is likely to seriously jeopardize his health or safety.
  - ☒ A substantial risk exists that physical harm will be inflicted by the inmate upon his own person as evidenced by, among other things, threats or attempts to commit suicide or inflict physical harm on himself.
  - ☒ A substantial risk exists that physical harm will be inflicted by the inmate as evidenced by, among other things, behavior which has caused such harm upon another person or which places another person or persons in reasonable fear of sustaining such harm.
  - ☒ A substantial risk exists that physical harm will be inflicted by the inmate upon the property of others as evidenced by, among other things, behavior which has caused substantial loss or damage to the property of others; and
d. ☒ The inmate poses an imminent threat of serious physical harm to himself or others.

Factual basis for the above determinations: _Pt tore out sutures; tore out vent + tied to bandages + attempted to break observation window; claimed to be hearing voices; bled considerably on all parts of observation room; cut self several times over last few days._

_____
Illinois Licensed Physician

I, __Kelly A. Rhodes, PhD__, a mental health professional, met with the above-named inmate on __8/24/98__ at __1:04 pm__ to discuss the reasons why the medication was administered and to give the inmate an opportunity to express any concerns he may have regarding the medication.

Notes: _Im stated that he understood that the medications were being administered by envor involuntarily due to his continued self-harming behavior._

_____
Mental Health Professional

Distribution:  1) Medical File      3) Agency Medical Director
               2) Committed Person  4) Warden

DC 996 (10/92)
IL 426-18114

"Exhibit G"

Page 6 of 9

## Summary of Proceedings and Evidence:

Present:     Kelly Rhodes, PhD – Chairperson
             Marvin Powers, MD
             Dr. Frank Hayes, Recommending Psychiatrist
             Angela Winsor, Staff Assistant
             Ashoor Rasho, B38970

Inmate Rasho stated that he knew all of the individuals present and knew that the hearing was to decide whether or not he would be placed on enforced medications. He indicated that he did not want to be placed on enforced medications because of his blurred vision and the way he feels when taking this medication. He stated that he did not remember telling Dr. Hayes that he would be more likely to take the medication voluntarily if he were under an enforced medication order.

Inmate Rasho initially stated that he cuts himself because his "mind" tells him to but later stated that the voices tell him to do so, especially when he is angered and feels provoked. When asked, he acknowledged some emotional benefit to the cutting. He acknowledged that the feces smearing and self-removal of his stitches are often out of anger and trying to get the staff to give him something that he is wanting. He reported that since he has been taking the anti-psychotic medication, he has not heard the voices, also stating that he has been asleep the majority of the time and has no energy to act, even if he was hearing voices. Initially, when asked, he claimed that he could not recall the incidents of acting out within the past week or his self-report that he was hearing voices. However, when asked about a specific incident that occurred six days prior, he did recall being angry and feeling provoked, first stating that he did not hear voices at the time, then stating that he did hear voices. Yet, he did not recall smearing feces in his cell or cleaning it up. Presently, he believes that the medication helps to keep him from cutting but stated that, "If I get something sharp, I will cut myself if I am on enforced medications or not on enforced medications...because that's how I am."

A review of the medical record revealed the following:

Inmate Rasho was transferred to Tamms C-Max on March 26, 1998. He complained of having mental health problems and asked for sinequan. He presented with a psychiatric history including previous hospitalizations, self-mutilation, suicide attempts, and self-reported visual and auditory hallucinations. Diagnoses focused on mood instability, adjustment disorders, impulse control disorders, and personality disorders. This history has generally been characterized as transient and manipulative. There have been indications of some head trauma, but this has largely been unsubstantiated. However, his history consistently demonstrates low tolerance for frustration, unwillingness to accept responsibility for his behaviors, need for stimulation, and aggressiveness.

7 OF 9

September 16, 1998

To: Marvin Powers, MD
    Medical Director

From: Frank Hayes, MD
      Psychiatrist

Re: Need for Enforced Medication for Ashoor Rasho

As you know, the Treatment Review Committee did not concur with my previous request for enforced medications for this inmate, and recommended that more data be collected relative to his primary diagnosis and the need for medication. I am resubmitting what will be my final request for this inmate, as I will be leaving the Illinois Department of Corrections in two weeks.

The factual material presented in my first submission to the committee is still valid and relevant. I have continued to consider the matter of this inmate's diagnosis. It is indeed complex and confusing, as a review of the charting on this patient will attest. First and foremost is the patient's personality structure. He clearly meets diagnostic criteria for Borderline Personality Disorder as well as Antisocial Personality Disorder. What has been most confusing about his presentation has been the matter of how to interpret certain behaviors, such as cutting on himself and throwing feces.

