IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ASHOOR RASHO, PATRICE DANIELS, GERRODO FORREST, LYNDA SMITH, LATERIAL STINSON, and KEITH WALKER, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:07-CV-1298-MMM-JAG |
| v. | ) ) | Judge Michael M. Mihm |
| DIRECTOR ROGER E. WALKER, JR., DEPUTY DIRECTOR ROBERTA FEWS, DR. WENDY NAVARRO, DR. SYLVIA MAHONE, EDDIE JONES, DR. WILLARD ELYEA, DR. JOHN GARLIC, DR. MICHAEL F. MASSA, and WEXFORD HEALTH SOURCES, INC. | ) ) ) ) ) ) ) ) | Magistrate Judge John A. Gorman |
| Defendants | ) ) ) ) | |

## AGREED ORDER

The parties have agreed to the entry of this interim order to facilitate a consent decree in this matter. This order requires certain actions by the Illinois Department of Corrections (IDOC) and includes selection of a monitor. The order addresses definitions applicable to this Order and the issues of additional mental health staff, bed/treatment space, segregation for the seriously mentally ill, discipline of the seriously mentally ill, monitoring of the obligations in this order, and a dispute resolution mechanism as to the matters addressed by this order.

### I.  DEFINITIONS

a)  *Serious Mental Illness:* As used herein, an offender in the (IDOC) is "seriously mentally ill" ("SMI") if he or she, as a result of a mental disorder as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") of the American Psychiatric Association, exhibits impaired emotional, cognitive, or behavioral functioning that interferes seriously with his or her ability to function adequately except with supportive treatment or services. These individuals also must either currently have, or have had within the past year, a diagnosed mental disorder, or must currently exhibit significant signs and symptoms of a mental disorder. A diagnosis of alcoholism or drug addiction, developmental disorders, or any form of sexual disorder shall not, by

itself, render an individual seriously mentally ill. The combination of either a diagnosis or significant signs and symptoms of a mental disorder and an impaired level of functioning, as outlined above, is necessary for one to be considered Seriously Mentally Ill. Whether a person meets the criteria of Seriously Mentally Ill is initially determined by a comprehensive, professional clinical assessment by an IDOC mental health professional in order to 1) determine if the individual has a diagnosable mental disorder as defined by the current DSM and 2) to establish the person's overall level of functioning. The appropriate threshold to establish level of functioning that equates to a Serious Mental Illness includes serious impairments in capacity to recognize reality, in work environments, school or learning environments, frequent problems with the authority/rules, occasional combative behavior, serious impairments in relationships with friends and family, serious impairments in judgment, thinking, and mood, and serious impairment due to anxiety. These aforementioned disturbances must be observed in at least one of the areas listed above.

b) *Crisis Beds*: Beds that are available within the prison for short-term, aggressive mental health intervention designed to reduce the acute, presenting symptoms and stabilize the inmate prior to transfer to a more or less intensive care setting, as required by IDOC Administrative Directive 04.04.102 (Eff. 6/1/2012), § II(F)(2).

c) *Mental Health Unit ("MHU")*: A housing unit within the prison for inmates with mental illness who do not then need inpatient treatment but who do require the therapeutic milieu and the full range of services and variable security available in the MHU, as required by IDOC Administrative Directive 04.04.100 (Eff. 6/1/2012), § II(F)(1)(a)(5) and "IDOC Mental Health Units," in the IDOC Mental Health Protocol Manual (incorporated by reference into IDOC Administrative Directive 04.04.101 (Eff. 6/1/2012), § II(E)(2)), at pp. 2-3.

d) *Outpatient Mental Health Services*: The provision of appropriate mental health care and supportive services for those inmates with mental illness who are able to be housed and function in the general prison population, as required by IDOC Administrative Directive 04.04.100 (Eff. 6/1/2012), *passim*.

e) *Inpatient Mental Health Services*: Intensive, inpatient hospitalization during the period when an offender's mental health needs exceed the treatment capabilities of IDOC. In such instances, offenders shall be returned to a less intensive treatment environment at the earliest clinically appropriate time.

f) *Mental Health Professional*: A mental health professional is: a board-certified and licensed psychiatrist; a psychologist with a Ph.D. or Psy.D. and licensed as a clinical psychologist; a licensed psychiatric nurse (i.e., a nurse with an R.N. and training as a psychiatric nurse practitioner); a licensed clinical social worker; or an individual with clinical training and a Masters degree in Psychology or Social Work who is licensed

to provide mental health services. "Licensed" means currently licensed by the State of Illinois.

g)   *Segregation Unit*: A special housing area within a prison in which offenders are placed for disciplinary, investigative, or administrative reasons.

