**E-FILED**
Thursday, 28 August, 2014  04:20:28 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ASHOOR RASHO, #B-38970, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 07-1298 |
| | ) | |
| ROGER WALKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE MAY 8, 2013 ORDER

NOW COME defendants ROGER E. WALKER, EDDIE JONES, DR. WILLARD

ELYEA, and DR. WENDY NAVARRO, by and through their attorney, Lisa Madigan, Attorney

General for the State of Illinois, and hereby respond to plaintiffs' motion to enforce as follows:

### Introduction

In May of last year, the parties agreed to stay their negotiations towards a Consent

Decree and enter into an Agreed Order which established a measured and achievable path

culminating, ultimately, in a Consent Decree.   Integral to the Agreed Order (and the outcome

of this case) are the provisions governing the Remedial Plan.   Submitted to the monitor on

April 17, 2014 and conditionally approved on July 28, 2014, the Illinois Department of

Correction's ("IDOC's" or "the Department's") Remedial Plan represents a comprehensive

overhaul of its entire mental health system.   By proposing the facility and staffing upgrades

necessary to establish defined levels of mental health treatment, IDOC has committed to

constitutionally-adequate mental health care for its Seriously Mentally Ill ("SMI") offenders.

Recognizing the enormity and time consuming nature of these changes, the Agreed Order

contains interim relief to demonstrate the Department's ongoing commitment to its SMI

offenders.   As will be shown below, IDOC has achieved full or substantial compliance with its

obligations under the Agreed Order and continues to undertake good faith efforts to achieve

100% compliance.   Moreover, and conspicuously absent from plaintiffs' motion, the

Department has implemented safeguards in addition to those required by the Agreed Order. When viewed in the totality of the circumstances, IDOC's compliance with the Agreed Order dictates that plaintiffs' motion must fail.

### Mental Health Vacancies

### Substantial Compliance

The Agreed Order requires IDOC to identify those State and contractual mental health positions which were vacant in May 2013 ("*original* vacancies"), and to fill those positions by December 1, 2013. Once the *original* vacancies have been filled, the Agreed Order requires a 90 percent (or greater) fill rate. The Agreed Order, therefore, recognizes and accepts the potential for mental health vacancies.

In May 2013, IDOC had 18 vacant mental health positions, and Wexford Health Sources ("Wexford") had 22.58. By December 2013, Wexford had filled 10 *original* vacancies and IDOC had filled 8. An additional IDOC position was deleted as unnecessary and a new Central Region Psych Administrator position created and filled by the state in January 2014. As of July 1, 2014, Wexford had filled 100% of its *original* vacancies. At the same time, IDOC had filled 88% of its *original* vacancies – with two positions remaining vacant: Psych Administrator at Lawrence CC and Psychologist II at Centralia. In total, Wexford and IDOC have filled all but two of the 40 *original* vacancies, representing both a 95% success rate and substantial compliance with the Agreed Order.

Despite Wexford's ability to fill 100% of its *original* vacancies, plaintiffs point out that vacancies remain. However, the Agreed Order requires that, once the *original* vacancies have been filled, they have to be staffed at or above a 90% fill rate. This provision recognizes the potential for staff attrition and the simple fact that vacancies are bound to happen. Currently, the Wexford mental health positions are filled at 94%. While the

Department has not yet filled all of its *original* vacancies, its mental health positions are staffed at 90%.   IDOC and Wexford have simultaneously worked to fill the *original* as well as any new vacancies to maintain the current – and respectable – fill rates.

Both the Department and Wexford have utilized all means to attract new hires including posting positions, sending out mailers, hosting dinners, reaching out to current employees and requesting they inform their peers about existing positions, interviewing candidates and ultimately making offers.   Despite these efforts, the Department and Wexford have no control over whether a candidate applies for or accepts a position.

It should also be noted that, in addition to the hiring required by the Agreed Order, IDOC has unilaterally undertaken efforts to increase its mental health staffing by formally establishing and filling several new positions: Central Regional Psych Administrator (candidate hired and started), a Menard CC Psychologist II (candidate hired and started) and two Logan MHPs.   IDOC has also identified initial administrative staffing needs for its Office of Mental Health, and has included the following positions in its Fiscal Year 2015 Budget: two administrative staff assistants and one Mental Health Training Specialist.

