E-FILED
Friday, 29 April, 2016  03:48:14 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ASHOOR RASHO, et al., ) | |
| ) | |
| Plaintiffs, ) | No. 1:07-CV-1298-MMM-JEH |
| ) | |
| v. ) | Judge Michael M. Mihm |
| ) | |
| DIRECTOR JOHN R. BALDWIN, et al., ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF HAROLD C. HIRSHMAN
## IN SUPPORT OF THE SETTLEMENT

I, Harold C. Hirshman, declare:

1. I am an attorney licensed to practice in the State of Illinois. I am now senior counsel, having been a partner at Dentons US LLP and its predecessors since 1976. I am an attorney of record and lead counsel for the plaintiffs' class in this case. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge. I offer this declaration in support of the Settlement.

2. My co-counsel, Alan Mills, Marc Kadish and Barry Taylor of Equip for Equality, and I started informal discussions with counsel for Defendants about the possibility of settling this case in early 2010. A settlement class was certified in May 2011. Before the class was certified, the parties spent months working out the details for retaining Fred Cohen, a noted expert on prison conditions and his team, to create the factual underpinnings for a settlement by assessing the adequacy of mental health care and use of segregation in the Illinois prison system. After the Cohen report was received in 2012, the parties engaged in a year of settlement negotiations which ended unsuccessfully in your courtroom in late April 2013. However, the

parties agreed to the entry of the May 8th 2013 Order which created a deadline for the defendants to address the staffing and facilities deficiencies found by Cohen and provided specified interim relief. The order also called for the appointment of Dr. Ray Patterson to oversee compliance with the order. On a monthly basis, pursuant to the May 8th Order, defendants supplied information about the quality of mental health care. With Dr. Patterson, the parties visited various prisons to assess conditions. The Department provided a proposed remedial plan in April 2014; Dr. Patterson conditionally approved this plan and settlement talks began again. These discussions and this Court's November, 2015 order led to the filing of a proposed consent decree in January, 2015. The Court set a hearing in March 2015 to attempt to resolve the remaining settlement issues principally – how to provide hospital care and the meaning of substantial compliance. No settlement was achieved in March 2015. The parties abandoned settlement and began litigation. After a hearing on July 7, 2015, a litigation case was certified on August 14, 2015. In September, 2015, LaShonda Hunt approached me to reopen settlement discussions. Discovery proceeded in parallel with attempting to resolve the remaining issues, which now included Governor Rauner's refusal to sign a consent decree. More than 60 individual prisoners complete medical and mental health records were produced and more than 25 depositions were taken. On November 17, 2015, the Court appointed Dr. Patterson as his expert. Finally, on the eve of Dr. Patterson's expert report to the Court on hospitalization, the parties on December 10 agreed to a settlement, about a week before the Court's scheduled December 17, 2015 pretrial for the January 5, 2016 trial on the need for hospital care.

3. I have been an attorney for 47 years. I have litigated and tried prisoner cases, civil rights cases, civil actions, class actions and myriad other paying and pro bono matters throughout my career. Alan Mills has litigated mainly about prisoner's rights for more than 25

years. Barry Taylor, as vice president of Equip for Equality, Inc. has been involved in many ADA class actions. Marc Kadish is the partner in charge of pro bono litigation at Mayer Brown and has also spent more than 40 years litigating prisoner cases.

4. Based on my experience trying cases, I believe that the relief we obtained for the class in the *Rasho* Settlement is more specific and comprehensive than if we had gone to trial and had prevailed on all counts. Furthermore, I believe that the relief that we obtained will much more quickly benefit the prisoners than if we had gone to trial, prevailed, waited for the Court to issue an order declaring the mental health care and conditions of confinement unconstitutional, and then waited to see if Defendants obtained a stay in order to appeal, or created a plan to come into compliance with the Court's order.

5. I believe that the Settlement is fair, reasonable, and adequate, and that the parties reached the Settlement after years of arms' length negotiations.

