E-FILED
Thursday, 20 December, 2018  02:51:58 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| Ashoor Rasho, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:07-CV-1298-MMM-JEH |
| | ) | |
| v. | ) | The Honorable |
| | ) | Michael M. Mihm, |
| Director John R. Baldwin, et al., | ) | Judge presiding |
| | ) | |
| Defendants. | ) | |

### Plaintiffs' Status Report on the Inquiry Into Use of Force Against Members of the Plaintiff Class and Motion to Set a Schedule

Plaintiffs report to the Court on the inquiry into the use of force findings and request that the Court set a schedule for a period of discovery for the purpose of furthering the formal dispute resolution process required by the Settlement Agreement.

### Introduction

1.      The Monitor has sounded an alarm about the problem of violence against mentally ill prisoners that cannot be ignored. During the December 13th status conference, the Court expressed great concern about these findings in the Monitor's Mid-Year Report and directed the parties to confer to see if they could cooperate and find a process to address these serious issues.

2.      The inquiry into this longstanding problem of excessive force at Pontiac, and elsewhere, must lead to systemic solutions. A structured

process, including some formal discovery, is necessary to comprehensively address these difficult issues. The required process under the Settlement Agreement's Section XXIX provides for a comprehensive and cooperative process that has not yet been fully engaged in by the parties. That process needs to be re-ignited with rigorous effort so that an agreed-upon plan can be developed to reduce violence towards prisoners with mental illness.

## Background: Chronicles of Violence

3.      The excessive use of force against prisoners with mental illness has been repeatedly raised in this case, going back at least to the Cohen Report. The Settlement Agreement attempts to address these issues by requiring certain restrictions on use of force, including that "[f]orce shall be employed only as a last resort or when other means are unavailable or inadequate, and only to the degree reasonably necessary to achieve a permitted purpose." *See* Settlement Agreement, Section XXIV (incorporating 20 Ill. Admin. Code 501.30).

4.      Throughout Dr. Stewart's tenure, he has voiced serious concerns to Defendants about violence at Pontiac and elsewhere:

a.  Questioning high rates of unplanned use of force at Pontiac and corporal punishment at Menard, the Monitor wrote that the "sheer number and the uniformity of complaints, however, raise serious questions about the overall use of force within IDOC." First Annual Report, ECF. No. 1373 at 93, 98-99. *Id.* at 100.

b.  "The Monitor received numerous credible reports from mentally ill offenders at Pontiac that custody staff were physically abusing them. The reports were all similar in nature in that these episodes would occur in the evenings or at night when clinical staff was not present. They were occurring primarily in North House and South Mental. The Monitor takes these reports very seriously and will personally spend time at Pontiac during off hours during the next monitoring period." 2017 Midyear Report, ECF.  No. 1646 at 101.

c.  "[T]he Monitor must take into account the equally serious, ongoing reports of physical abuse carried out by the custody staff on mentally ill offenders at Pontiac. The Monitor has personally interviewed numerous mentally ill offenders at Pontiac who give very credible reports of abuse being carried out by the custody staff especially on the mental health unit and on the North House … The Monitor has reported these incidents to IDOC leadership for at least the past 18 months to no avail ..." Second Annual Report, ECF. No. 2122 at 101.

d.  In July 2018, the Monitor provided the IDOC with a list of individuals who had reported abuse to him at Pontiac, as well as provided a list of Class Member court filings detailing physical violence. Those lists, together, provide the names of 42 Class Members who have reported excessive force by security staff.

e.   In November 2018, the Monitor again set forth serious concerns about the informal system of use of force at Pontiac Correctional Center. *See* 2018 Midyear Report, ECF. No. 2493 at 92-93 (Nov. 30, 2018). He further stated that, despite attempting to address these issues for the last two years, the Department has failed to take steps to curb the abuses. *Id.* at 93.

5.   Reports of violence against prisoners with mental illness have likewise filled this Court's docket. In the last six months alone, there have been more than 50 filings by Class Members about excessive force against prisoners with a mental illness.[1]

---

[1] Many of the descriptions by prisoners in their court filings have been extremely disturbing. A few examples are set forth below.

Mr. Carl Furrell (ECF No. 2094) described how he and many others in his gallery were pepper sprayed, taken outside to the yard, and chained to a fence for two hours in below freezing temperatures without jackets, hats, or gloves. Mr. Furrell attached affidavits from several other prisoners describing that evening's events.

