E-FILED
Thursday, 07 February, 2019  05:03:13 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

ASHOOR RASHO, et al.,

     Plaintiffs,

  v.

DIRECTOR JOHN R. BALDWIN, et al.,

     Defendants.

No. 1:07-CV-1298-MMM-JEH

Hon. Michael M. Mihm

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## PETITION FOR ATTORNEYS' FEES AND COSTS

Defendants, officials of the Illinois Department of Corrections sued in their official capacity, by and through their attorney, Kwame Raoul, Attorney General for the State of Illinois, submit this response to Plaintiffs' Petition for Attorney's Fees, Costs and Expenses, Doc. 2532.

Without limiting their petition to fees and costs incurred to the proceedings on their motion to enforce the Settlement Agreement and the related preliminary and permanent injunction hearings, Plaintiffs seek $918,180.70 in fees and $42,631.27 in costs, for a total award of $960,811.97. After appropriate deductions to limit the fees and costs to those that pertain to briefing and proceedings related to the alleged Eighth Amendment violation, and to eliminate impermissibly vague and duplicative time and expense entries, the Court should award no more than $434,480.19 in fees and $22,450.00 in expenses, for a total award not to exceed $456,930.19.

**INTRODUCTION**

On October 10, 2017, Plaintiffs moved to enforce the May 23, 2016 Amended Settlement Agreement, alleging that Defendants were in substantial non-compliance with five areas of the Settlement Agreement, and that this non-compliance constituted a violation of Plaintiffs' Eighth Amendment rights and their rights under the Americans with Disabilities Act (ADA). (Doc. 1559.) After receiving a preliminary injunction, Plaintiffs moved for a permanent injunction. (Doc. 2112.) On October 30, 2018, the Court found that Plaintiffs had proven by a preponderance of the evidence that Defendants were systemically violating the Eighth Amendment in five specific areas. (Doc. 2460.) The Court found that Plaintiffs did not adequately present their ADA claim and made no findings on that claim. (*Id*.)

Based on the Court's order to correct the Eighth Amendment violation, the Court ordered Defendants to pay Plaintiffs' counsel $1.9 million pursuant to a prior settlement agreement. (Doc. 2516 at 16–18; Doc. 1091.) When Plaintiffs' counsel agreed to that $1.9 million figure, they knew they would have no claim to that amount unless they did additional work in the future to establish a federal violation. But now, in addition to the $1.9 million, Plaintiffs are seeking an additional $918,180.70 in fees and $42,631.27 in costs, for a total award of $960,811.97, as prevailing parties on the motion to enforce, or a total of $2,860,811.97 as a result of the Court's order finding a federal violation.

Although Plaintiffs have prevailed in establishing an Eighth Amendment violation, they have not shown that all of the fees and costs requested were "directly

and reasonably incurred in proving an actual violation of the plaintiff's rights . . . ."
42 U.S.C. § 1997e(d)(1)(A). Plaintiffs contend that they exercised billing judgment by
removing non-recoverable tasks, but their billing records show otherwise. Plaintiffs
have not limited their fees and costs to work related to the motion to enforce (filed in
October 2017) and the related subsequent proceedings. Instead, they are seeking
recovery for large amounts of work dating back to 2016 and early 2017, including
routine contract monitoring and prison visits that not only are not directly related to
their work on the motion to enforce and their efforts to prove a constitutional
violation, but may also relate to counsel's work for prisoners in other cases.[1]

For example, they seek recovery for work performed only eight days after the
Settlement Agreement was executed and more than a year before the motion to
enforce was filed, with no explanation as to how that work directly relates to proving
a constitutional violation in any of the five areas addressed in the motion to enforce.
They also seek recovery for multiple visits to prisoners who did not testify in these
proceedings. Plaintiffs also seek fees for vague entries, like entire descriptions that
simply say "emails," and for secretarial tasks, such as completing thank you letters
to class members. Plaintiffs should not receive fees for hours that are not directly
related to proving the constitutional violation found by the Court. They also should

---

[1] Receipts for expenses submitted by UPLC regularly include the name of this case
along with the names of other UPLC cases. For example, they include a receipt for
an Enterprise rental car with a handwritten notation of "Rasho/Lippert." (Doc.
2532-11 at 190.)

not receive any recovery for fees and costs that are vaguely described, inadequately documented, not compensable, duplicate, or excessive.

