E-FILED
Tuesday, 26 February, 2019 11:53:03 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| **ASHOOR RASHO, et al.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-1298** |
| | ) | |
| **ROGER E. WALKER, *et al*.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the Defendants' Motion for Reconsideration or Modification of Injunction Orders (ECF No. 2540) and Motion for Partial Stay of Injunction Pending Appeal (ECF No. 2543) and Plaintiffs' Petition for Attorneys' Fees and Costs (ECF No. 2532). The Defendants are John Baldwin, the Acting Director of the IDOC and Dr. Hinton, the Department's Chief of Mental Health Services and Addiction Recovery Services. The Plaintiffs are:

> Persons now or in the future in the custody of the Illinois Department of Corrections ("IDOC") [who] are identified or should have been identified by the IDOC's mental health professionals as in need of mental health treatment as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association. A diagnosis of alcoholism or drug addition, developmental disorder, or any form of sexual disorder shall not, by itself, render an individual mentally ill for the purpose of this class definition.

(ECF No. 252 at 7).

**BACKGROUND**

On October 30, 2018, this Court entered an Order finding that the Defendants have been deliberately indifferent to the mental health medical needs of the Plaintiffs. This Court specifically found that Defendants have been deliberately indifferent to the medical needs of the Plaintiffs in

medication management, mental health treatment in segregation, mental health treatment on crisis watch, mental health evaluations, and mental health treatment plans within the meaning of the Eighth Amendment. Most notably, this Court found the evidence showed that there were systemic and gross deficiencies in staffing that effectively denied the Plaintiffs access to adequate medical care.

On December 20, 2018, this Court entered a comprehensive Order (ECF No. 2516) addressing the requirements imposed on the Defendants to correct the violation of the Federal right. In addition to imposing certain measures to address the areas of medication management, mental health treatment in segregation, mental health treatment on crisis watch, mental health evaluations, and mental health treatment plans, the Court directed the Defendants to meet the staffing requirements of their 2014 Remedial Staffing Plan within 90 days of the Order.

On January 10, 2019, Plaintiffs filed their Petition for Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988 and Rule 54(d)(1) of the Federal Rules of Civil Procedure seeking $918,180.70 in fees and $42,631.27 in expenses. (ECF No. 2532). Parenthetically, this Court awarded Plaintiffs $1,900,000.00 in attorneys' fees under the terms of the Parties' Settlement Agreement. Defendants filed their Response to the Petition arguing that the Court should award no more than $434,480.19 in fees and $22,450.00 in expenses. (ECF No. 2565). Defendants argue, among other things, that Plaintiffs' fee and expense request should be limited to recovering only those fees and expenses that were directly related to proving the Eighth Amendment violation.

On January 17, 2019, Defendants filed their Motion for Reconsideration or Modification of the Injunction Orders pursuant to Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure. (ECF No. 2540). In their Motion, Defendants ask that the Court amend its findings and make certain additional findings arguing that there is unrefuted evidence of the current care of inmates

that the Court did not address in its Orders. Defendants also suggest the Court did not adequately address the legal standard that applies to determine whether officials' efforts to cure systemic deficiencies fall so short as to amount to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiffs oppose the Motion to Reconsider arguing, among other things, that none of the Defendants' arguments are properly raised in the Motion. (ECF No. 2567).

On January 18, 2019, Defendants filed their Motion for Partial Stay of Injunction Pending Appeal arguing that the Court should stay its Order requiring the Defendants to pay the $1,900,000.00 in attorneys' fees, and further stay the requirement that they staff the prison in accordance to their 2014 Remedial Staffing Plan. (ECF No. 2543). The Plaintiffs also oppose this Motion. (ECF No. 2566).

The above matters have been extensively briefed and oral argument was heard on February 19, 2019. This Order follows.

**DISCUSSION**

**Motion to Reconsider**

Rule 59(e) of the Federal Rules of Civil Procedure provides:

> (e) MOTION TO ALTER OR AMEND A JUDGMENT. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

"A Rule 59(e) motion will be successful only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citing *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)). Motions to reconsider are not to be used as a tool to "rehash" the arguments previously presented to the court. *Tredway v. Parke*, 79 F.3d 1150 (7th Cir. 1996) (citing *In re Oil Spill by Amoco Cadiz*, 794 F.Supp. 261, 267 (N.D. Ill. June 15, 1992)).

