# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| ASHOOR RASHO, et al., <br><br> Plaintiffs, <br> v. <br><br> DIRECTOR JOHN R. BALDWIN, et al., <br><br> Defendants. | No. 1:07-CV-1298-MMM-JEH <br><br> Hon. Michael M. Mihm |

### AGREED ORDER ON JURISDICTION TO ENFORCE
### SECTIONS OF THE PARTIES' SETTLEMENT AGREEMENT

On January 26, 2021, Plaintiffs filed a motion asking the Court to extend its jurisdiction to enforce the parties' Corrected Second Amended Settlement Agreement ("Settlement Agreement"), ECF 3047-2, or hold a hearing to determine Defendants' substantial compliance with the Settlement Agreement. ECF 3239.

On March 1, 2021, after a hearing on the motion with the parties and the monitor, the Court entered an order that, among other things, directed the parties to submit lists within seven days identifying sections of the Settlement Agreement (1) they agree are in substantial compliance, (2) where Defendants claim the Department's performance has been affected by force majeure, and (3) where Plaintiffs contend the Department is not in substantial compliance. The Court also set a status hearing for April 5, 2021 and an in-person hearing to begin April 14, 2021.

Since the March 1, 2021 hearing, the parties have met and conferred to reach an agreement with respect to the scope of the Court's continuing jurisdiction and obviate the need for the April 14, 2021 hearing. On March 2, 2021, Plaintiffs sent Defendants and the monitor two proposed lists: one listing "Terms Plaintiffs Believe Can Terminate Due to Substantial Compliance or Nonsubtantive Term," and the other listing "Terms Plaintiffs Believe Should Be Extended."

The parties continued to confer, with Defendants proposing to shift certain terms from the "to be extended" list to the "to terminate" list based on the monitor's findings of substantial compliance in his corrected November 2020 Mid-Year Report, ECF 3251.

After receiving additional input from the monitor, the parties finalized their agreement on the two lists, attached to this Order as Exhibits A and B. Exhibit A lists sections of the Settlement Agreement the parties agree should no longer remain subject to the Court's enforcement jurisdiction based on the Department's substantial compliance. Exhibit B lists sections of the Settlement Agreement to remain subject to the Court's continuing enforcement jurisdiction until April 22, 2022, unless otherwise ordered by the Court.

Based on the parties' agreement and joint motion, the Court orders as follows:

1. The Court finds Defendants are in substantial compliance with the sections of the Settlement Agreement listed in Exhibit A, and therefore, consistent with § XXIX(e) of the Settlement Agreement, the Court terminates its jurisdiction to enforce the terms of the Settlement Agreement listed in Exhibit A.

2. The Court will continue to maintain its jurisdiction to enforce the sections of the Settlement Agreement listed in Exhibit B until April 22, 2022, unless otherwise ordered by the Court.

3. The status conference on April 5, 2021, and the hearing scheduled on April 14-16, 2021, are canceled.

4. The Plaintiffs' Motion to Extend Jurisdiction of Settlement Agreement Due to Defendants' Invocation of Force Majeure (Doc. 3239) is moot.

Entered:  March 10, 2021
s/ Michael M. Mihm
Hon. Michael M. Mihm
U.S. District Court Judge

# EXHIBIT A

Rasho Terms No Longer Subject to Court's Enforcement Jurisdiction
Based on Agreed Findings of Substantial Compliance

