IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ASHOOR RASHO, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-1298 |
| ) | |
| ROB JEFFREYS., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Extend the Duration of the April 23, 2019 Injunction Order. (ECF No. 3276). Defendants have responded, opposing the extension. This opinion follows.

## BACKGROUND

This case has been pending in this Court for well over a decade, so the Court will summarize only those proceedings relevant to resolving the instant motion. In short, Plaintiffs are a group of Illinois inmates challenging the adequacy of the delivery of mental health services to mentally ill prisoners in the physical custody and control of the Illinois Department of Corrections. In 2015, the Court certified a class for the purposes of litigation, and the parties announced a settlement in December 2015.

In 2016, the Court held a fairness hearing and found the parties' Settlement Agreement to be fair and reasonable over the objections of some class members. (*See* Minute Entry date 5/13/2016). In June 2018, Plaintiffs filed a motion for permanent injunction, alleging that Defendants were violating the Settlement Agreement that was designed to protect Plaintiffs' constitutional rights. On April 23, 2019, the Court entered a permanent Injunction Order after

finding that Defendants had violated parts of the Settlement Agreement and were deliberately indifferent to Plaintiffs' mental health needs in violation of the Eight Amendment. (ECF No. 2633). The Court specifically found that "Defendants have been deliberately indifferent to Plaintiffs' medical needs in medication management, mental health treatment in segregation, mental health treatment on crisis watch, mental health evaluations, and mental health treatment plans within the meaning of the Eight Amendment." *Id*. at 46–47. Defendants timely appealed that Injunction Order on May 21, 2019. The Seventh Circuit granted Defendants several extensions to file their brief, and the case was fully briefed in February 2020. Oral arguments were held on May 20, 2020. To date, the Seventh Circuit has not issued an opinion.

The Court denied Defendants' request to stay the enforcement of the Injunction Order pending appeal, and the Injunction Order remains in effect. Over the past year and a half, Plaintiffs have filed several motions for contempt related to Defendants' purported failure to comply with the Injunction Order. On November 15, 2019, Plaintiffs filed their first motion for contempt for violations of the Order. (ECF No. 2790). Plaintiffs filed a renewed motion on July 10, 2020. (ECF Nos. 3078-79). The Court scheduled a hearing, but the parties agreed to continue the hearing due to ongoing negotiations. (*See* Minute Entry date 08/07/2020). On October 23, 2020, Plaintiffs filed a second motion for contempt, which remains pending. (ECF No. 3176). On November 13, 2020, Defendants requested that the Court stay the hearing on the contempt motion pending resolution of the appeal to the Seventh Circuit. (ECF No. 3193). Defendants represented that a stay was appropriate, and that Plaintiffs would not be significantly prejudiced by a stay of the hearing. The Court granted Defendants' motion over Plaintiffs' objections. (ECF No. 3204).

In early March 2021, after Plaintiffs filed a motion to extend the Court's jurisdiction over the Settlement Agreement, and the parties ultimately reached an agreement to extend the Court's jurisdiction over certain portions of the settlement agreement. The parties agreed Defendants were in substantial compliance with 71 sections of the Settlement Agreement, and the Court terminated its jurisdiction to enforce those terms. (ECF 3266 at 2). The Court retained jurisdiction to enforce other critical parts of the Settlement Agreement for an additional year, until April 23, 2022.

The parties have not, however, come to an agreement on the Court's continuing jurisdiction related to the Injunction Order, which specifies that it "shall remain in place for a period of two years from the date of this order." (ECF. No. 2633 at 61). Accordingly, Plaintiffs have now filed a Motion to Extend the Duration of the April 23, 2019 Injunction Order, which is set to expire April 23, 2021. (ECF No. 3276). On April 19, 2021, Defendants filed a Response. (ECF No. 3279). This Order follows.

## DISCUSSION

### I. Courts may preserve the status quo while a case is pending on appeal.

Although an appeal serves to confer jurisdiction over the issue on appeal in the appellate court, "it has long been recognized that the trial court reserves the power to make orders appropriate to preserve the status quo while the appeal is pending." *Rakovich v. Wade*, 834 F.2d 673, 673–74 (7th Cir. 1987) (citing *Newton v. Consol. Gas Co. of New York*, 258 U.S. 165, 177 (1922)); *see also Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 384 (7th Cir. 2018) ("The civil rules allow the district court to modify an injunction to maintain the status quo pending appeal."); *United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 348 (7th Cir. 2019) (describing

3

allowable clarifications of an injunction's specific requirements but requiring remand under Rule 62.1 to add an entirely new requirement).