It is well established that a common feature of Borderline Personality Disorder is self-injurious behavior, such as cutting. Mr. Rasho has demonstrated this for us on quite numerous occasions. At times he has attributed these occurrences to the influences of hallucinations or demons. Other observers have noted clear instances of apparent secondary gain, such as the desire to obtain a certain concession from staff, to build a lawsuit, or to express retribution. These conflicting interpretations have sown much confusion about what is really going with this person. It is also, by the way, typical of Borderlines to engender much conflict and disagreement among the staff who care for them.

Certainly, with the additional diagnosis of Antisocial Personality Disorder, one can expect that manipulation and secondary gain will enter the picture at some point, and that the patient will offer self-serving interpretations of his behaviors in retrospect. It is also true that another common feature of Borderline Personality Disorder is the propensity to have mini-psychotic episodes. This patient has had at least one episode of cutting which fits this description. He has related experiencing a transition to a different state of mind at times prior to cutting on himself. He describes this state as "strange, weird, funny, different," and feels as if he is losing control. While it may be debatable what to call these mini-psychotic episodes (Psychosis NOS vs Brief Psychotic Disorders), it is would be clinically unacceptable to deny their existence. Furthermore, this inmate has been claiming to hear voices for a number of years, and his psychiatric records reflect this. Simply because his retrospective interpretations may appear sociopathic, or he may embellish his descriptions, does not mean that such core pathology is absent. His nonchalance in relating his symptoms is not proof of their factitious nature, but rather is not infrequently seen in persons with chronic psychotic symptoms.

-1-



"Exhibit G" 8 of 9

TAMMS CORR. CEN
RECORDS OFFIC

A certain pattern in this patient's behavior has emerged. He does well while on his medications, then stops taking his Haldol, cuts himself after missing two or three doses, then requests the medications be resumed. It is quite clear that when the patient is actually taking a neuroleptic (e.g., Haldol) he neither cuts on himself nor even speaks of experiencing hallucinations or altered states of mind. He says that he is more in control of his impulses on his medications, and can refrain from such behaviors as throwing feces. The beneficial effects on reducing anger and impulsivity in Borderlines are well documented, as well as their obvious necessity in treating the mini-psychotic episodes. Since the patient himself acknowledges their benefits in his case, and since it is impossible while a cutting episode is in progress to put an accurate interpretation as to its etiology (manipulation, acting out, or, at times, psychosis) it would seem most prudent to maintain a constant level of medications on board.

I therefore leave this matter in the hands of the committee, having fulfilled the previous recommendation of the committee for additional information. It remains my considered professional opinion that this patient requires enforced medications.


cc:     Kelly Rhodes, PhD
        Supervising Clinical Psychologist



9 OF 9

"Exhibit G"

presumably meaning that he could be transferred back to Tamms at any time. (*See* **Doc. 45, p. 22 fn 10**). Boyd offers no more than this assertion. Defendants counter that a new policy, Department of Corrections Administrative Directive 05-12-110, prevents seriously mentally ill inmates from being transferred to Tamms, "except in the rarest of cases." (**Doc. 41, p. 4; and Exhibit B, p. 4**). Thus, defendants leave open the possibility of repetition. However, since plaintiff has the burden on this issue, this Court finds that the possibility of being retransferred to be too speculative to satisfy Rule 23(a)(4). Furthermore, this Court does not construe the complaint as attacking the new screening policy, so the interests of prospective seriously mentally ill transferees are not represented.

### B. Plaintiffs Rasho, ~~Fields and Nelson~~

The parties disagree on the proper diagnosis for plaintiffs Rasho, Fields and Nelson. Utilizing the records definition, this Court finds that Rasho and Nelson fall within the class definition, but not Fields.

Even Dr. Hopkins (Chief of Mental Health Services for the State of Illinois and a named defendant) finds that Rasho is severely mentally ill. Rasho has been placed in the Tamms "Special Treatment Unit" (**Doc. 41, exhibit B, p. 5**), which further indicates that he fits the records definition.

It appears that Nelson falls under the records definition, in that he was diagnosed with and has been treated for a listed Axis I disorder within the last two years. (*See* **Doc. 41, Exhibit 1, pp. 5-6**).

---

party. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also Tobin for Governor v. Illinois State Bd. of Elections*, 2001 WL 1173227, *9 (7th Cir. Oct. 5, 2001).

ex.H

## NOTICE OF AN IMPENDING PSYCHIATRIC TRANSFER

To: __Rasho, Ashoor__ , __B38970__
      Inmate's Name                        Register Number

On the date of __4/6/04__, the institutional psychiatrist interviewed you and has recommended that you be transferred to the **Pontiac Mental Health Unit** for further evaluation and treatment. Before that happens you have the right to request a hearing before the Placement Review Board, consisting of two members of the institutional staff and one person not employed by the agency. At this hearing, you will be present and may have your personal psychiatrist or other professional persons appear in your behalf, at your expense, and present verbal or written testimony. Further you may specify institutional employees or other inmates you desire to appear at this hearing in your behalf.