## II.  ADDITIONAL MENTAL HEALTH STAFF

a)   By May 10, 2013, the IDOC will create a list of all unstaffed mental health positions, both State and contractual. By June 1, 2013, IDOC will create a plan to fill these positions. IDOC and its vendor shall make intensive efforts to implement the hiring plan, and the positions shall be filled no later than December 1, 2013. Once the positions are filled, IDOC shall thereafter be required to maintain staffing at not less than 90 percent of those mental health positions enumerated in the current health services contract. If staffing falls below 90 percent for two consecutive weeks, IDOC shall use temporary or short-term contract employees to raise the level to at least 90 percent.

b)   IDOC will conduct an assessment of its current mental health staffing levels at each facility. The goal of the assessment will be to identify staffing levels that satisfy IDOC's constitutional responsibility for providing mental health care to SMI inmates. Factors to be considered include the current provision of mental health services and the staffing necessary to provide care for each SMI inmate at the facility in accordance with individualized treatment plans. Defendants shall provide the monitor and counsel for plaintiffs with IDOC's assessment process no later than thirty (30) days after appointment of the monitor by the Court. The monitor will review and approve the assessment process. The assessment shall be completed no later than six (6) months after the approval of the assessment process by the monitor.

c)   The parties will negotiate additional mental health positions, or propose modifications to existing mental health positions based on the results of the assessment completed in paragraph (b) above.

d)   Once the parties have agreed on the number of staff to be added, those positions will be listed in the consent decree.

## III.  BED/TREATMENT SPACE

a)   IDOC will conduct an assessment of its current mental health bed and treatment space at each prison. The goal of the assessment will be to identify bed and treatment space allocations that satisfy IDOC's constitutional duty to provide mental health care to SMI inmates. Factors to be considered include the current provision of mental health services and the bed and treatment space necessary to provide care for each SMI

inmate at the prison in accordance with individualized treatment plans. Defendants shall provide the monitor and counsel for plaintiffs with IDOC's assessment process no later than thirty (30) days after appointment of the monitor by the Court. The monitor will review and approve the assessment process. The assessment shall be completed no later than six (6) months after the approval of the assessment process by the monitor.

b)     The assessment will address the following issues:

    i)     the residential space required for crisis beds and MHUs;

    ii)     the provision of inpatient care;

    iii)     the use of an entity already licensed, accredited and experienced in providing such inpatient care;

    iv)     the space required for space for confidential consultations with MHPs, individual and group activities, dayrooms, programs related to mental health treatment, and the required office space and equipment needed for staff;

    v)     a detailed plan on where such space identified in subparagraph (iv) is or may be located and whether such space may be available by renovation, construction, modular units, or in any other fashion; and

    vi)     a detailed plan which addresses target dates for the implementation of all bed/treatment space identified in the assessment.

c)     Once the assessment is complete the parties will negotiate terms to be included in the consent decree related to bed and treatment space.

## IV. SEGREGATION/PROTECTIVE CUSTODY

a) IDOC shall, by May 15, 2013, assure that:

    i)     At least once every seven (7) calendar days, a MHP shall visit every section of each segregated housing unit.

    ii)     MHP screening of an SMI offender in segregation shall follow the three stage mental health triage process outlined in the current edition of the Mental Health Protocol Manual beginning with screening and followed by assessment and evaluation, if clinically indicated.

    iii)     Security personnel shall be notified that they have a responsibility for being attentive to the mental health of those SMI offenders in segregation and, to fulfill this responsibility,

IDOC security personnel shall report any decompensation they have identified through the chain of command for referral to mental health professionals.

b) Any decision regarding an SMI offender's placement in, continuation or termination of Investigatory Status/Temporary Confinement, Disciplinary Segregation or Administrative Detention may be reviewed by the IDOC Mental Health Services Director or his/her designee(s) to determine if the decision properly considered the mental health needs of the SMI offender. Such a request can be initiated by the recommending MHP or the CAO or Assistant CAO. Defendants shall report to the Court every forty-five (45) days as to progress in implementing this paragraph.

c) No later than May 15, 2013, IDOC shall initiate the development of a process to review SMI offenders placed in segregation prior to ratification who are serving segregation terms of sixty (60) days or longer. The purpose of the review will be to determine if the SMI offender's mental health condition both at the time of the original and any subsequent offense requires a reduction in the offender's current segregation term. The review shall be performed at the facility level, and shall involve a committee ("Review Committee"), appointed by the Chief Administrative Officer, that shall include security and mental health professionals. The Review Committee shall have the authority to recommend to the Chief Administrative Officer that an SMI offender's segregation time be reduced (or eliminated altogether) based upon (1) the seriousness of the offense; (2) the safety and security of the facility or any person (including the offender at issue); (3) the offender's behavioral, medical, mental health and disciplinary history; (4) reports and recommendations concerning the offender; and (5) other legitimate penological interests. Absent overriding security concerns, the Review Committee shall adopt the recommendations of the Committee's MHP member(s). The decision for reduction or elimination of an SMI offender's segregation term ultimately rests with the CAO who, absent overriding security concerns documented in writing, shall adopt the Committee's recommendations to reduce or eliminate an SMI offender's segregation term.Defendants shall report to the Court every forty-five (45) days as to progress in implementing this paragraph. The review shall be completed by IDOC no later than December 31, 2013, but this date may be extended by the Court for good cause shown**.**