### Mental Health Professional Visits to Segregation

### Full Compliance

The Agreed Order requires IDOC to assure that "at least once every seven (7) calendar days, a [Mental Health Professional ("MHP")] shall visit every section of each segregated housing unit." (Agreed Order, Sec. IV(a)(i)).   The parties agreed to this provision, understanding that it was to be accomplished with existing MHP staffing.   Several months after the entry of the Agreed Order and the implementation of this process, the monitor opined that "visits" to segregation units by MHPs were insufficient and that actual mental health rounds were needed at least every seven days.   Although this portion of the

Agreed Order was subject neither to interpretation nor approval by the monitor, IDOC agreed to the request, to the extent achievable under current staffing levels, and instructed its MHPs to conduct rounds. In February 2014, 92% of the facilities were compliant with this requirement.   Between February and August, 2014, the percentage of facilities where rounds were conducted every seven days ranged from 84 to 100% and in many instances rounds were conducted more frequently than every 7 days.   As of August 1, 2014, 100% of IDOC facilities are compliant with this section of the Agreed Order.   Each of these rounds is documented on an assessment form that has been final since June, 2014.

## Notification of Security Personnel

## Full Compliance

The Agreed Order requires IDOC, by May 15, 2013, to notify all security personnel of their responsibility for being attentive to the mental health needs of SMI offender in segregation and to report any decompensation through the chain of command.  (Agreed Order, Sec. IV(a)(iii).)   In May of 2013, and again, in May of 2014, a Warden's Bulletin was read during roll calls for a week providing the notice required by the Agreed Order. Furthermore, IDOC has crafted a series of additional mental health-related memos which have been read to security staff over the past year – all aimed at sensitizing line staff to the unique needs of the Department's SMI offenders.   IDOC has complied with the requirements of this section of the Agreed Order.

Plaintiffs do not appear to challenge whether IDOC complied with this obligation. Rather, they complain that IDOC currently lacks the capacity to track and quantify the effectiveness of this effort.   At the present time, the Department is engaged in the complete overhaul of its offender database, which will allow for a greater deal of flexibility in tracking and documenting various offender population data points.   Admittedly, IDOC presently lacks

the capacity to provide the specific data the monitor seeks so as to quantify reports of decompensation.   Recognizing that this is one data point (among many) which will be necessary to demonstrate compliance with any future Consent Decree, the Department is working towards developing the appropriate mechanism for tracking this information.   Until then, IDOC will continue to provide the monitor with the best available information currently in its possession.

<u>**Review of SMI in Segregation**</u>

<u>**Substantial Compliance**</u>

The Agreed Order requires IDOC, by December 31, 2013, to review all SMI in segregation for more than 60 days to determine if their mental health condition at the time they received disciplinary segregation requires a reduction in that segregation time. Ultimately, this presents a much more complex undertaking than what the plaintiffs' motion would have this Court believe.   Where plaintiffs want IDOC only to consider an SMI offender's *current* mental health condition, the Agreed Order specifically requires a review of the SMI offender's mental health condition "both at the time of the original and any subsequent offense."   (Agreed Order, Sec. IV. (c)). The parties' original intent, as evinced by the Agreed Order itself, was to have the Department consider an offender's mental health during the entirety of his segregation term to determine if any of the offenses (originating or subsequent) were attributable to mental health issues and, therefore, subject to reduction. The act of reconstructing an offender's historical mental state and reviewing (in some cases) scores of tickets can be a time consuming and labor intensive process – depending on the individual offender and his/her disciplinary and mental health history.   Despite its best efforts, the complexity of this undertaking prevented the Department from meeting its obligations by the deadline in the Agreed Order.   Nonetheless, it should be noted that the

Department has devoted considerable time and resources to achieving substantial compliance with this requirement.