6. I have spoken with Messrs. Mills, Kadish and Taylor about the settlement and they agree with the opinions set forth in paragraphs 3, 4 and 5 above.

7. We kept the Court aware of settlement negotiations until June of 2015. Until then, this Court actively participated in those negotiations.

8. The attorneys for the plaintiffs' class plan to closely follow the IDOC's compliance with the Settlement Agreement and work with the settlement monitor on compliance. We are prepared to return to Court, if need be, to enforce the settlement or place the matter on the trial calendar.

9. Attached as Exhibit 1 are true and correct copies of media coverage regarding the settlement of this case.

I declare under the penalty of perjury that the foregoing is true and correct. Executed the 29th day of April, 2016, in Chicago, Illinois.

                                                    */s/ Harold C. Hirshman*
Harold C. Hirshman (ARDC# 1226290)
DENTONS US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
harold.hirshman@dentons.com

96282243\V-2

# EXHIBIT 1

News / Local news / Breaking News

# Illinois settles class-action suit on mentally ill inmates



An inmate sleeps in a mental health unit at the Cook County Jail in 2013. (Alex Garcia / Chicago Tribune)

By **Tribune wire reports** · Contact Reporter

DECEMBER 24, 2015, 6:00 AM

Lawyers representing 11,000 mentally ill inmates in Illinois prisons have reached a settlement with the state in a long-running class-action lawsuit that alleged inadequate treatment amounted to "cruel and unusual punishment," a deal both sides heralded on Wednesday.

Among a long list of provisions, the agreement calls for the Illinois Department of Corrections to build four new treatment units, including at Logan, Pontiac, and Dixon prisons, at a cost of $40 million. Hiring new staff members is expected to reach another $40 million a year.

Filings this week in U.S. District Court in Peoria announced the agreement, which is still subject to final approval by presiding Judge Michael M. Mihm.

Attorneys for the mentally ill inmates said the agreement will help ensure that they get better access to care and should also reduce the amount of time they spend in solitary confinement. The lawyers

said in a statement that Corrections officials would release from solitary those with serious mental illnesses confined there for minor violations.

"This truly is a humane and monumental settlement that will have a lasting impact on the people of this state," said Harold C. Hirshman, one attorney for the inmates.

The Illinois Department of Corrections said Wednesday the department has already implemented major changes in mental health treatment in its prisons in recent years. IDOC Acting Director John Baldwin said in a statement that Illinois prisons were never intended to be psychiatric hospitals, but they have become holding centers for people with serious mental illness.

He added about the proposed agreement: "This will improve correctional outcomes for those with mental illness and increase safety for our dedicated staff, all offenders, and the citizens we serve."

*Associated Press*

Copyright © 2016, Chicago Tribune

**This article is related to:** Mental Health

*Serving the city's law profession since 1854*

January 5, 2016

Home   Courts ▼   Calendar   Public Notices   40 Under 40

# Settlement may help resolve one prison problem

BY ROY STROM
LAW BULLETIN STAFF WRITER

Built in 1925 and known as the "roundhouse," the circular jail at Stateville Correctional Center near Joliet is the last of its kind in the country.

Four tiers of prison cells line its circumference with a guard tower at its center. This panopticon-style layout would revolutionize inmate observation, argued a 19th century philosopher.

Reality proved otherwise.

Overcrowding means that cells designed for one inmate now house two, who struggle to move at the same time.

The cells' open bars have been covered with Plexiglas that is now opaque, rendering nearly useless the guard tower's 360-degree line of sight. To seek attention, inmates use their voices, naturally amplified by the cylindrical acoustics.

"The place is a cacophonous madhouse," said Alan S. Mills, executive director of the Uptown People's Law Center, who has visited the facility.

Mills and others, including the Illinois Department of Corrections, hope that a settlement reached last month in a class-action lawsuit will provide relief from this place to some of the prison system's most vulnerable — its more than 11,000 mentally ill inmates.