Mr. De La Garza has filed a series of pleadings describing a pattern of retaliation (Docs. 2363, 2399, and 2436), including a threat by Major Forbes to Mr. De La Graza (regarding the earlier motion he had filed in this case), "We can handle your motion but you won't be able to handle the ass woopen we gonna give you" (Doc. 2399). In another filing, he describes a series of assaults he suffered at the hands of correctional officers, including physical assaults on July 27, 2018 and August 10, 2018, the latter of which ended with Mr. De La Graza on crisis watch for four weeks.

Mr. Steven Lisle, has filed multiple complaints with this Court of brutality in Pontiac's North House. On March 3, 2017, the Court directed counsel to investigate his complaint of excessive force and sexual assault in retaliation for filings in this case (ECF No. 1233). The video of the incident, reviewed by counsel, depicted the Tactical Team approach Mr. Lisle, who was calm and in the yard cage, restrain him, and force him to walk backwards and bent down at the waist with a plastic shield pressed against his head, all the way from the yard to the shower area. There is then a gap in the video, after which Mr. Lisle is seen

6. While the vast majority of those reports from Class Members to the Court have come from Pontiac, the issue is not limited to Pontiac. One example is a security video viewed by counsel showing the tactical team at Logan repeatedly spraying mace directly into the face of a woman who was in a mental health crisis, for no purpose other than to expedite their transport of her to a crisis cell.

7. Most disturbing of all is the death of a man with schizophrenia, who died after being severely beaten by correctional staff on May 17, 2018 at Western Correctional Center.[2] The injuries that led to his death included 15 rib fractures, multiple hemorrhages, and severe colon damage.

### A Compressive Review and Formal Dispute Resolution Process Is Needed

8. The use of excessive force is a complex and pervasive problem that will only be resolved if the parties commit to a comprehensive and formal structure. That structure is provided by the Settlement's dispute resolution process, which is mandatory.

---

being removed from the shower, with skin showing on his legs and back. While there is no clear picture of Mr. Lisle at this point in the video, Mr. Lisle described that his rear end and part of his genitals were exposed to the entire gallery. He reported that during the "gap" in the video, guards assaulted him in the shower.

[2] Shannon Heffernan, Inmate Dies After Altercation with Prison Staff, Death Ruled a Homicide, WBEZ News, November 15, 2018, available at https://www.wbez.org/shows/wbez-news/inmate-dies-after-altercation-with-prison-staff-death-ruled-a-homicide/d04e9490-bc40-43f0-a762-ed32730c1057; ABC News, Family of inmate Larry Earvin, who died in Illinois prison, demands answers, November 28, 2018,  available at https://abc7chicago.com/family-of-inmate-who-died-in-illinois-prison-demands-answers/4783577/

9.     On July 2, 2018, Plaintiffs' counsel sent Defendants a letter initiating the dispute resolution process of Section XXIX. Counsel's letter included use of force against prisoners with mental illness, along with other violations of the Settlement Agreement.

10.     Section XIX(b) of the Settlement Agreement requires that "Defendants' response shall contain a description of the steps they took to investigate the issues addressed in [plaintiffs'] notice, [and] the results of the investigation ..." Defendants answered by reference to their Quarterly Report, which responded to the Monitor's concerns by stating that they had opened investigations into each of the individual incidents reported to them, including those disclosed by the Monitor on July 18.

11.     On December 14, 2018, Plaintiffs' counsel requested working out a methodology to disclose Class Members who report violence confidentially and asked to review the last two years of internal investigations into violence at Pontiac.

12.     Defendants rejected that request, stating instead that they would continue to respond to specific requests about incidents identified by Plaintiffs' counsel and would produce the final investigative reports from those incidents. To that end, Plaintiffs have now requested the internal investigations and reports arising from the 42 names previously provided by the Monitor in July 2018. However, reviewing individual incidents of violence in isolation is not sufficient.

13.     In order to facilitate meaningful review and a resolution process, Plaintiffs are requesting a brief period of discovery to allow for a more systemic review of use of incidents, not predicated exclusively on Class Member's self-reports of violence. Plaintiffs also request that the Court set a modified schedule for the dispute resolution process required by Section XXIX to facilitate more meaningful process toward resolution.