Plaintiffs similarly seek reimbursement for large amounts of expenses that are not compensable, like the cost of Liz Mazur's admission to the Southern District of Illinois. Not only are attorney admission fees not a recoverable cost, *Nilssen v. Osram Sylvania, Inc.*, No. 01 C 3585, 2007 WL 257711, at *1 (N.D. Ill. Jan. 23, 2007), but an admission in the Southern District is completely unrelated to this case, which is pending in the Central District. Plaintiffs also seek fees for costs that are not directly related to the case, like a hotel in Springfield to accommodate testimony before the Illinois Legislature. Entries like these undermine the credibility of Plaintiffs' entire petition. In addition, many of the expense entries are vague and do not have a corresponding time entry, making it impossible to determine whether that expense was directly related to proving the alleged Eighth Amendment violation. Similarly, various expense entries make it difficult to determine what expenses are actually being sought. A paying client would not accept a similar lack of detail and would not pay for fees and expenses not incurred in connection with its specific matter.

## <u>LEGAL STANDARD</u>

42 U.S.C. § 1988 gives a prevailing party the opportunity, at the Court's discretion, to recover reasonable attorneys' fees in civil rights actions. 42 U.S.C. § 1988. The prevailing party bears the burden of proving the fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).   Generally, courts arrive at a

reasonable fee by first calculating a lodestar—multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* at 433.

The PLRA imposes additional limits on the ability to recover attorneys' fees in suits brought by prisoners, such as this one. First, the fee must be "*directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . . and the amount of the fee is proportionately related to the court ordered relief for the violation . . . .*" 42 U.S.C. § 1997e(d)(1) (emphasis added). Furthermore, the PLRA imposes a cap on the hourly rate that can be awarded for attorneys' fees of no more than 150% of the hourly rate established under 18 U.S.C. § 3006A for payment of court-appointed counsel. 42 U.S.C. § 1997e(d)(3). Although prisoners can enter into an agreement to pay attorney's fees in an amount greater than that authorized by the PLRA, that is only when that agreed fee is paid by someone other than the defendant pursuant to § 1988. 42 U.S.C. § 1997e(d)(4).

## I.   Defendants' Objections to Non-Compensable Fees

### A.   Inadequately Documented or Non-Compensable Hours

Attorney fees should reflect hours reasonably required to "see the case through trial, to appeal, and for the collection of fees." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). Plaintiffs must submit evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. When documentation of hours claimed is inadequate, the Court can reduce the award accordingly. *Id.* Incomplete or imprecise billing records preclude meaningful review by the Court and should be reduced. *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). A party may not

collect fees for hours that are excessive, redundant, or otherwise unnecessary, *Johnson* 668 F.3d at 931 (quoting *Hensley*, 461 U.S. at 434), and a court may strike or disregard vague or unjustified billing entries like those submitted here. *Montanez v. Simon*, 755 F.3d 547, 556 (citing *Harper*, 223 F.3d at 605). And as noted above, fees in prisoner cases can only be awarded for work directly related to proving an actual violation of Plaintiffs' rights. 42 U.S.C. § 1997e(d)(1).

Defendants have assembled in their Exhibit 1 the time entries that should be excluded because they are inadequately explained, excessive, or not directly related to proving the alleged Eighth Amendment violation in this case. Scant descriptions like those in Harold Hirshman's records that say only "emails" or "teleconferences" (see entries on 7/19/17, 8/7/17, and 11/21/17 as examples, Doc. 2532-2 at 3, 5), or Nicole Schult's entries for "reviewing filings" (see entries on 7/25/18, 8/20/18, 9/19/18, Doc. 2532-3 at 36, 39, 43), without more, do not adequately describe the work performed and leave the Court unable to determine whether the time spent on those tasks was reasonable and necessary to proving the alleged Eighth Amendment violation.