Defendants first argue that the Orders failed to discuss or apply controlling Supreme Court and Seventh Circuit precedent, specifically directing the Court to the case of *Wilson v. Seiter*, 501 U.S. 294 (1991), *Farmer v. Brennan*, 511 U.S. 825 (1994), and *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658 (7th Cir. 2016). The Defendants also argue that the recent Seventh Circuit case of *Sinn v. Lemmon*, 911 F.3d 412 (7th Cir. 2018), impacts the outcome of this case.

Defendants specifically argue that these cases do not allow for a finding of deliberate indifference where officials' conduct is not "wanton" or subjectively reckless, and where they are making "reasonable" efforts to correct harmful conditions, even if the conditions of harm are not averted. The Defendants further provide:

> Instead of applying these controlling precedents, the Court misapplied the Seventh Circuit's decisions in *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983), and *Cleveland-Purdue v. Brutsche*, 881 F.2d 427 (7th Cir. 1989), to rule that deliberate indifference can be demonstrated by proof of systemic deficiencies in care, without assessing whether defendants' efforts to correct those issues are so deficient that their response is wanton or subjectively reckless. (Dkt. 2460 at 40–41.) Both *Wellman* and *Cleveland-Purdue* pre-date *Wilson* and *Farmer*, and therefore neither case addressed whether prison officials had the required wanton or subjectively reckless mental state needed for deliberate indifference, and neither case addressed the reasonableness of any efforts to correct the alleged defects.

(ECF No. 2540 at 3).

This Court's Order dated October 30, 2018, extensively details the Defendants' failure to provide adequate mental health care to 12,000 plus mentally ill inmates in their custody, including approximately 5,112 inmates who are considered "seriously mentally ill." (ECF No. 2460 at 2; *see also* ECF No. 1758 at 51, Testimony of Dr. Hinton). In the Order, the Court credited Defendants' good efforts in certain areas related to mental illness treatment. However, Defendants' efforts to mask the root problem of inadequate staffing by highlighting other areas in which they have improved was not at the hearing, or now, persuasive to this Court. Indeed, these efforts failed to address the core problem associated with Defendants' deficiencies, that being

staffing. The testimony and evidence could not be any clearer – the issues associated with the constitutional deficiency in treatment cannot be resolved without the Defendants addressing the staffing problem. The Defendants know this, and at no time have they taken reasonable efforts to address this area. In terms of knowledge, as noted several times by this Court, Dr. Hinton testified at the preliminary injunction hearing as follows:

> Q. You know today you can't deliver the care—the psychiatric care that is required for the 12,000 patients because you don't have enough psychiatrists?
>
> A. Correct.

(ECF No. 1758 at 50). Not only Dr. Hinton held this opinion. As this Court noted in its Order dated December 20, 2018, almost every witness who appeared during the preliminary or permanent injunction hearings, at some point during their testimony, stated that there was insufficient staff to provide the needed mental health care for inmates. (*See e.g.* ECF No. 1757 at 139, Dr. Stewart testified about the reason for lack of group activities; ECF No. 1757 at 197, Dr. Michael Dempsey testified that there were not enough psychiatrists to treat patients; ECF No. 1758 at 82, Dr. Hinton explained the IDOC did not have the right staffing requirements; ECF No. 2354 at 71-76, Baldwin acknowledged that the IDOC needed to work on staffing; ECF No. 2376 at 356, Kelly Ann Renzi, Ph.D., Psychologist Administrator at Pontiac Correctional Center; ECF No. Dr. Melissa Stromberger, Psychologist Administrator at Hill Correctional Center; *but see* ECF No. 2373 at 822, Dr. William Elliott, Wexford Health Sources' Regional Mental Health Director for Illinois, who testified that Wexford had the right staffing requirements).

The harm associated with inadequate staffing is undisputedly significant. Again, this Court need not look any further than the testimony of Dr. Hinton at the preliminary injunction hearing. Dr. Hinton discussed the dangers the lack of appropriate staffing can have on an individual who is taking psychotropic medicine (ECF No. 1758 at 52-53) and the problems in segregation related to

staffing shortages (ECF No. 1758 at 81-82). Dr. Michael Dempsey, M.D. and Dr. Pablo Stewart also testified regarding the harm to the Plaintiffs because of the Defendants' failure to adequately staff the institutions. At best, Defendants have found a temporary solution in some respects by taxing current staff members into unreasonable overtime activities to mask the fundamental problem of inadequate staffing. Given this, the Court finds the Defendants' underlying premise that they have engaged in "reasonable" efforts to correct harmful conditions is simply incorrect.