|    | Settlement Term |
|----|---|
| 1  | IV(a) – mental health screenings within 24 hours |
| 2  | IV(b) – screenings are conducted by MHP |
| 3  | IV(c) – offenders transferred from a receiving center shall receive the evaluation of suicide |
| 4  | IV(d) – screenings are in private |
| 5  | IV(e) – IDOC develops policies to ensure current psychotropic prescriptions continue |
| 6  | IV(f) – after transfer to IDOC custody, psychotropic prescriptions are reviewed and changed only if clinically necessary |
| 7  | IV(g) – screening includes specific information |
| 8  | V(b) – referrals for evaluations may be made by staff or self-referral |
| 9  | V(c) – IDOC shall ensure referral procedures are created and implemented timely |
| 10 | V(e) – develop policy for other sources to refer for mental health evaluations |
| 11 | V(h) – results of MH eval are recorded on Form 0374 |
| 12 | V(i) – MH evals are only completed by QMHPs |
| 13 | V(j) – the provisions of Section V shall be implemented within 18 months (Nonsubstantive) – The parties stipulate to discontinuing this term because the deadline has already passed; however, nothing about the termination of jurisdiction over this subsection should be read as contradicting the court's extension of jurisdiction as to subsections V(a),(d), (f) and (g). |
| 14 | VI(a) – access to MH care is provided in orientation |
| 15 | VI(b) – IDOC shall develop a written policy on orientation to MH care |
| 16 | VII(c) – continue jurisdiction over reviews/updates to treatment plans for restrictive housing and crisis watch, but terminate jurisdiction based on substantial compliance with reviews/updates to treatment plans annually, and for inpatient and RTU levels of care. |
| 17 | VII(e) – MHPs must record progress notes for each clinical contact |
| 18 | VIII(a) – Treating MHP must approve return to general population from specialized treatment setting |
| 19 | VIII(b)(ii) – requirements for offenders transition to general population from a specialized/residential facility |
| 20 | IX(c) – allows for amendments to the remedial staffing plan |
| 21 | IX(d) – requires MHPs hired to be allocated solely to the provision of mental health services |
| 22 | IX(e) – requires quarterly hiring progress reports |
| 23 | X(a) – requires creation of additional bed/treatment space for residential levels of care |
| 24 | X(b)(i) – requires 1,150 units of RTU beds for men to be identified |

|    | Settlement Term |
|----|-----------------|
| 25 | X(c)(i) – requires 146 units of RTU beds for women to be identified |
| 26 | X(c)(ii) – requires construction to make RTU beds available for women |
| 27 | X(g) – space for treatment and office space: continue jurisdiction on this term as to confidential treatment space for Dixon X-House only. |
| 28 | X(h) – refers to the timing of compliance with X(g) (Nonsubstantive) – The parties stipulate to discontinuing this term because the deadline has already passed; however, nothing about the termination of jurisdiction over this subsection should be read as contradicting the court's extension of jurisdiction as to subsection X(g) as confidential treatment space at Dixon X-House. |
| 29 | X(i) – requires IDOC to provide the monitor with architectural plans |
| 30 | XI(a) – requires two regional directors to assist the Chief of Mental Health |
| 31 | XI(b) – requires a statewide Quality Improvement Manager |
| 32 | XI(d) – requires hiring central office staff |
| 33 | XII(a) – requires recording medications administered |
| 34 | XII(c)(ii) – requires regular charting of medication efficacy and side effects |
| 35 | XII(c)(iii) – requires standard protocols for ascertaining side effects |
| 36 | XII(c)(v) – requires the explanation of various aspects of taking medication |
| 37 | XIV(a) – requirements for mental health input into SMI housing |
| 38 | XIV(b) – requirements for mental health input into post-administrative detention or -restrictive housing placement |
| 39 | XIV(c) – requires documentation if mental health recommendations in housing are rejected |
| 40 | XV(a)(i) – requirements regarding placement of offenders with other offenders |
| 41 | XV(b)(i) – requires review of segregation terms by the Review Committee |
| 42 | XV(b)(ii) – requires elimination of 300- and 400-level tickets and segregation time |
| 43 | XV(b)(iii) – requirements for the Review Committee when reviewing segregation terms |
| 44 | XV(b)(iv) – gives the Review Committee the authority re recommend a reduction in segregation time |
| 45 | XV(b)(v) – gives authority for reduction or elimination of segregation terms to the CAO |
| 46 | XV(b)(vi) – provides the timeframe for the Review Committee to complete their review |
| 47 | XV(a)(vii) – transfers to higher level of care and/or to crisis from administrative detention or disciplinary segregation—this terminates with the understanding that delays in transfers to HLOC continues under Section X |
| 48 | XV(c)(v) – requirements for placement in crisis or higher level of care from investigatory status or temporary confinement—this terminates with the understanding that delays in transfers to HLOC will continue through the substantive requirement of making RTU beds available under Section X. |