While the parties agree on the general principle that district courts may enter orders to maintain the status quo, Defendants argue that extending the injunction is a change of the status quo. Defendants elaborate that their view of the status quo is that there is currently an order in place that is set to expire and that allowing "the Order to run for an indefinite term would materially disrupt the status quo." (ECF No. 3279 at 6).

Plaintiffs, on the other hand, argue that the status quo is that there is an injunction in place to protect the inmates' rights. To support their position, Plaintiffs point to the Ninth Circuit's decision in *Mayweather v. Newland*, 258 F.3d 930, 934 (9th Cir. 2001). There, the district court issued a preliminary injunction to protect the religious rights of Muslim prisoners. The defendant appealed and, during the pendency of the appeal, the 90-day order expired. The district court then issued a new, identical preliminary injunction order. *Id*. The Ninth Circuit held that the district court had properly maintained the status quo by renewing the injunction on terms identical to those on appeal consistent with the court's authority under Rule 62 of the Federal Rules of Appellate Procedure. *Id*. at 935-36.

The Court agrees that the same is true here and that an extension of the Injunction Order, at least while the appeal remains, pending is appropriate to maintain the status quo.

## II.     Defendants' reliance on *Cavel* is misplaced.

Defendants also argue that according to the Seventh Circuit, the Court must use a four-part test to analyze Plaintiffs' request to extend the injunction. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544 (7th Cir. 2007). However, Defendants' reliance on *Cavel* is misplaced. There, the plaintiffs lost in the district court and appealed the case to the Seventh Circuit. The plaintiffs then sought an injunction to prevent the enforcement of a statute pending appeal. The Seventh Circuit

applied the four-part test set out in *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987) to determine whether the plaintiffs could seek relief from the district court's ruling pending appeal. That, however, is different from the circumstances here. Here, the prevailing party seeks to maintain the status quo. Plaintiffs prevailed in the district court and the Court declined to stay the enforcement of the injunction. Plaintiffs now seek an extension of the district court's initial injunction that is set to expire. While it may be necessary for courts to evaluate the *Hilton* factors when the losing party seeks to enjoin the enforcement of the lower court's decision, the Court is not persuaded this is the proper test to evaluate whether it is appropriate to extend an injunction the Court already found was necessary to protect Plaintiffs' constitutional rights. Indeed, the district court opinions Defendants cite are similarly about the party that lost in the district court seeking to stay enforcement of that decision pending appeal. Defendants have not pointed the Court to a case where the *Hilton* factors were applied in a situation with a similar fact pattern.

Even considering the *Hilton* factors, Plaintiffs would prevail. According to Defendants, Plaintiffs must demonstrate: "(1) whether the petitioner has made a strong showing that the petitioner is likely to succeed on the merits; (2) whether the petitioner will be irreparably injured absent the requested relief; (3) whether issuance of the order would substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Cavel*, 500 F.3d at 547. Here, this Court has already found in favor of Plaintiffs when it issued the Injunction Order and held that there are no adequate remedies at law to compensate for their injuries. (ECF No. 2633). Accordingly, the Court found that Plaintiffs were at a significant risk of harm and that they have suffered or will suffer irreparable injury without a permanent injunction. *Id*. In the interim two years since the Court entered the Injunction Order, the Court Monitor has continued to note significant failures on the part of Defendants. According to Defendants, the ongoing

pandemic has significantly interfered with their ability to meet their obligations. There is further no reason to believe that the injunction would substantially harm Defendants because they are otherwise required to respect Plaintiffs' constitutional rights. Finally, as the Court outlined in its injunction order, "public interest also weighs heavily in favor of the Plaintiffs." (ECF No. 2633 at 47).

### III. Judicial estoppel prohibits Defendants from benefitting from contradictory positions.

Judicial estoppel is "an equitable doctrine to be applied flexibly with an eye toward protecting the integrity of the judicial process." *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004)). The purpose is to protect the courts from "being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *United States v. Segal*, 938 F.3d 898, 906 (7th Cir. 2019) (quoting *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013)). There is not a precise or rigid formula that guides the application of judicial estoppel. *Jarrard*, 408 F.3d at 914. However, there are several important factors for courts to consider: (1) whether the party's position is clearly inconsistent; (2) whether the party prevailed on the basis of that earlier position; and (3) whether the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment to the opposing party if not estopped. *Id*.