Please indicate below whether or not you desire this hearing, sign your name, and return the white and the yellow copies of this form to your counselor within 24 hours. You should retain the pink copy for your own records. If you desire a hearing, one will be held within five working days of your returning this form. You may request an additional two working days delay by specifying below the reason why you are requesting this delay.

If you do not desire to receive a hearing, please indicate this below and sign your name. Your proposed transfer will be reviewed in the General Office in Springfield prior to the transfer.

_[signature]_ MS, LCPC  Psych II , 4/7/04
Employee's Signature and Title               Date

---

Check where appropriate.

I have read the above and:

__X__ I do not want to receive a hearing regarding my being transferred to the Pontiac Mental Health Unit.

_____ I want to receive a hearing to decide whether or not I should be transferred to the Pontiac Mental Health Unit.

_____ I request an additional two days for preparation prior to the hearing for the following reasons:

_____

_____

x _Rasho Ashoor_     x B38970   x 4-7-04
   Inmate's Signature        Register Number    Date

DCA 7122 (Rev. 9/87)



Exhibit I

STATE OF ILLINOIS
COUNTY OF LIVINGSTON ) SS

AFFIDAVIT

I, Ashoor Rasho B-38970 North Seg cell 848 April 24, 07, Tuesday do hereby declare and affirm that the following written statement within this affidavit is true and correct in substance and facts:

This writer want to see a mental health worker named Alton Angus on April 24. 07, 3-3 shift on Tuesday... This writer told Mr. Angus that he is mentally and emotional getten sicker and that he has been loosing his mind and that he does not remember one night has he had blood in his cell and deep cuts on his arm.... Mr. Angus told this writer that he dose NOT believe that a person dose not know what he dose... This writer told Mr. Angus that he (Rasho) need help and he dose not know why he is in NorthSeg and why he was removed from South- Mental Unit... Mr. Angus told him (Rasho) he was not cooperating with Dr. Massa who is a named Defendant in this writer Grievance and Lawsuit he is filing on mental

Page 1

Pursuant to 28 U.S.C. 1746, 18 USC 1621 or 735 ILCS 5/1-109, I ASHOOR RASHO B38970 declare, under penalty of perjury, that everything contained herein is true and accurate to the best of my knowledge and belief...

*Ashoor Rasho*
Ashoor Rasho
B-38970 NorthSeg cell 848
Pontiac Corr. Ctr.,
P.O. Box 99
Pontiac IL 61764-0099
On April 24, 2007 Tuesday 7-3 shift.

Page 3

health staff... This Writer told him (Angus) that he didn't get along with the Doctor that he was removed do to the complaints and helping others mentally ill prisoners out... Mr. Angus told this Writer that he dose not feel this Writer is mentally ill that he didn't see why he was housed in South Mental Unit... Then he told this Writer that he can't help him and their is nothing he can do... This Writer told Mr. Angus that "ya believe a personing telling a lie, yet when I am telling you the truth you don't believe me")... ("That gos against what mental health is")... "He Mr Anguse told this Writer he thinks mental health is bullshit"... open hearing this This Writer was devastate and emotional as well mentally hurt that he would not be receiving any mental health treatment to treat his mental illnesses that this Writer is and has been suffering from...

Page.2

United States District Court
Central District OF Illinois

ASHOOR RASHO #B38970 )
  Plaintiff )
-vs- )
ROGER E. WALKR Jr. et.al., ) Case No _____
Director I.D.O.C. )
  Defendants )

## NOTICE OF FILING

TO: Clerk U.S. District Court
Central District of Illinois,
Peoria Division 305 Federal
Building, 100 N.E. Monroe
Peoria, IL. 61602.

PLEASE TAKE NOTE that on the Nov. 6 2007 I have filed, through the U.S. Mail, with the above named Clerk U.S. District Court Central District Of Illinois, the below listed documents listed below the addressed Clerk

1). Affidavit of Service
2). Application to proceed as a poor person/Certificate
3). Motion For Appointment of Counsel
4). Verication of Certification
5). Complaint
6). Affidavit
7). Appendix Exhibities A, B, C, D, E, F, G, H, and I.
8). _____
9). _____
10) _____

Page (1)

# AFFIDAVIT OF SERVICE

I, Ashoor Rasho #B-38970, being first duly sworn on oath, depose and avers that he has caused the above stated documents in the above complaint to be served upon the above listed parties by placing the same in the U.S. MAILBOX on/at Pontiac Corr. Ctr., P.O. Box 99 Pontiac IL 61764, delivery as 1st Class Mail.

Ashoor Rasho B38970
ASHOOR RASHO
P.O. Box 99
Pontiac IL, 61764-0099

Page (2)