## V. DISCIPLINE OF SERIOUSLY MENTALLY ILL INMATES

a) No later than May 15, 2013, IDOC will commence developing and implementing system-wide policies and procedures to take into account serious mental illness in disciplinary proceedings and dispositions of those proceedings. IDOC acknowledges that this will require reform in the nature of disciplinary proceedings as they are currently conducted, and agrees to reform those proceedings so that the policies and procedures with respect to serious mental illness can be implemented.

b) The reforms shall include that, when an SMI offender is the subject of a disciplinary report for a major offense as defined in 20 Ill. Admin. Code 504.50(d)(3), the Hearing Investigator shall consult with the offender's treating MHP as part of the investigation required by 20 Ill. Admin. Code 504.60. In addition to any other information derived from this consultation, the Hearing Investigator shall obtain the following opinions from the MHP: (i) whether the offender's mental illness caused or contributed in any way to the behavior at issue in the disciplinary process, and if so, how; and (ii) whether confinement in segregation is likely to impact the offender's mental health, and if so, how. Additionally, the SMI offender's treating MHP, or one of his or her superiors, shall provide testimony as to the offender's mental

condition at any Adjustment Committee hearing.  Such testimony, in addition to any other testimony permitted by 20 Ill. Admin. Code 504.80(h), shall be considered by the Adjustment Committee in making its determinations. If the SMI offender's treating MHP recommends that the offender's mental health needs require a specific segregation term, specific treatment during segregation or no segregation at all, the MHP's recommendations shall be adopted by the Adjustment Committee or Program Unit unless the CAO  or Assistant CAO overrules the MHP's opinions in writing.  Such documentation shall become part of the offender's disciplinary record.  By July 1, 2013, IDOC shall provide the monitor and counsel for plaintiffs with drafts of any and all regulatory changes needed to implement this paragraph.  Any such regulatory changes that need to be submitted to JCAR shall be submitted by IDOC no later than August 1, 2013.

## VI.  MONITORING

a) The Court shall appoint an independent and impartial Monitor who is knowledgeable concerning the management and oversight of correctional programs and the delivery of mental healthcare. The Parties shall endeavor to agree on a single candidate for Monitor. Within forty-five (45) days after entry of this Order, the parties shall exchange names and qualifications of proposed monitors.  The parties shall agree upon a monitor from the proposed candidates within forty five (45) days thereafter. If the parties cannot agree upon a monitor within this time frame, either party may move the Court for additional time.

b) The parties recognize that issues of staffing and budget will be worked out with the monitor, and IDOC will pay the monitor and his/her staff.  In the event the Monitor resigns or otherwise becomes unavailable, and the Parties cannot agree on a replacement Monitor to recommend to the Court, the process described above will be used to select a replacement Monitor.

c) The monitor shall have access to the expert team report (the "Cohen report").

d) After the assessments of mental health staffing and bed/treatment space described in sections II and III above have been completed, the monitor shall assess any proposals received from IDOC as to the mental health staff and bed/treatment space.  Contemporaneously with submission to the monitor, IDOC shall provide such proposals to plaintiffs' counsel.  The monitor shall review any proposals it has received within 60 days.  If IDOC's proposals are unacceptable to the monitor, the monitor may give IDOC an additional 60 days to make acceptable proposals.  IDOC may dispute the monitor's determination pursuant to the dispute resolution provisions of section VII.

## VII.  DISPUTE RESOLUTION

In the event a dispute arises as to whether Defendants have failed to comply with the terms of this Order, counsel for the parties shall proceed as follows:

a) Counsel for the parties shall make a good faith effort to resolve any difference which may arise between them over matters of compliance.  Prior to the initiation of any proceeding before the Court to enforce the provisions of this Order, Plaintiffs' counsel shall notify Defendants' counsel in writing of any claim that Defendants are in violation of any provision of this Order.  Within fifteen (15) business days of the receipt of this notice, counsel for Plaintiffs and Defendants shall meet in an attempt to arrive at an amicable resolution of the claim. Either party may request the attendance and involvement of the monitor at such meeting.  If, after fifteen (15) business days following such meeting, the matter has not been

- 7 -

resolved, Defendants and the monitor shall be so informed by Plaintiffs' counsel, in writing, and Plaintiffs may then have due recourse to the Court.

b)      If legal action is pursued, it shall be brought in the form of a motion to enforce any terms of this Order.


SO ORDERED


Dated:  May 8, 2013                             s/ Michael M. Mihm
                                                Michael M. Mihm
                                                United States District Judge