The review of a majority of the SMI offender's with at least 60 days in segregation was completed earlier this year.   Thirteen facilities have no SMI offenders with more than 60 days of segregation time.   Eight facilities have relatively small numbers of SMI offenders in extended segregation and have completed their reviews.   The remaining facilities (i.e., Pontiac, Logan, Menard and Stateville) possess larger SMI populations with extensive segregation terms and, therefore, require more extensive, time-consuming analysis.   In response, the Department has created special teams to assist the remaining four facilities, in conducting their reviews.   With the assistance of these teams, Pontiac has completed its review, and the Menard reviews are nearing completion.   Despite what plaintiffs' motion may imply, IDOC has made considerable progress in achieving compliance with this obligation – one that was considerably more complex in implementation than originally anticipated when the Agreed Order was drafted.   To that end, the Department is pleased to report that it has reviewed the disciplinary and mental health history of 633 SMI offenders with 60 days or more of segregation time resulting in a reduction of SMI segregation time by almost 350 years.

Notably, it is possible that new SMI offenders may continue to be added to the list subject to review at any time, rendering full compliance with this obligation nearly impossible to meet.   Since the inception of this litigation, the IDOC has rejected any suggestion that an SMI offender should be either barred from, or subject to an arbitrary cap on, segregation time. Due to this, and depending on the underlying offenses, SMI offenders now and in the future may continue to accrue segregation terms of greater than 60 days.   As such, the Department's obligation to review SMI offenders subject to extended segregation terms may continue into the foreseeable future.   While reserving the right to discipline SMI offenders,

the Department simultaneously recognizes the sensitive nature of the subject population. To that end, the Department has implemented steps which set the stage for a drastic overhaul of the manner in which SMI offenders are disciplined.  Starting September 1, 2014, the Department will formalize its practice of involving MHPs in the discipline of SMI offenders who face potential segregation time.   As discussed in greater detail below, these MHPs will have direct input in determining whether SMI offenders receive segregation terms.   To the extent that SMI offenders receive segregation terms (of any duration), the Remedial Plan establishes distinct levels of care for SMI offenders regardless of their assignment.  For example, those SMI offenders diagnosed as requiring a residential level of care will receive commensurate treatment (i.e., ten hours out-of-cell structured activity and ten hours out-of-cell unstructured activity per week) regardless of whether they are in general population, protective custody, administrative detention or disciplinary segregation. Accordingly, should an SMI offender receive greater than 60 days segregation term, it will be with the express approval of an MHP, and the offender will continue receiving appropriate mental health treatment for the duration of his/her segregation term.

The Agreed Order recognizes that the need to review SMI segregation terms may continue into the future, and allows IDOC to seek an extension of the deadline.   While the defendants have not sought an extension, they have worked diligently towards eliminating the backlog and have discussed the delays with the plaintiffs.   Reports on the status of this project have been submitted to the plaintiffs and the monitor as part of the monthly status conferences.   Given the Department's efforts to comply with this requirement, plaintiffs' motion must fail.

## Changes to Disciplinary Procedures

## Full Compliance

The Agreed Order requires IDOC to develop and implement procedures for considering an offender's serious mental illness during disciplinary proceedings involving potential segregation time, but sets no timeframe for doing so.   As part of this process, the order requires IDOC to submit any drafts of proposed regulatory changes to the monitor and plaintiffs by July 1, 2013 and to JCAR by August 1, 2013.   IDOC determined that no regulatory changes were needed to implement the agreed changes to the disciplinary procedures, therefore no submissions to JCAR, the monitor, or plaintiffs were required.   In May, 2012, operations staff and mental health professionals were informed that segregation lists or "dockets" were to be given to mental health staff and cross referenced with the mental health caseload.   Since then, an informal policy of involving MHPs in the discipline of SMI Offenders has existed.   A draft Administrative Directive which achieves the goals set by the Agreed Order has been circulated among plaintiffs' counsel and the monitor and will be implemented effective September 1, 2014.   Pursuant to this Directive, MHPs will be involved in all disciplinary actions relating to SMI offenders who face potential segregation terms.   In such cases, the MHP shall offer an opinion as to the role of mental health issues in the underlying infraction and will have to opportunity to recommend that the SMI offender should either have no segregation or a specific segregation term.   The Adjustment Committee will be obligated to consider the MHP's opinions and follow the MHP's recommendations.   All mental health professional staff members have been trained in the new policy. Given the formal policy's effective date, the Department is in full compliance with this requirement.

**Inpatient Care**

**Full Compliance**[1]

IDOC's response to this motion would be remiss if it did not reiterate the express and intended purpose of the Agreed Order: to create a roadmap for the ultimate creation of a Consent Decree.   Seminal in this orderly process is IDOC's obligation to create and obtain approval for a Remedial Plan.   Of note, both of these steps have been accomplished.   To fault the Department – as plaintiffs appear to do – that, at this stage in the litigation, it has no inpatient beds established for its SMI offenders, is entirely premature.   IDOC's Remedial Plan was approved by the monitor, with the condition that a minimum number of inpatient beds be established in the future.   IDOC has accepted this condition.   The Remedial Plan, both in title and by definition, is a proposal for <u>future</u> action.   *(*Agreed Order, Secs. II(b) and III(a)).   All parties recognize the herculean task facing the Department.   As outlined in its Remedial Plan, the IDOC has identified and committed to the steps needed to create the facilities, hire the clinical, administrative and security staff and establish appropriate levels of care efforts to support a constitutionally-adequate mental health care system. To fault IDOC, at this stage, for not having adequate facilities or staffing serves little more than to put the cart before the proverbial horse.

Admittedly, IDOC has struggled to identify a concrete proposal to resolve the needs of its inpatient SMI population.   However, to suggest that the March 2012 Cohen Report somehow <u>obligated</u> IDOC to act in <u>any</u> way towards its SMI population ignores the orderly process of this case.   The Cohen Report did not bind the Department to any specific action. While it did inform last year's incomplete negotiations of the Consent Decree, plaintiffs and defendants agreed to stay such negotiations to allow IDOC to study its system and propose a

---

[1]  While the Agreed Order has no specific requirement for the provision of inpatient care, it does require the submittal and approval of a Remedial Plan.   Both of these steps have been accomplished.

plan.   The resultant Agreed Order provided for various types of interim relief, but did not require the Department to comply with Mr. Cohen's recommendations, suggestions and opinions.

Struggles aside, IDOC has made concrete progress towards identifying an acceptable inpatient solution.   Prior to its proposal of a Remedial Plan, the Department explored options both within and without the State system.   Efforts to secure space at various private and public hospitals (U of I and Roseland Community Hospital) failed for a lack of interest or security concerns.   Extensive discussions with the Cook County Department of Corrections ultimately revealed that the County's level of care would not meet IDOC's needs.   Earlier this year, IDOC obtained a commitment from the Illinois Department of Human Services ("DHS") to provide up to ten beds for male SMI offenders, provided that IDOC hires certain MHPs. An Intergovernmental Agreement has been signed by the directors of both agencies solidifying this agreement.   IDOC continues to work towards meeting these additional staffing obligations and hopes to have access to the DHS beds in the near future.   Having inspected innumerable State-owned properties as potential inpatient facilities, the IDOC ultimately proposed in its Remedial Plan to establish inpatient levels of care at both the Joliet and Logan mental health centers.   In response, the monitor informed the IDOC that "neither Logan or IYC [Joliet] meets the requirements of the May 8, 2013 Agreed Order for a licensed, accredited, experienced hospital and I am advising the IDOC once again to cease and desist referring to the possibility of inpatient hospital beds being located at Logan or IYC [Joliet] even temporarily unless there is a plan to build hospitals . . . "[2] Despite the fact that the Agreed Order does not require the use of a licensed, accredited and experienced hospital for the provision of inpatient care (it merely suggests it as an option), the Department

---

[2]  IDOC disputes the assertion that it had been told in no uncertain terms prior to the monitor's May 31, 2014 letter that both the proposed residential treatment units at IYC Joliet and Logan Correctional Center were inappropriate for inpatient care.

immediately proposed additional inpatient solutions involving third party licensed and accredited hospitals.   Discussions with two such hospitals (Thorek and Riveredge ) continue, and it is IDOC's intention to provide at least the minimum number of inpatient beds for both male and female inpatient offenders required by the monitor's conditional approval.

### Crisis Beds in Segregation

Plaintiffs raise the issue that IDOC has not removed all crisis beds from segregation, as suggested by the monitor.   (Motion to Enforce, par. 11.)   There is no provision in the Agreed Order related to crisis beds in segregation and this issue is not properly part of plaintiff's motion to enforce the Agreed Order.   Nonetheless, at the insistence of the monitor and in an effort to show the Department's commitment to providing better mental health services, the Department has moved the vast majority of its crisis cells out of segregation.   In December 2013, IDOC facilities had 163 crisis cells statewide, 59 of which were located in segregation units.   The Department allocated approximately $178,000 towards the renovations needed to move crisis cells out of segregation.   As of July 2014, all twenty-five facilities reported on their use of crisis cells.   Approximately 88% of the facilities used crisis cells that were not in segregation and 12% of the facilities, Dixon, Pontiac, and Sheridan, housed at least a portion of their crisis care inmates in the segregation unit for a portion of their crisis watch.   It is important to note that Sheridan housed <u>one</u> inmate in segregation for <u>one</u> day during the entire month of July, 2014.   Since then, Dixon has received additional security staffing to permit the use of its non-segregation crisis cells.   Addressing the crisis cells at Pontiac, which is an all segregation maximum security facility, is not so simple. Accordingly, the Remedial Plan proposes that, as part of the creation of Pontiac's Residential Treatment Unit, the facility's crisis cells will be moved into the more therapeutic mental health unit by April 17, 2015.   Furthermore, although not recognized in any prior submission to this

Court, the IDOC has implemented additional safeguards for offenders on crisis watch for longer than ten days.   Beginning in January, 2014, such offenders began receiving one hour of unstructured out-of-cell activity daily, absent exigent circumstances and as determined by the facility mental health team.   This out-of-cell time was subsequently increased to two hours per day and was also not required by the Agreed Order.

### Conclusion

IDOC is in full or substantial compliance with each and every condition cited by the plaintiffs.   For the above and foregoing reasons, defendants ask this Honorable Court to deny plaintiffs' motion to enforce the Agreed Order.

Respectfully submitted,

ROGER E. WALKER, EDDIE JONES, DR. WILLARD ELYEA, and DR. WENDY NAVARRO,

Defendants,

LISA MADIGAN, Attorney General,
State of Illinois,

Christopher L. Higgerson                              Attorney for Defendants,
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706        By: _____\s\ Christopher L. Higgerson_____
(217) 782-5819                           Christopher Higgerson #6256085
                                          Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

ASHOOR RASHO, #B-38970,                )
                                       )
        Plaintiff,                     )
vs.                                    )          CIVIL NO. 07-1298
                                       )
ROGER WALKER, et al.,                  )
                                       )
        Defendants.                    )

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2014, I electronically filed Response to Plaintiffs' Motion to Enforce May 8, 2013 Agreed Order with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Alan Mills                              Barry G. Lowy
alanmills@comcast.net                   BarryI@equipforequality.org

Camille E. Bennett                      Theresa Powell
camille.bennett@snrdenton.com           tpowell@hrva.com

Marc R. Kadish                          Brian Michael Smith
mkadish@mayerbrown.com                  bsmith@heylroyster.com

Harold C. Hirshman
hhirshman@sonnenschein.com              mailto:cbennett@sonnenschein.com

and I hereby certify that on August 28, 2014, I mailed by United States Postal Service, the document to the following non-registered participant:

NONE.

Respectfully submitted,

By:   \s\ Christopher L. Higgerson
        Christopher Higgerson #6256085
        Assistant Attorney General
        Attorney for Defendants
        500 South Second Street
        Springfield, IL   62706
        (217) 782-5819
        chiggerson@atg.state.il.us

13