The settlement in a case filed in 2007 brings some widespread changes to the state's mental health care system for inmates, which experts said desperately lags behind national standards. The settlement will lead to Illinois' first psychiatric hospital for prisoners and will allow the hiring of more than 300 mental health professionals.

In a change germane to those living at the roundhouse, the settlement will replace a policy that often puts the mentally ill in segregation, meaning they are left in their cells for nearly 24 hours a day and often constantly monitored to prevent suicide attempts. While this may


Marc R. Kadish


Harold C. Hirshman



You know it takes more than you to build a practice.

59 — Ordering Made Easy — ORDER YOUR 2016 COPIES TODAY! 1.877.556.0719

ICLE Formulaw POWERED BY TheFormTool PRO
Your Editable Automated Forms Solution

You May Also Like

**Panel: No punishment for MH370 lawyer**

**Justice remains much the same 200 years after first high court met**

**Supreme Court nominee praises lawyers who do pro bono work**

**Man freed in 1957 slaying speaks of future**

prevent suicide, Mills said it often causes the mentally ill to "decompensate."

"They deteriorate, engage in self harm, lash out at other people," he said. "You're falling apart is the more prosaic way to put that."

As a result of the settlement, the IDOC will release from solitary confinement prisoners with serious mental illnesses who are there for non-violent offenses. It will also consider mental health before segregation sentencing. That means the mentally ill at the roundhouse and elsewhere may get a reprieve from their cells, lessening the risk of "falling apart."

The settlement comes as acceptance is growing locally and nationally for the idea that society's mentally ill have largely been imprisoned rather than treated. Cook County Sheriff Thomas J. Dart has said the Cook County Jail is the nation's largest mental health care facility. Its warden is now a psychiatrist.

Over the eight years of litigation in the recently settled case, according to lawyers involved, the state's response to the lawsuit see-sawed from admitting a problem to denial and, ultimately, a compromise aimed at bettering the odds that mentally ill offenders can return to society.

The story behind the settlement shows how the attitudes toward prison mental health shifted over time, and how politics played a large role in that. It is also a story of what Big Law firms can do with pro bono efforts.

"We didn't perceive that we were riding some kind of wave when we started this thing," said Harold C. Hirshman, a Dentons U.S. LLP partner who led the pro bono efforts in a case that was at one point scheduled to begin trial today.

"Of course, we fell victim to politics. But in the meantime, the world was turning a bit."

Ashoor Rasho was admitted to the Illinois prison system on Sept. 27, 1996, with an eight-year sentence for burglary. Had he served his time peacefully, he could have been released after four years, in 2000.

Instead, he has been convicted of a series of aggravated assaults, attempted suicide multiple times and has a projected parole date in 2022.

Marc R. Kadish, a Mayer, Brown LLP partner who represented Rasho in a pro bono case, said his client's story highlights the results of jailing the mentally ill.

"All of his convictions were for shouting at the guards or things that are not pleasant. Throwing feces or urine. But he never stabbed a guard," Kadish said.

In a more lucid moment, and with the help of Mills' Uptown People's Law Center, Rasho filed in the U.S. District Court for the Central District of Illinois a pro se lawsuit in 2007. He alleged the lack of mental health treatment in Illinois prisons was cruel and unusual punishment in violation of the Eighth and 14th Amendments and discrimination under the Americans with Disabilities Act and Rehabilitation Act.

Shortly afterward, Kadish and Hirshman became involved. Eventually, Hirshman said the law firms and legal clinics would provide more than $7 million in legal work.

Hirshman said the most difficult aspect of the case was a judgment call that would be made more than once: Determining how to most quickly

Immigrant kids placed with adults not in U.S. legally

AP probe: Senate misled on military rape cases

Cellphone users get approval to pursue lawsuit

Former donor to Schock sees lawsuit tossed

Latest listings from

Lawyers Service Mart - All-Pro Proc and Investigation

Attorneys - Sr. Staff Attorney

Paralegals - Paralegal / Legal Secre

Legal Secretaries - Office Manager Secretary

Attorneys - LABOR LAW ATTORNE

Attorneys - Senior Associate Attorn Injury

achieve a result that "had the ability or the possibility of creating a much better environment."

Rather than setting the case on track for a trial, Hirshman's first decision was to take a more cooperative approach toward a settlement, spurred by the history of then-IDOC Director Michael Randle. While working in the Ohio Department of Corrections, Randle had settled a similar mental health lawsuit that Hirshman said would be a "significant, transformative event in Illinois."

To establish a baseline of the current mental health programs, both sides agreed to an independent analysis, which was conducted by Fred Cohen, a New York law professor and expert on prison conditions.

After spending nine months visiting and observing Illinois' prisons, he authored a 180-page report in 2012. That report was paid for by the state, in a tradeoff for an agreement that it would remain private. But, by all accounts, it did not paint a favorable picture for the state.

"Essentially, Cohen concluded in the first instance that Illinois had no system for delivering mental health care" in prisons, Hirshman said. "And by that he meant they could not verify what they were doing; who they were doing it for; and how well they were doing it."

Hirshman hoped to use this to craft a settlement but quickly hit a roadblock. Randle was out of the job before the report was finished, in 2010, when an early-release program he championed came under scrutiny. Some who were released re-offended.

By May 2013, the two sides had largely come to an agreement on changes — similar to those that were ultimately agreed to — and an independent monitoring system to ensure their installation.

"In essence, it was a document which was a blueprint of deficiencies," Hirshman said.

In 2014, the monitor found the progress on the agreement was adequate except for one glaring exception: No movement had been made on the mental health hospital in the agreement.

In a report to the court, the monitor said the prison system's assertion that — despite an inmate population of nearly 48,000 — no one serving time in Illinois would ever require a psychiatric hospital bed is "ridiculous and not supportable."

Things unraveled further shortly after Gov. Bruce Rauner was elected in November 2014.

"He didn't campaign knowing there was an 11,000-inmate class-action suit against the IDOC," Kadish said. "He and his office and staff had to be familiarized with the case."

In March, Hirshman said representatives from the IDOC said they had no intention of signing a consent decree. Long the end goal of the settlement process, a consent decree would give Hirshman's team an enforceable document in federal court if the state failed its requirements.

In response, Hirshman asked U.S. District Court Judge Michael M. Mihm to put the case on track for trial.

Nearly 40 depositions were taken, and a trial date was set.

The first breakthrough, Hirshman said, came in August when Rauner named John Baldwin the IDOC director. Hirshman said LaShonda A. Hunt, the IDOC general counsel, brokered a meeting between Baldwin

and Hirshman's team. There, Hirshman said Baldwin told him he hoped changes would be made within a year.

"We didn't quite know what to make of that, but it certainly sounded better than we're going to fight you like Churchill said on the beaches, in the streets, and wherever else," he said. "But we were unwilling to suspend litigation. We'd already been down that road."

Following an unsuccessful settlement hearing shortly before Thanksgiving, Hirshman said he asked the IDOC for a proposed settlement by Dec. 2. He got it Dec. 4. While continuing to take depositions in preparation for the January trial, the two sides hashed out an agreement by Dec. 16, which was announced by the judge Dec. 22.

The settlement provides 350 full-time mental health experts and 420 additional guards at an annual expense of $40 million. The construction of the hospital, in Joliet near the roundhouse, will cost $40 million.

"Illinois prisons were not intended to be psychiatric hospitals but the reality is, they have become holding places for people who suffer from serious mental illness," Baldwin said in a news release.

"Our end goal is to get them stabilized and help them cope and adjust to their environment. This will improve correctional outcomes for those with mental illness and increase safety for our dedicated staff, all offenders, and the citizens we serve."

Mills lauded Baldwin, formerly the head of corrections in Iowa, for seeking reforms but acknowledged the cost may be prohibitive.

"I think the will is there. The understanding is there, at least at the director level," Mills said. "And that's part of the reason we were willing to settle."

Hirshman said the changes will not put Illinois "at the apex of mental health care and state prison systems."

"But we'll have come off the bottom," he said.

The state will, however, remain the last to operate a panopticon prison. That is unlikely to change.



Send to friend
[          ] [Send]
Click here to enter an extra message...

Resources | Products |

Advanced Search    Awards              Law Bulletin          AccessPlus
                                       Publishing Co

Classifieds        Contact Us          JuraLaw               Sullivan's Law
                                                             Directory

http://www.chicagolawbulletin.com/Archives/2016/01/05/prisons-01-05-16.aspx    4/29/2016

# THE HERALD-NEWS

47°F | Overcast | Full Forecast

Subscribe to The Herald-News

NEWS

PRO FOOTBALL WEEKLY

OPINION

VIDEO

NEWSLETTER

SHARE

CLASSIFIED

WHEELS

SPORTS

FEATURES

OBITS

EVENTS

DEALS

MORE

JOBS

REAL ESTATE

# Joliet Illinois Youth Center renovation part of settlement deal for mentally ill inmates

Law firm: 'Landmark' deal will result in better mental health care

Published: Thursday, Dec. 24, 2015 11:05 p.m. CDT • Updated: Thursday, Dec. 24, 2015 11:09 p.m. CDT


(Shaw Media file photo)

By LAUREN LEONE-CROSS -
lleonecross@shawmedia.com

JOLIET – The Illinois Department of Corrections has reached a settlement with lawyers representing 11,000 mentally ill inmates in a 2007 class action lawsuit alleging the state provided inadequate treatment.

The settlement in Ashoor Rasho vs. John Baldwin means there will be "very, very significant" changes to the way IDOC handles segregation of mentally ill prisoners, said

Harold Hirshman, an attorney with the Chicago-based law firm Dentons who led the legal team representing the plaintiffs in the lawsuit.

As part of the deal, IDOC will hire more than 700 clinical and security staff to work at new residential treatment units that are under construction — one of which will be housed at the now-shuttered Illinois Youth Center on McDonough Street in Joliet. The others will be housed at Logan, Pontiac and Dixon correctional centers.

A federal judge has preliminary approved the settlement, concluding that "it is fair, reasonable, and adequate," but the final deal still requires court approval, according to an IDOC news release. A full hearing is set for May.

Joliet renovations

Hirshman said IDOC will have 15 months following the judge's final stamp of approval in May to renovate and staff IYC Joliet, placing the completion deadline in August 2017. The earlier expectation was that it would be open and operational by spring 2016.

Nicole Wilson, spokeswoman for IDOC, said Thursday she could not yet confirm Hirshman's timeline. This summer, Wilson told The Herald-News the state agency was on track to finish the conversion of IYC Joliet by early 2016.

"I don't think so," Hirshman said, arguing that time frame is highly unlikely. "I'm sorry to say that but I don't think so."

State Sen. Pat McGuire, D-Joliet, said he would hope – given the progress made on construction at the McDonough Street campus – the work will be completed sooner than mid-2017.

"Of course we want this done right. We want effective care of severely mentally ill offenders to be done right. We also don't want this facility to sit idle once the work is completed," McGuire said. "The sooner the state of Illinois starts giving effective care to severely ill inmates, most of whom are going to be released, the safer our communities will be."

Hirshman in an email said he hopes the governor and state lawmakers – now embattled in a six-month budget impasse – will agree to provide the necessary dollars for the work.

"It would be a shame if this seriously disadvantaged group would become victims of some sort of political football," he said.

**Previous Page | Next Page**

Related Links

IYC Joliet renovations ongoing; Illinois corrections department mum on details