**The Parties' Recent Meet and Confer with the Monitor Did Not Resolve the Issues**

14.     As directed by the Court, on December 17, 2018, the parties held a joint phone conference with the Monitor regarding production of information received by the Monitor about physical abuse at Pontiac Correctional Center.

15.     During the call, the Monitor reported that in July 2018, he had provided the IDOC with a list of individuals who had reported abuse to him at Pontiac, along with a list of court filings by Class Members who had described physical abuse. Those lists, together, provide the names of 42 Class Members who have reported being subjected to violence by security staff. The Monitor had since requested the outcome of IDOC's investigations of those incidents. The IDOC, however, refused to provide the results to the Monitor.

16.     During the December 17th meet and confer, the Monitor again raised concerns that the IDOC has not taken steps to address the systemic issues at Pontiac that are resulting in the use of excessive force. The Monitor

7

again asked Defendants what had been done to investigate the individual reports of violence and, more importantly, to address the systemic issues which he stated should be the focus. Defendants provided no response to the Monitor's inquiry.

17.    Rather than report on the steps they had taken to investigate these allegations of abuse, Defendants focused on their demand for the Monitor's handwritten notes on his interviews with members of Class Members and staff. The Monitor objected to this request, explaining that doing so would impede his ability to effectively monitor this issue, as he relies on being able to have confidential interviews. Given the reports of retaliation from Class Members, he was concerned about the chilling effect it would have on his ability to obtain information, if Class Members knew that whatever they said would be turned over to prison officials.

18.    IDOC rejected all suggestions of compromise by Plaintiffs' counsel that could have allowed IDOC to fulfill its stated goal of investigating brutality. For example, the information could be provided directly to Internal Affairs for investigation without the involvement of counsel for either side, or the Monitor could disclose the identifying information to IDOC, as he did last July, so that they could obtain the allegations from Class Members directly.

19.    IDOC is demanding that the Monitor turn over his notes, in their original form, from his interviews of Class Members and staff in an

8

effort to discredit the Monitor. Defense counsel has expressly stated that he seeks to undercut the Monitor's findings and have him removed as Monitor.

20.     The Settlement Agreement, however, specifically provides for the ability of parties to speak privately with the Monitor. Section XXVII(f)(v) of the Settlement Agreement provides: "The Monitor shall . . . hav[e] the authority to request private conversations with any party hereto and their counsel." The purpose of this provision is to facilitate effective monitoring. The monitor's job is not one of litigation; he must be able to have both prisoners and staff speak to him confidentiality without fear of retaliation.

Wherefore Plaintiffs respectfully request that this Court enter an Order: (1) allowing the Monitor to provide IDOC with information regarding reports of excessive force while also maintaining the confidentiality of his work product and communications of Class Members, and (2) setting a schedule for the parties to engage in discovery on the issue of the use of force; and (3) setting a schedule for the dispute resolution process.

RESPECTFULLY SUBMITTED,


By:    s/Alan Mills
       One of the attorneys for Plaintiffs

Harold C. Hirshman                          Laura J. Miller
DENTONS US LLP                              Amanda Antholt
233 S. Wacker Drive, Suite 7800             Samantha Reed
Chicago, IL  60606                          Equip for Equality, Inc.,
Telephone: (312) 876-8000                   20 N. Michigan Ave., Suite 300
Facsimile:  (312) 876-7934                  Chicago, IL 60602
harold.hirshman@dentons.com                 (312) 341-0022 (phone)
                                            laura@equipforequality.org
                                            amanda@equipforequality.org
                                            samantha@equipforequality.org


Marc R. Kadish                              Alan Mills
Mayer Brown LLP                             Elizabeth Mazur
71 S. Wacker Dr.                            Nicole Schult
Chicago, IL  60606                          Uptown People's Law Center
(312) 701-8747 (phone)                      4413 N Sheridan
(312) 706-8774 (fax)                        Chicago, IL  60640
mkadish@mayerbrown.com                      (773) 769-1410 (phone)
                                            alan@uplcchicago.org
                                            liz@uplcchicago.org
                                            nicole@uplcchicago.org

**<u>CERTIFICATE OF SERVICE</u>**

I, Alan Mills, an attorney, hereby certify that on December 20, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ Alan Mills                              
Alan Mills