In addition to vague descriptions of tasks, Uptown People's Law Center ("Uptown" or "UPLC") has included fees for attorneys who have not been identified either in Plaintiffs' fee petition or in any of the supporting documents. In addition to entries from Uptown attorneys Alan Mills and Nicole Schult who worked on this case, Uptown also seeks recovery for time entered by individuals identified as "ED" and "LM." (Doc. 2532-3, at 19–20, 35.) Plaintiffs should not receive compensation for tasks

performed by these individuals not only because Plaintiffs have not adequately explained who they are, but also because their work does not appear to be directly related to proving the Eighth Amendment claim.

While Defendants address duplicative time entries below, some of the time entries, even if they reflected work directly related to the motion to enforce, are clearly so excessive that they should be rejected. For example, based on the records submitted by Plaintiffs, on May 30, 2018 (long after the end of the preliminary injunction hearing and long before the start of the permanent injunction hearing), Nicole Schult made two round-trips to Pontiac, conducted a tour/visit, and additional visits, for a total amount billed on that one day of 23.5 hours. (Doc. 2532-3 at 33–34.) This does not seem possible or reasonable, and does not appear to be directly related to the motion to enforce.

Defendants' Exhibit 1 also identifies numerous activities that are not directly related to Plaintiffs' effort to prove the particular Eighth Amendment violation at issue in this case. For example, Plaintiff's seek recovery for time spent on "restraint issues" (Harold Hirshman entry on 1/23/18, Doc. 2532-2 at 7), reviewing data on use of force (Nicole Schult entry on 10/12/17, Doc. 2532-3 at 20), attending a conference where Director John Baldwin was a keynote speaker (Alan Mills entry on 10/13/17, Doc. 2532-3 at 21), writing thank you letters to class members (Alan Mills entry on 5/14/18, Doc. 2532-3 at 33), a status call with the Court to discuss attorneys' fees (Alan Mills entry on 12/5/16, Doc. 2532-3 at 7), and traveling to Springfield and testifying being Illinois House regarding the Department's budget (Alan Mills entries

on 3/22/17, Doc. 2532-3 at 12), among many others. Additionally, Plaintiffs seek recovery for generally communicating with class members (Evangeline Dawson entry on 10/20/17, Doc. 2532-3 at 46), and sending pleadings to the monitor as required by the Court (Evangeline Dawson entries, Doc, 2532-3, at 47–48). Alan Mills and his colleagues at UPLC seek recovery for over 190 entries for time (totaling more than 480 hours or $105,840.00) for work spanning over a year before Plaintiffs' filed their motion to enforce in October 2017. Amanda Antholt and her colleagues at EFE seek recovery for over 300 entries for time (totaling more than 420 hours or $88,641.00) for work spanning over a year before the motion to enforce was filed.

Additionally, Plaintiffs are seeking recovery for generally monitoring contractual compliance with the Settlement Agreement, rather than for activities that are directly related to proving the Eighth Amendment violation. While Mr. Hirshman restricted his time entries to tasks beginning mid-2017, attorneys from Uptown and Equip for Equality ("EFE") did not. Rather, Uptown and EFE are seeking to recover for monitoring activities starting only days after the Settlement Agreement was executed. Defendants are already paying a monitoring team to monitor compliance with the Settlement Agreement. To be recoverable under 42 U.S.C. § 1997e(d)(1), Plaintiffs' fees must be directly related to time spent to prove constitutional violations. General monitoring for contract compliance does not meet that standard.

Although facility tours are allowed under § XXVII(r) of the Settlement Agreement, Plaintiffs have not shown that those tours directly related to proving the

Eighth Amendment violation. Plaintiffs assert that their facility tours allowed them to assess individual treatment and whether changes required by the Settlement Agreement were being made. (Doc. 2532 at 5.) Even if that is true, it is not clear to what extent, if at all, Plaintiffs used any specific information gathered during those tours to show a constitutional violation. Rather, their case was founded mainly on the monitor's reports and the testimony from Department employees and just five individual prisoners from Pontiac.[2] Plaintiffs' counsel acknowledge they are working on other prisoner cases. For example, Mr. Hirshman is working on the *Lippert* case and also represents "other plaintiffs in their civil rights cases." (Doc. 2532 at 9.) Ms. Antholt and other lawyers from Equip for Equality do "substantial work on prison issues," including at least two other federal cases related to the IDOC. (*Id.* at 11.) Mr. Mills says he is lead counsel in six other pending prison cases, including at least one other case he is handling with lawyers from Equip for Equality (*Id.* at 15–16.) Time spent by Plaintiffs' counsel on general prison tours and interviews with prisoners not directly related to proving a constitutional violation in this case should not be compensable.

Defendants have highlighted here only a few entries from their Exhibit 1 to show the nature of their objections. When a fee petition is vague or inadequately documented, the court may either strike the vague, inadequate time entries "or (in recognition of the impracticalities of requiring courts to do an item-by-item

---

[2] Anthony Gay was at Pontiac, until March 2018, when he was housed at Dixon until his release in August 2018.

accounting) reduce the proposed fee by a reasonable percentage." *Harper*, 223 F.3d at 605; *see Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 651, 657-58 (7th Cir. 1985) (15% reduction of allowed attorney fees based on vagueness of petition). In addition to other reductions discussed below, Defendants submit that all of the hours in Defendants' Exhibit 1 should be stricken, resulting in the following reductions:

| Law Firm | Person | Non-compensable hours | Non-compensable amount |
|---|---|---|---|
| **Dentons** | Harold Hirshman | 42.40 | $9,349.20 |
| | A. Wick | 1.50 | $330.75 |
| **UPLC** | Alan Mills | 536.00 | $118,188 |
| | Nicole Schult | 297.00 | $65,488.50 |
| | ED (attorney) | 0.20 | $44.10 |
| | LM (attorney) | 9.95 | $2,193.98 |
| | Evangline Dawson (paralegal) | 70.00 | $8,750 |
| **EFE** | Amanda Antholt | 570.90 | $125,883.45 |
| | Stacey Aschemann | 27.20 | $5,997.60 |
| | Laura Miller | 22.60 | $4,983.30 |
| | Susan O'Neal | 15.90 | $3,505.95 |
| | Brian Pflaum | 141.75 | $31,255.88 |
| | Samantha Reed | 107.50 | $23,703.75 |
| | Barry Taylor | 2.60 | $573.30 |
| | Daniel Weinberg (paralegal) | 16.00 | $2,000.00 |
| | **TOTAL** | **1861.50** | **$402,247.75** |

## B.    Secretarial Tasks

Secretarial tasks performed by an attorney or a paralegal are not compensable. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). The relevant inquiry is whether the work is sufficiently complex to justify the efforts of a paralegal or attorney, as opposed to clerical personnel. *People Who Care v. Rockford Board of Education*, 90 F.3d 1307, 1315 (7th Cir. 1996). Non-compensable secretarial tasks are listed in Defendants' Exhibit 2. Defendants submit that all entries identified as

secretarial should be denied in their entirety, resulting in a total additional reduction of 32.50 attorney hours, or $7,166.25.

### C.    Block Billing Both Compensable and Non-Compensable Tasks

In addition to the vague entries addressed in Section A above, Plaintiffs also seek recovery in instances where they grouped several tasks into one entry, a practice called "block billing." While block billing is not in and of itself impermissible, when the description includes both compensable and non-compensable items, it is impossible to determine how much time was spent on the compensable work. *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F. Supp. 2d 1117, 1119 (N.D. Ill. 2006) (block billing does not reveal the amount of time spent on a particular task, rather than simply the total time spent on a bundle of tasks, leaving it impossible to make a reasonable estimate of the time spent on compensable work); *In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir. 1987).

Defendants' Exhibit 3 identifies 51.70 hours of time entries that appear to include both compensable and non-compensable items that have been "block billed." Because Exhibit 3 includes some work that is compensable, Defendants submit that these hours should be reduced by 30%, which is a reduction of 15.51 hours, or $3,419.96.

### D.    Duplication and Excessive Hours

Requested fees should be reduced where attendance by more than one attorney at the same conference, deposition, court proceeding, or trial is not justified. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Counsel for the

prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, *Hensley*, 461 U.S. at 434, and the court should scrutinize the petition carefully for such duplicative time. *Jardien*, 888 F.2d at 1160. Defendants' Exhibit 4 identifies time entries they believe are duplicative or excessive.

Plaintiffs have had several attorneys working on this case, and to a certain extent that is both reasonable and necessary. But just because an attorney was present at a hearing does not mean that presence was necessary. For example, Plaintiffs' are seeking recovery for four attorneys' travel time to Peoria on December 17, 2017, and five attorneys' time for attending the hearing the following day. (Defendants' Exhibit 4 at 1). Two of those attorneys did not actively participate in the hearing. While attending these hearings may have been valuable learning experiences for these attorneys, a paying client would not expect a bill to include overstaffing. Defendants are not requesting that all duplicative time spent at the hearings be stricken, but rather for a reasonable reduction.

In addition to overstaffing hearings, Plaintiffs spent an excessive amount of time on the motion to enforce, reply brief in support of motion to enforce, and the findings of fact/conclusions of law for both the preliminary and permanent injunctions. These hours are also listed in Exhibit 4. Plaintiffs are seeking 78.60 hours regarding the motion to enforce, and an additional 97.10 hours spent on the reply brief to the motion. Although Defendants do not dispute that it was reasonable for Plaintiffs to have more than two attorneys present at hearings and working on

motions, Defendants submit that the level to which Plaintiffs' staffed their case was excessive.

For these reasons, Defendants request a 30% reduction for the hours identified as duplicative or excessive in Defendants' Exhibit 4. Defendants have identified 1,071.30 hours as duplicative or excessive. A 30% reduction would reduce this amount by 321.39 hours, or $70,866.50.

## II.    Defendants' Objections to Non-Compensable Expenses

Plaintiffs seek recovery of $42,631.27 in expenses. Defendants contend that after appropriate deductions for entries that are impermissibly vague, duplicative, or not related to the proof of the Eighth Amendment claim, the compensable expenses should not exceed $22,450.00.

As an initial matter, the total amount of requested expenses, $42,631.27, is inaccurate as a result of the sub-total listed for UPLC. Plaintiffs stated that UPLC was not seeking reimbursement for meals, even though meals were included in its submission to the Court. (Doc. 2532 at 26.) Once *all* meals are excluded from UPLC's expense entries, the balance remaining is $9,445.25, not the $9,880.14 being claimed by Plaintiffs.[3] Even if the Court does not reduce Plaintiffs' requested expenses for the reasons discussed below, the maximum amount should be no more than $42,199.38 to account for this discrepancy.

---

[3] It was not clear from the chart submitted by UPLC which expenses were for food. For example, an expense listed simply as "Marriott, Peoria, IL" does not indicate what the expense is (Doc. 2532-11 at 13, entry on 9/6/18), but the supporting receipt suggests that this was a meal at the hotel, based on the receipt having a table number and a line for a tip. (Doc. 2532-11 at 213).

Many of the requested expenses are vaguely described, inadequately documented, or are not directly related to this case. *See* Defendants' Exhibit 6. For example, Plaintiffs seek recovery for tasks completed on dates for which there is no corresponding time entry, and that appear to be unrelated to the motion to enforce or subsequent hearings. (*See* Defendants' Exhibit 6, at 1–2, including entry from Mills on February 3, 2017 for gas to attend the Court's fairness hearing that was held over eight months before Plaintiffs' filed their motion to enforce.) Plaintiffs seek recovery for tips paid by Harold Hirshman (Doc. 2532-2 at 16), as well as for demonstratives and "blowbacks" created for trial without an explanation of what these items are and with no supporting receipts. (Doc. 2532-2 at 18.) Although Plaintiffs say they exercised "billing judgment" as to the amounts included in their petition, many entries, like the request to be reimbursed for having Liz Mazur admitted to the Southern District of Illinois (*see* Defendants' Exhibit 6, at 4, July 10, 2018 entry), call that judgment into question.

Like their time entries, Plaintiffs seek recovery for gas, rental cars, and hotel stays related to their general monitoring efforts, including meeting with a class member only two days after the settlement agreement was signed. (*See* Defendants' Exhibit 6, at 1, May 25, 2016 entry by Mills.) These expenses cannot be shifted to Defendants for the same reasons the time spent cannot—because it is unrelated to the motion to enforce and the related hearings.

Defendants submit that all expenses listed in Defendants' Exhibit 6 should be denied, which are as follows:

| Law Firm | Expenses to Strike |
|---|---|
| **Dentons** | $9,719.70 |
| **UPLC** | $6,552.29 |
| **EFE** | $2,106.29 |
| **TOTAL** | **$18,378.28** |

In addition to eliminating certain claimed expenses entirely, discussed above, the Court should impose additional reductions to account for duplication. For example, although recovery of hotel fees for hearings directly related to the preliminary and permanent injunction hearings is permitted, by overstaffing these hearings, Plaintiffs incurred substantial costs that should not be shifted to Defendants in their entirety. These expenses are listed in Defendants' Exhibit 5, and in total amount to $6,855.51. Several attorneys attended each hearing, and since Plaintiffs' counsel was from Chicago, this almost always necessitated overnight stays. Because Plaintiffs overstaffed these hearings, Defendants request a 20% reduction in hotel fees, which would result in a reduction of an additional $1,371.10.

## III.    The Attorney Fee Calculation May Not Be Enhanced

Plaintiffs' request for an enhancement to the attorney fee calculation should be denied because such an enhancement is not permitted by the plain language of the PLRA. In any event, Plaintiffs have not substantiated their request for an enhancement.

When faced with a typical petition for fees under 42 U.S.C. § 1988, a court first calculates the "lodestar" by multiplying the number of hours reasonably expended on

the litigation by a reasonable hourly rate, and then may use its discretion to adjust the lodestar up or down to account for the particularities of the suit. *Hensley*, 461 U.S. at 437. However, the PLRA has modified this typical method in several important ways. First, the PLRA limits the "number of hours" that can be used in the attorney fee calculation to only those that were "directly and reasonably incurred in proving an actual violation of plaintiff's rights . . . ." 42 U.S.C. § 1997e(d)(1)(A). Second, the PLRA limits the hourly rate to 150% of the rate established for court appointed attorneys. 42 U.S.C. § 1997e(d)(3). Third, the PLRA permits prisoners to agree to paying more than that authorized by the PLRA, but only if the fee is paid by the individual rather than by the defendant pursuant to section 1988. 42 U.S.C. § 1997e(4). A fee enhancement in this case would render meaningless the PLRA's limits to both the number of hours and the hourly rate in prisoner lawsuits.

Although the Ninth Circuit has found that an enhancement to the lodestar can be awarded even in cases covered by the PLRA, *Kelly v. Wengler*, 822 F.3d 1085, 1101–02 (9th Cir. 2016), its reasoning is not sound. The court in *Kelly* ruled that the PLRA did not prohibit an enhancement to a fee award calculated pursuant to the PLRA for two reasons. First, it concluded there is nothing in the attorney's fees provisions of the PLRA that instructs a court not to engage in both steps (including considering enhancement) of the typical two-step method used to determine fees under § 1988. *Id.* at 1100. Second, the court found that because the PLRA did include a limit to the total amount of fees when there is a monetary award to the prisoner, but did not cap the total amount of attorney's fee awards in cases seeking declaratory

and injunctive relief, the court was free to enhance a fee award in cases seeking only equitable relief. *Id*. at 1101.

The Ninth Circuit's decision in *Kelly* is not binding on this Court. In addition, that court's reasoning is not sound in light of a recent United States Supreme Court decision interpreting another portion of the PLRA's limits on fees, which provides that whenever a monetary judgment is awarded, a portion of the judgment not to exceed 25 percent shall be applied to satisfy the attorney's fees. *Murphy v. Smith*, 138 S. Ct. 784 (2018). In *Murphy*, the district court exercised its "discretion" to apply only 10% of the prisoner's monetary award to the attorney's fees, rather than the entire 25%. 138 S. Ct. at 786–87. The Seventh Circuit reversed, and the Supreme Court affirmed. In doing so, the Supreme Court emphasized that the words of the statute must be applied as written, and that the PLRA specifically sought to "restrain, rather than replicate, the discretion found in § 1988(b)." *Id*. at 789. The Supreme Court held that while § 1988 confers discretion on district courts with respect to fees and costs, the PLRA expressly qualified and restricted that discretion in prisoner cases by not using permissive terms like "may" or "reasonable" and saying nothing about "discretion." *Id*. As the Supreme Court stated: "If Congress had wished to confer the same discretion in § 1997e(d) that it conferred in § 1988(b), we very much doubt it would have bothered to write a new law; omit all the words that afforded discretion in the old law; and then replace those old discretionary words with new mandatory ones." *Id*.

Although this case involves a different section of the PLRA than the one the Supreme Court addressed in *Murphy*, the same reasoning applies. The PLRA states that "fees *shall not be awarded*, except to the extent that the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . . ." 42 U.S.C. § 1997e(d)(1)(A) (emphasis added). It continues, stating: "*No fee award* of attorney's fees . . . *shall* be based on an hourly rate greater than 150 percent of . . . the payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3) (emphasis added). The PLRA provides one circumstance where more can be paid, and that is only if the fee is paid by the individual, rather than the defendant pursuant to § 1988. *Id.* § 1997e(d)(4). If Congress had meant for courts to continue to have discretion to enhance a fee award for extraordinary efforts, or some other reason, it either would not have bothered to write the PLRA, or it would have included this discretion along with the other provisions of the PLRA.

Even if the PLRA allowed an enhancement, which it does not, the request should be denied. There is a "strong presumption" that the lodestar figure is reasonable, and the presumption may be overcome only "in those rare circumstance in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex. rel. Winn*, 559 U.S. 542, 553-54 (2010). The party seeking enhancement bears the burden of proof and can meet that burden only by presenting "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* at 554 (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

Plaintiffs argue they are entitled to an enhancement because of the hours they spent monitoring the settlement agreement, the time spent preparing for hearing without formal discovery, and because they achieved a successful result in this case. None of these are reasons to increase a fee award. Hours spent on discovery directly related to the motion to enforce are already allowed in the fee calculation.

Defendants note that Plaintiffs previously agreed that they would not recover an additional $1.9 million in fees and costs unless they later proved a violation of federal law. (Doc. 1091; Doc. 711-1 at 32.) The $1.9 million, which is conditioned on proof of a federal violation, is already an enhancement over and above the fees and costs incurred in proving that same federal violation.

Plaintiffs have presented no information showing that the fees awarded in this case are insufficient to induce capable attorneys to undertake representation of prisoners. The request for an enhancement should be denied.

## **CONCLUSION**

As the prevailing party, Plaintiffs are limited to recovering only those fees and expenses that were directly related to proving the Eighth Amendment violation. While the attorney and paralegal rates requested by Plaintiffs are reasonable, many requested hours should be stricken or reduced as follows:

**Plaintiffs' Requested Fees**

|  | Dentons | UPLC | EFE | Total Hours | Rate | Total |
|---|---|---|---|---|---|---|
| Attorney Hours submitted to the court | 462.70 | 1270.75 | 2326.95 | 4060.40 | $220.50 | $895,318.20 |
| Paralegal hours submitted to the court | 0 | 75.20 | 107.70 | 182.90 | $125.00 | $22,862.50 |
| Total Sought |  |  |  |  |  | **$918,180.70** |

**Defendant's Requested Reductions**

|  | Dentons | UPLC | EFE | Hours | Rate | Total |
|---|---|---|---|---|---|---|
| Attorney Hours to be Stricken (Section A) | 43.90 | 843.15 | 888.45 | 1,775.50 | $220.50 | ($391,497.80) |
| Paralegal Hours to be stricken (Section A) | 0 | 70.00 | 16.00 | 86.00 | $125.00 | ($10,750.00) |
| Secretarial tasks to be stricken (Section B) | 1.50 | 6.70 | 24.3 | 32.50 | $220.50 | ($7,166.25) |
| Block billing hours- 30% reduction (Section C) |  |  |  | 15.51 | $220.50 | ($3,419.96) |
| Excessive hours- 30% reduction (Section D) |  |  |  | 321.39 | $220.50 | ($70,866.50) |
| **SUBTOTAL OF REDUCTIONS** | | | | | | ($483,700.51) |
| **TOTAL ATTORNEYS' FEES AFTER ALL REDUCTIONS** | | | | | | **$434,480.19** |

**Summary of Plaintiffs' Requested Expenses
and Defendants' Requested Deductions**

|  | Dentons | UPLC | EFE | Total |
|---|---|---|---|---|
| Requested Expenses | $26,426.17 | $9,448.25[4] | $6,324.96 | $42,199.38 |
| Less 20% reduction for hotels |  |  |  | ($1,371.10) |
| Less expenses that should be stricken altogether | $9,719.70 | $6,552.29 | $2,106.29 | ($18,378.28) |
| **SUBTOTAL OF REDUCTIONS** | | | | ($19,749.38) |
| **TOTAL EXPENSES AFTER ALL REDUCTIONS** | | | | **$22,450.00** |

In sum, Defendants request that the Court award Plaintiffs no more than $434,480.19 in fees and $22,450.00 in expenses, for a total award not to exceed $456,930.19.

February 7, 2019                                Respectfully submitted,

                                                            Defendant JOHN R. BALDWIN, et al.

                                                            By: KWAME RAOUL,
                                                               Illinois Attorney General

                                                            /s/ *Laura K. Bautista*, #6289023
R. Douglas Rees                                 Laura K. Bautista
Office of the Attorney General          Office of the Attorney General
100 W. Randolph Street, 12th Floor    500 South Second Street
Chicago, Illinois 60601                    Springfield, IL 62701
Tel. 312-814-3498                           Telephone: (217) 782-9075
*rrees@atg.state.il.us*                      *lbautista@atg.state.il.us*

---

[4] Although Plaintiffs represented this amount as $9,880.14, that amount does not accurately reflect UPLC's expenses excluding food. Defendants are using the total UPLC expense amount, excluding food items.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

ASHOOR RASHO, et al.,

                Plaintiffs,

      v.

DIRECTOR JOHN R. BALDWIN, et al.,

               Defendants.

No. 1:07-CV-1298-MMM-JEH

Hon. Michael M. Mihm

## CERTIFICATE OF SERVICE

The undersigned further certifies that on February 7, 2019, she electronically filed the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS** with the Clerk of the Court using the CM/Dkt. system which will send notification to the following counsel of record:

| | |
|---|---|
| Harold Hirshman | harold.hirshman@dentons.com |
| Alan Mills | alanmills@comcast.net |
| Amanda Antholt | amanda@equipforequality.org |
| Andrew M. Ramage | aramage@bhslaw.com |
| Andy DeVooght | adevooght@loeb.com |

/s/ *Laura K. Bautista*
Laura K. Bautista #6289023
Assistant Attorney General
500 S. Second St.
Springfield, IL 62701
217-782-5819
lbautista@atg.state.il.us