Moreover, the Court finds that it properly considered the relevant case law and Circuit precedent in reaching its decision. Supreme Court and Seventh Circuit precedent require this Court to consider the totality of the circumstances, including the conditions as described at the preliminary injunction hearing, as well as the current attitude of the Defendants, in determining whether or not a permeant injunction should issue. *Wilson*, *Farmer*, *Wellman*, and *Cleveland-Perdue* all provide guidance in this case. The bottom line is, this case has painfully played out over a decade. Over that time, the Defendants have acknowledged their staffing problem, agreed to increase their staffing levels, made no substantive progress in that area, and now argue their efforts are reasonable under the circumstances. This Court disagrees. Defendants' lack of reasonable efforts, coupled with their failure to comply with their own identified deficiencies, is thoroughly examined in this Court's Order and overwhelmingly demonstrates their response to the current crisis related to mental health is wanton and/or subjectively reckless.

Defendants argue the Seventh Circuit's recent ruling in *Sinn* is contrary to the result this Court reached. In *Sinn*, the Seventh Circuit examined a case involving an inmate's Section 1983 claim that various prison officials, including a sergeant, correctional officer, former unit manager, former superintendent, and former Commissioner of Indiana Department of Corrections (IDOC), were deliberately indifference in violation of the Eighth Amendment by failing to protect him from

gang violence at prison. *Id*., 911 F.3d at 418. *Sinn* did not change the general construct of deliberate indifference and relied on *Farmer* and other cases in holding that prison officials can be deliberately indifferent when they are "aware of 'a systematic lapse in enforcement' of a policy critical to ensuring inmate safety" yet fail to enforce that policy. *Id*. at 423 (citing *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998) (quoting *Goka v. Bobbitt*, 862 F.2d 646, 652 (7th Cir. 1988)). That is the case here. This Court finds that *Sinn* does not change the previous Orders in this case.

Finally, Defendants argue the Court erred in basing its findings predominantly on "stale" evidence from the preliminary injunction hearing without acknowledging or addressing "substantial unrefuted" evidence showing the care currently provided system-wide with existing staffing levels. This Court disagrees. This Court's Order found that the Defendants' evidence showing any improvements noted were the result of the unsustainable use of overtime and/or caused deficiencies in other areas. (ECF No. 2460 at 43, Order discussing the Defendants' ability to minimize the backlog at certain locations comes at the cost of providing care in other areas.). The Defendants also argue the Court improperly discounted their expert Holly Andrilla, who generally implied, among other things, that the IDOC has more than enough psychiatrists to treat its mentally ill population. (*See e.g.* ECF No. 2375 at 59). The Court finds there can be no reasonable argument that Andrilla's analysis is applicable given her opinions were contrary to all of the testimony and established facts in this case. (*See* ECF No. 2460, at 20-21, Order discussing the Court's reasoning for giving Holly Andrilla's testimony little weight).

With respect to this Court's Order that the Defendants comply with the 2014 Remedial Staffing Plan, Defendants argue that the Plaintiffs did not introduce any version of a "2014 Remedial Staffing Plan" into evidence. Defendants' assertion is contrary to the Court's record.

The record reveals that the document was entered into evidence. (ECF No. 2362, Exhibit and Witness List). Moreover, there was testimony on the document. (*See e.g.* 1758, at 101-104, Dr. Hinton's testimony). Most importantly, as noted in this Court's Order:

> The Court recognizes the amount of staff necessary may not ever be identified with exact precision. Nonetheless, the Court finds that immediate action must be taken by the Defendants to address the dangerous situation that exists in the correctional facilities. As such, in order to mitigate the current dangerous situation that exists, the Court directs the Defendants to meet the staffing requirements of their 2014 Remedial Staffing Plan within 90 days of this Order. The Court finds the 2014 Remedial Staffing Plan is the best starting point to address the staffing deficiencies within the IDOC. Notably, the Illinois Department of Corrections found the staffing contained therein was sufficient to satisfy its constitutional violations. (ECF No. 1716, Exhibit and Witness List, Ex. 9, IDOC Proposed Remedial Plan dated April 17, 2014, "Pursuant to its September 20, 2013 Facility and Staffing Plan, the Illinois Department of Corrections ("Department" or "IDOC") is pleased to present this proposal for staffing levels and bed and treatment space allocations that satisfy its constitutional duty to provide mental health care to seriously mentally ill ("SMI") offenders.").

(ECF No. 2516 at 7). The Court finds no reason to modify its Order to amend its findings, make additional findings, or make any changes to its requirement that the IDOC employ additional staff sufficient to meet its staffing requirements of their 2014 Remedial Staffing Plan.

That being said, the Court has considered Defendants' other requested modifications to specific areas of the Court's Order dated December 20, 2018.

On Page 8 of the Order::

> e. Prior to discharge from crisis watch, a multidisciplinary team (with the patient) shall review and update the treatment plan;

The Court finds this provision is duplicative of Section 2(f) on the same page. As such, the above language in Section 2(e) is removed. Additionally, Defendants request modification to Section 2(f) limiting the application of the requirement to the time of discharge. The Court modifies the language as follows:

> f. No later than at the time of discharge from crisis watch, an appropriate mental health professional (with the patient) shall review and update the treatment plan which will apply after discharge from crisis watch. The updated treatment plan will address causes which led to the deterioration and the plan for risk management to prevent relapse;

Defendants also argue Section 2(h) should be amended with respect to out-of-cell time for class members on crisis watches, to expressly provide that such care will be provided "unless contraindicated" or "to the extent clinically appropriate." The Plaintiffs do not oppose the language "unless contraindicated" being added, and it is so ordered.

All other requests for modifications contained in the Defendants' Motion are denied.

Having fully considered all of the Defendants' arguments, other than the limited changes to Sections 2(e), 2(f), and 2(h) noted above, the Court DENIES the Defendants' Motion for Reconsideration or Modification of Injunction Orders. (ECF No. 2540).

**Motion to Stay**

A stay pending appeal should only be granted in limited circumstances. *Schmude v. Sheahan*, 2004 WL 1179418, at *3 (N.D. Ill. May 25, 2004) ("[A] request for a stay is a request for extraordinary relief, equitable in character, and the movant bears a heavy burden.") (citing *Winston–Salem Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971); *Chan v. Wodnicki*, 67 F.3d 137, 139 (7th Cir.1995); *see also Strategic Capital Bancorp, Inc. v. St. Paul Mercury Ins. Co.*, 2015 WL 13595164, at *2 (C.D. Ill. Nov. 30, 2015). The factors to be considered include: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the parties interested in the proceeding; and (4) where the public interest lies. *Bradford–Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505

(7th Cir. 1997); *Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir.1985); *Carpenters Fringe Benefit Funds of Illinois v. Royal Builders, Inc.*, 2008 WL 4876856, at *2–3 (N.D. Ill. June 6, 2008).

Defendants' Motion for Partial Stay of Injunction Pending Appeal generally relies on the arguments made in their Motion for Reconsideration. As discussed above, the Court does not believe the Defendants will be successful on the merits of their appeal. Again, the Defendants have acknowledged their staffing problem, agreed to increase their staffing levels, and made no substantive progress in this critical area. The Court does not believe the Court of Appeals will relieve Defendants of their constitutional obligation.

Defendants also argue that the Court erred in determining that it had jurisdiction to rule on the attorneys' fees award. Defendants specifically argue that the agreement on the attorneys' fees was a contract between the Plaintiffs and the State of Illinois and any action to enforce contractual rights against the State must be brought in the Illinois Court of Claims. The Court finds no reason to question its determination that the attorneys' fees issue was properly before this Court. The Court's involvement in the fees, the Parties' need to have the Court approve the fees, and the fact that the fees are based on a statutory foundation (42 U.S.C. § 1988), provide the Court with the basis to resolve any conflict regarding the matter. Moreover, as fully detailed in this Court's Order, the fees are now due. The Court does not believe the Defendants will be successful on their appeal of this matter.

With respect to the fees, Defendants also argue that judicial efficiency dictates that this matter should be deferred until the Court's ruling on the Plaintiffs' new fee petition. The Court finds no reason for delay as those matters can be adequately separated. The Court does in fact rule on the new fee petition in this Order.

With respect to this Court's Order that the Defendants comply with the 2014 Remedial Staffing Plan, Defendants argue that they have a strong argument on appeal that the Court should not have ordered compliance with a staffing plan that was never introduced into evidence and that Plaintiffs did not move to enforce. As noted above, Defendants' argument is premised on the incorrect belief that the document was not entered into evidence. It was. Additionally, as noted above, the Court does not believe Defendants will be successful on appeal on this issue.

The Court has also considered the other relevant factors. The Court recognizes that the Defendants will have a burden to comply with the Court's staffing directive. However, the Court finds that compliance with this directive is necessary, and more importantly, the continued delay in constitutionally staffing the institutions places the inmates in significant danger. This must be corrected now. It is not only in the interest of the inmates and correctional officers, but also in the interest of the public.

Having considered all of the relevant factors, the Defendants' Motion for Partial Stay of Injunction Pending Appeal is DENIED. (ECF No. 2543).

**Attorneys' Fees**

42 U.S.C. § 1988(b) gives a prevailing party the opportunity, at the Court's discretion, to recover reasonable attorneys' fees in civil rights actions. 42 U.S.C. § 1988. There is no real dispute that the Plaintiffs are prevailing parties as the term is used under the statute. Furthermore, the Court finds, in the exercise of its discretion, that the Plaintiffs are entitled to recover reasonable attorneys' fees and costs related to their pursuit of the preliminary and permanent injunctions. On January 10, 2019, Plaintiffs filed their Petition for Attorneys' Fees and Costs seeking recovery of $918,180.70 in attorneys' fees and $42,631.27 in expenses. (ECF No. 2532). On January 15, 2019, Plaintiffs filed Corrections to Fees and Expenses reducing their fee request to $913,531.11,

and costs to $26,256.17. (ECF No. 2573). On February 7, 2019, Defendants filed their Response to Plaintiffs' Petition for Attorneys' Fees and Costs challenging the Plaintiffs' request arguing the Plaintiffs were entitled to recover no more than $434,480.19 in fees and $22,450.00 in expenses. (ECF No. 2565). Defendants specifically argued that their review of the Plaintiffs' request revealed objectionable fee and costs requests in the areas of: (1) inadequately documented or non-compensable hours; (2) secretarial tasks; (3) block billing; (4) duplicative work; (5) excessive time; and (6) non-compensable expenses. *Id.*; *see also* ECF No. 2565-1 through ECF No. 2565-6.

The burden of proving the fees are reasonable falls on the prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In awarding fees, the *Lodestar* method instructs the Court to multiply the number of hours reasonably expended by a reasonable hourly rate. *Fritcher v. Health Care Service Corp*. 301 F.3d 811, 819 (7th Cir. 2002) (citing *Hensley*, 461 U.S. at 433-34 (1983)). A "reasonable hourly rate" is "the rate that lawyers of a similar ability and experience in the community normally charge to their paying clients." *Id.* (citing *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 519 (7th Cir. 1993)). Plaintiffs seek a rate of $220.50 per hour for the attorney work on this case, and a rate of $125 per hour for the paralegal hours. There is no real dispute that these rates fall within that allowed under the Prison Litigation Reform Act ("PLRA"). The PLRA imposes additional limitations on the ability to recover attorneys' fees in suits brought by prisoners. The PLRA provides:

> **(1)** In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988[1] of this title, such fees shall not be awarded, except to the extent that—
>
> > **(A)** the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
> >
> > **(B)(i)** the amount of the fee is proportionately related to the court ordered relief for the violation; or

> **(ii)** the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

42 U.S.C.A. § 1997e.

This Court recognizes that a request for attorneys' fees should not result in second major litigation. *Hensley*, 461 U.S. at 437. Additionally, there is no precise rule or formula for making determinations related to fee reductions. *Id*. The Parties also recognized that a line-by-line accounting would result in a protracted proceeding. During the hearing held on February 19, 2019, the Parties agreed to provide general arguments on the areas highlighted in the Defendants' opposition. Having thoroughly reviewed the Plaintiffs' submissions and the Defendants' response and considered the arguments of the Parties, the Court finds that considering the broad categories (via briefing and argument) it can adequately scrutinize counsels' work and arrive at a reasonable range of appropriate hours that are compensable under the law. *Evans v. City of Evanston*, 941 F.2d 473 (7th Cir. 1991); *see also Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.").

Defendants broadly argue that Plaintiffs seek to recover for large amounts of work dating back to 2016 and early 2017, including routine contract monitoring and prison visits that are not directly related to the preliminary and permanent injunction. Many of these items are included in Defendants' Exhibit 1. (ECF No. 2565-1). Defendants also challenge many of these items arguing the charges are duplicative and/or excessive. While the Plaintiffs are seeking recovery of work dating back to 2016, the timing itself is not problematic. Much of this work was directly supportive of their claims and reasonably incurred, and therefore recoverable. That being said, the Court

recognizes some of the items appear to fall outside the parameters of the action. (*See e.g.* ECF No. 2565-1 at 1-2, entries labeled "E-mails regarding Budget" and "accommodating eating disorder"). The Court also recognizes that some of the descriptions are vague. (ECF No. 2565-1 at 1, entry labeled "E-mails"); (*But see* ECF No. 2573 removing the vague items). Having reviewed the entirety of these challenges, considered the Plaintiffs' supplemental filing removing items, and carefully implementing the guidance of the Seventh Circuit[1], the Court finds that an across-the-board reduction of 20% in this category is appropriate.

Time for truly administrative tasks are unrecoverable. See *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (unbillable administrative tasks that could be performed by secretary). And it is clear some of the time Defendants identify falls in that category. However, a review of challenged time reveals much of it is related attorney work. For example, Defendants challenge Ms. Nicole Schult's time for typing her prison visit notes. (ECF No. 2565-1 at 1). At the hearing, Plaintiffs' counsel stated they would often compile their notes in a meaningful fashion by drafting a summary of their visit before sending it to other members of the litigation team to review. The Court cannot say such time is truly administrative. That being said, the Defendants do identify several items that are administrative. Having considered all of the arguments, the Court finds a 30% reduction is appropriate.

The Court has considered Defendants' challenge regarding block billing and finds that there is little merit. The descriptions and Plaintiffs' representations reveal almost all of the time was necessary and appropriately submitted for reimbursement. The Court finds there is only a *de minimis* amount of time that could arguably be challenged (See ECF No. 2565-3, item dated 2/26/18) and reduces this category by 2%.

---

[1] The Court's review included, but was not limited to, a sampling of the billing records, examining the court procedural history, and considering the Plaintiffs' remarks and justification regarding their time.

Duplicative billing is not recovered under a fee-shifting statute. *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). Defendants provide several hours of Plaintiffs' work wherein they argue it is duplicative. Defendants argue that Plaintiffs often overstaffed hearings and other matters. Plaintiffs countered that this matter involved complex issues, and further noted that the Defendants staffed this matter in a similar fashion. This matter was complex, and this Court finds that the Plaintiffs used good judgment in their overall staffing in the case. If there were any overstaffing or duplicative efforts being sought, it is extremely modest. To the extent the Court identifies any modest overstaffing, it finds a 15% reduction appropriate.

The Court has reviewed the submitted expenses in this matter and there was much agreement by the Parties on this issue. Items such as Liz Mazur's admission to the Southern District of Illinois was removed. In fact, Plaintiffs agreed to a 15% reduction on items included on Defendants' Exhibit 6 and a $9000.00 reduction on items listed on Exhibit 7.

Having considered all of the arguments related to attorneys' fees and costs, the Court finds that the total to be awarded to Plaintiffs' counsel under the fee-shifting statute is $873,002.75, which is comprised of $841,137.98 in fees and $31,864.77 in expenses.

## **CONCLUSION**

For reasons stated herein, Defendants' Motion for Reconsideration or Modification of Injunction Orders (ECF No. 2540) is GRANTED IN PART and DENIED IN PART. With the exception of the limited modifications of Sections 2(e), 2(f), and 2(h) of this Court's Order dated December 10, 2018, noted above, the Motion is DENIED. Defendants' Motion for Partial Stay of Injunction Pending Appeal (ECF No. 2543) is DENIED. Plaintiffs' Petition for Attorneys' Fees and Costs (ECF No. 2532) is GRANTED IN PART and DENIED IN PART insofar as Plaintiffs

are awarded $841,137.98 in fees and $31,864.77 in expenses pursuant to 42 U.S.C. § 1988(b) and the Prison Litigation Reform Act.

Entered this 26th day of February 2019.

/s/ Michael M. Mihm
Michael M. Mihm
U.S. District Court Judge