|    | Settlement Term |
|----|----|
| 49 | XVI(a) – compliance with policies and procedures for identifying and responding to suicidal offenders (the parties understand that jurisdiction continues as to Section V(g), which includes crisis gatekeeping as it relates to suicide prevention, and emergency requests per monitor report page 66) |
| 50 | XVI(b) – timeframe to implement suicide prevention measures [implemented]—the parties understand that Section V(g), which is continuing, does include crisis gatekeeping as it relates to suicide prevention |
| 51 | XVII(b) – requires compliance with ADs regarding restraints |
| 52 | XVII(c) – prohibits the use of mental health restraints to punish |
| 53 | XVII(d) – provides the timeframe for implementation of this section (Nonsubstantive)-- The parties stipulate to discontinuing this term because the deadline has already passed; however, nothing about the termination of jurisdiction over this subsection should be read as contradicting the court's extension of jurisdiction as to subsection XVII(a). |
| 54 | XVIII(a) – requires the use of standardized medical forms |
| 55 | XVIII(b) – requires an offender's medical record be transferred with the offender |
| 56 | XIX(a) – requires confidentiality of mental health records |
| 57 | XIX(d) – requires informed consent disclosures to the offenders |
| 58 | XX – requirements for removing a SMI designation |
| 59 | XXI(a) – requires plan and program for staff training |
| 60 | XXI(b) – requires training be provided to all IDOC and vendor staff |
| 61 | XXI(c) – requires training plan for mental health staff. |
| 62 | XXIII(a) – requirements for continuity of care when an offender is transferred |
| 63 | XXIII(b) – requirements for continuity of care when an offender is transferred |
| 64 | XXIII(c) – provides the timeframe for compliance with this subsection |
| 65 | XXV(b) – prohibits punishment for self-injurious behavior |
| 66 | XXV(c) – prohibits removal from RTU or inpatient setting as discipline |
| 67 | XXV(d) – requires a Behavior Treatment Program at Pontiac |
| 68 | XXVI(a) – requires implementation of quality improvement program— the parties agree this term is in substantial compliance but the Department will continue its quality improvement program. |
| 69 | XXVI(b) – requires statewide CQI Manager— the parties agree this term is in substantial compliance but the Department will continue to employ a statewide CQI Manager to be responsible for the Department's quality improvement program. |
| 70 | XXVII – requirements for monitoring –the parties agree this term is in substantial compliance but monitoring will continue limited to the terms that remain subject to the Court's continuing enforcement jurisdiction. Pursuant to XXVII(f)(iii), the parties agree the monitor will focus his monitoring efforts on assisting to resolve issues not yet in substantial compliance in the most expeditious and non-adversarial fashion possible. |

4

|    | **Settlement Term** |
|----|---------------------|
| 71 | XXVIII – requirements for reporting and recordkeeping – the parties agree this term is in substantial compliance but the Department will continue to provide reporting with respect to the terms that remain subject to the Court's continuing enforcement jurisdiction. |
|    |                     |

# EXHIBIT B

Rasho Terms Subject to Court's Continuing Enforcement Jurisdiction
Based on No Finding of Substantial Compliance

|    | **Settlement Term** |
|----|---------------------|
| 1  | V(a) – timely evaluations |
| 2  | V(d)- automatic referrals for mental health services of certain inmates transferred to IDOC |
| 3  | V(f) – evaluations must be completed within 14 days |
| 4  | V(g) – requires Crisis Intervention Team to be contacted—the parties agree that this provision includes gatekeeping as it relates to suicide prevention |
| 5  | VII(a) – treatment plan to be prepared collectively by mental health team |
| 6  | VII(b) – treatment plan is recorded on Form 0284 and requires entry of treatment goals, frequency and duration of intervention/treatment activities, and staff responsible for treatment activities |
| 7  | VII(c) – updates to treatment plans—jurisdiction continues only as to reviews/updates to treatment plans for restrictive housing and crisis watch—jurisdiction terminates for reviews/updates to treatment plans annually, and for inpatient and RTU level of care. |
| 8  | VII(d) – requires evaluation of medications by a psychiatrist periodically |
| 9  | VIII(b)(i) – requirements for offenders transitioning from crisis, including session with MHP within 5 days of discharge from crisis |
| 10 | IX(a) – requires hiring per 2014 plan at Dixon, Logan, and Pontiac |
| 11 | IX(b) – requires hiring per 2014 plan at Joliet |
| 12 | IX(f) – allows for extensions of staffing targets |
| 13 | X(b)(ii) – requires construction to make RTU beds available for men—the parties understand that this term's requirement for beds to be available includes delays in transfers to higher levels of care. |
| 14 | X(d) – requirements for space and out-of-cell activities for RTU offenders |
| 15 | X(e) – requires an IGA with IDHS for inpatient beds |
| 16 | X(f) – requirements for provision of crisis care |
| 17 | X(g) – requires space for treatment and office space at RTUs. Continues only as to confidential treatment space for Dixon X-House, terminates as to all other terms. |
| 18 | XI(c) – requires a state-employed supervisor at each facility |

|    | **Settlement Term** |
|----|---------------------|
| 19 | XII(b) – requires psychiatric review of SMI receiving new medications twice within 60 days |
| 20 | XII(c)(i) – requires reasonable assurance medications are delivered to patients |
| 21 | XII(c)(iv) – requires the timely performance of lab work for side effects |
| 22 | XII(c)(vi) – requires follow-up on medication non-compliance |
| 23 | XIII – requirements for enforced medication |
| 24 | XV(a)(ii) – requirements for standards for living conditions and privileges |
| 25 | XV(a)(iii) – requires the continuation of a treatment plan for those in restrictive housing |
| 26 | XV(a)(iv) – requires MHP review after placement in restrictive housing |
| 27 | XV(a)(v) – requires updates to the treatment plan within 7 days after placement in restrictive housing |
| 28 | XV(a)(vi) (first) – requirements for care provided to those in administrative detention or disciplinary segregation |
| 29 | XV(a)(vi) (second) – requires out of cell time for those in administrative detention or disciplinary segregation more than 60 days |
| 30 | XV(c)(i) – requires compliance with Administrative Directives for investigatory and Temporary Confinement |
| 31 | XV(c)(ii) – requires MHP review after placement in temporary confinement or investigative status |
| 32 | XV(c)(iii) – requirements for care provided to those in investigatory status or temporary confinement |
| 33 | XV(c)(iv) – requires out of cell time for those in administrative detention or disciplinary segregation more than 60 days |
| 34 | XV(d) – dictates the amount of out of cell time for those in restrictive housing over 60 days |

|    | **Settlement Term** |
|----|---------------------|
| 35 | XV(e) – provides the timeframe for implementation of this section |
| 36 | XVII(a) – requires compliance with policies and documentation of the use of restraints for mental health purposes |
| 37 | XIX(b) – requires confidentiality of consultations and training on the need for privacy |
| 38 | XIX(c) – requires maintenance of confidentiality between mental health providers and offenders |
| 39 | XXII – prohibits barring offenders with mental illness from participating in prison programs because of their illness. |
| 40 | XXIV – requires IDOC abide by its administrative directives related to use of force |
| 41 | XXV(a) – requires implementation of policies and procedures governing the disposition of SMI discipline |
| 42 | XXVI(a) – requires the implementation of a quality improvement program—the parties agree this term is in substantial compliance but the Department will continue its quality improvement program. |
| 43 | XXVI(b) – requires the statewide CQI Manager be responsible for subsection XXVI(a) —the parties agree this term is in substantial compliance but the Department will continue to employ a statewide CQI Manager to be responsible for the Department's quality improvement program. |
| 44 | XXVII – provides the requirements for monitoring –the parties agree this term is in substantial compliance but monitoring will continue limited to the terms that remain subject to the Court's continuing enforcement jurisdiction. Pursuant to XXVII(f)(iii), the parties agree the monitor will focus his monitoring efforts on assisting to resolve issues not yet in substantial compliance in the most expeditious and non-adversarial fashion possible. |
| 45 | XXVIII – provides the requirements for reporting and recordkeeping – the parties agree this term is in substantial compliance but the Department will continue to provide reporting with respect to the terms that remain subject to the Court's continuing enforcement jurisdiction. |