In past filings, Defendants have argued against holding a contempt hearing and in favor of a stay. Specifically, in November 2020, Defendants filed a motion to stay the contempt hearings, representing that the stay would be "unlikely to prejudice any party." (ECF No. 3193 at 6). Defendants explained that even if the Seventh Circuit were to find in Plaintiffs' favor, Plaintiffs could "presumably can make full use of their previous investment of time and money

6

in finalizing their motion." (ECF No. 3193 at 6). Later, in the Defendants' response to Plaintiffs' motion to extend the court's jurisdiction to enforce the Settlement Agreement, Defendants argued that the "Court should decline to set any hearing in this case until after the Seventh Circuit issues its ruling in the pending appeal, and after the Court and the parties have had time to determine what next steps are appropriate in light of that ruling." (ECF No. 3254 at 12). Based in part upon Defendants' representations, the Court agreed it was appropriate to stay the contempt hearing, observing that "a stay would not affect the Injunction Order; rather, only the upcoming contempt proceedings . . . The Injunction Order still remains in place." (ECF No. 3204 at 4).

Defendants now argue that Plaintiffs' have failed to prove that they violated the Injunction and that the Court must hold a full evidentiary hearing before extending the Injunction. (ECF No. 3279 at 6). Defendants have avoided a contempt hearing by insisting a hearing was not appropriate and a stay was not prejudicial to Plaintiffs. Defendants now seek to avoid the Injunction by arguing a hearing is essential and that Plaintiffs failed to prevent sufficient evidence to extend the Injunction.

The consideration of equity persuades this Court that the application of judicial estoppel is appropriate to prevent Defendants from strategically switching positions to avoid a contempt hearing and to then later argue Plaintiffs failed to adequately prove Defendants are noncompliant with the Injunction. This gamesmanship is precisely the sort of behavior the doctrine of judicial estoppel seeks to prevent. *See New Hampshire v. Maine*, 532 U.S. 742, 755 (2001) (stating that judicial estoppel was appropriate where the court accepted the party's interpretation of a term and the party benefitted from that interpretation, but then sought additional benefit from an

7

inconsistent interpretation). Accordingly, it is appropriate for the Court to hold Defendants to their initial position and to reject their arguments regarding Plaintiffs' alleged lack of proof.

### IV.     Other equitable considerations favor continuing the Injunction.

The Court further observes that under the Prison Litigation Reform Act, 18 USC § 3626(b)(1)(A)(i), injunctive relief does not automatically terminate, but Defendants may move to terminate after two years. Here, however, the parties initially agreed that the requirements would last two years, and the Injunction Order reflected and cited to that language. Specifically, the Injunction Order states that it "shall remain in place for a period of two years from the date of this order" and cites a section of the Settlement Agreement. (ECF. No. 2633 at 61) (citing ECF No. 711-1 at 30)). That provision of the Settlement Agreement states that the Court's jurisdiction should continue for "not more than two years from the date of the Court's finding that Defendants' are not in substantial compliance." (ECF No. 711-1 at 30). Thus, the expiration of the Injunction Order was based upon the parties' agreement, and the parties have now agreed to extend the portions of the Settlement Agreement that the Injunction governs. They specifically agreed to extend the Court's jurisdiction over the Settlement Agreement on forty-five different provisions, including the need for timely evaluation, automatic referral for mental health services, staffing target, standards of living, and out of cell time. (ECF No. 3266).

Moreover, Defendants have invoked the *Force Majeure* provision of the Settlement Agreement to suspend certain requirements during the pandemic. The Court Monitor's most recent report found that Defendants were noncompliant in that there are significant staffing shortages, class members assigned to crisis watch receive inadequate care, class members are receiving little treatment while housed in segregation, problems exist in performing timely psychiatric follow-ups, and treatment backlogs continue. (ECF No. 3241 at 5). Accordingly, the

Court is persuaded that maintaining the Injunction during the pendency of the appeal is appropriate.

## CONCLUSION

For the reasons stated above, the Court agrees it is appropriate to extend the Injunction Order while the appeal remains pending in the Seventh Circuit. The contempt hearing remains stayed. The parties can revisit the matter after the Seventh Circuit has decided the appeal. Accordingly, Plaintiffs' Motion to Extend the Duration of the April 23, 2019 Injunction Order [3276] is GRANTED to the extent it seeks to extend the duration of the Injunction during the pendency of the appeal.

ENTERED this 23rd day of April, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge