E-FILED
Friday, 08 April, 2022 03:30:40 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ASHOOR RASHO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:07-CV-1298-MMM-JEH |
| | ) | |
| v. | ) | Judge Michael M. Mihm |
| | ) | |
| ROB JEFFREYS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY RE MOTION TO STRIKE**

For six years, the parties and the Court have agreed that the Rasho Agreement is not a consent decree under 18 USC §3626, both by its terms and its function. As a result, enforcement has been limited as the Court cannot enforce, and has not enforced, violations of the Settlement's terms. Plaintiffs have not had the benefit of the defining characteristic of a consent decree: an enforceable court order for relief. Thus, the Rasho Agreement is a private settlement agreement. The Agreement's terms—including its provisions for enforcement—were intentionally designed to reflect the mutual understanding that the document was *not* a consent decree, and they were designed this way because *Defendants* refused to enter a consent decree. Because the Rasho Agreement is not and never has been treated as a court order, it is not subject to the PLRA's requirements for prospective relief.

Having reaped the benefits of settling the litigation with a private settlement agreement (thereby depriving Plaintiffs of the significant enforcement benefits of a consent decree), Defendants now do a complete about-face to deprive Plaintiffs of the minimal benefits the agreement provided. On the ***very same day*** that Defendants filed their response in this Court, arguing that the Rasho Agreement is a consent decree within the meaning of the PLRA, they also

filed their opposition to Plaintiffs' petition for rehearing in the Seventh Circuit, arguing that Rasho Agreement was **not** a court order. *See Rasho v. Jeffreys,* No. 19-1145, ECF No. 89, Answer of Defendants-Appellants to Petition for En Banc Rehearing at 13 (7th Cir. 2022) ("[T]he district court based its decision on defendants' alleged noncompliance with the agreement, *which was not an injunctive order under the PLRA… .*") (emphasis added).

Under the plain language of the PLRA, if the Rasho Agreement is not court-ordered relief, then it is not a consent decree—it is a private settlement agreement under the PLRA. 18 USC §3626(g)(1). Defendants' attempt to recast the Rasho Agreement as a consent decree in this Court, even as they make a contrary argument in the Seventh Circuit, should be rejected. The Court should find non-compliance based on the Monitor's reporting and continue jurisdiction or, as previously agreed by the parties, a hearing should proceed for this Court to make those findings to continue jurisdiction under the Rasho Agreement. The PLRA §3626(c) does not require this Court to make needs-narrowness-intrusiveness findings in order to continue jurisdiction over a private settlement agreement.

I. The Rasho Agreement is Not a Consent Decree Under the PLRA

    a. The Rasho Agreement Is Not Court-Ordered Relief

Unlike a private settlement, a consent decree is a judicial order that the PLRA defines as "relief entered by the court" as a result of the parties' agreement. See 18 USC §3626(g)(1). The Rasho Agreement, however, is *not* a judicial order and provides no "relief" under the law. Nothing in the Settlement Agreement constitutes an order by the Court that the Defendants do anything. Rather, it is an agreement whereby the Defendants agreed to take certain steps. The terms themselves are only enforceable as a contract.

By its express terms and function, the Rasho Agreement is not a court order because the Court does not have authority to issue any relief or find Defendants in contempt for violations of the Agreement's terms. Quite to the contrary, in order to obtain any court-ordered relief, the Agreement requires Plaintiffs to show that Defendants have violated federal law and that the ordered relief meets the PLRA's needs-narrowness-intrusiveness requirements. Section §XXIX(g) reads:

> To permit enforcement of the terms of this Settlement Agreement in federal court, the Parties agree that, should it become necessary to seek the Court's assistance as to violations of this agreement, any order granting such relief must include a finding that the relief sought is narrowly drawn, extends no further than is necessary to correct the violation of the federal right, and is the least intrusive means for doing so.

Of course, were the Agreement a consent decree, no such PLRA findings would be required for this Court to enter relief for violations of the order properly entered to correct federal law violations. *See Doe v. Cook County,* 798 F.3d 558, 564 (7th Cir. 2015) ("Simple enforcement of a consent decree does not require a new round of findings under § 3626.").

Defendants rely entirely upon *Doe v. Cook County* to support their assertion that the Rasho Agreement is a settlement agreement simply because this Court retained jurisdiction over the parties' agreement. As an initial matter, the Seventh Circuit was not asked to decide whether the settlement agreements in *Doe* were private settlements or a consent decree within the meaning of the PLRA, or even whether it was appropriate for the district court to maintain jurisdiction. In fact, those agreements were not at issue at all in *Doe.* Rather, what was challenged in *Doe* was a subsequent enforcement order and not the agreement itself. 798 F. 3d 558 at 567 ("The only question we resolved is whether the 2010 order permitting the Administrator to bypass state employment law (a power not conferred in 2007) complained with § 3626, and we have held that it did not."). The case had been settled eight years prior, in 2002,

3

with the court retaining jurisdiction to enforce the agreement and a subsequent agreement reached in 2006, from which an administrator was appointed to run (not monitor) the Juvenile Detention Center. *Id.* at 565. At no time did the district court make findings of federal law violations as would be required for prospective relief in compliance with the PLRA. *Id.* Despite no such finding, the district court granted the Administrator broad authority to act as the agent of the court to run the system, including subsequently, in 2010, authorizing the Administrator to implement a staffing plan that terminated more than a hundred employees, bypassing state employment law and the bargained for rights of the employees in the process. *Id.* at 561.

At issue in *Doe* was not the court's retention of jurisdiction—that was not challenged or questioned in the decision—but the subsequent 2010 order, which required defendants to take significant actions without ever making any findings of federal law violations and without ensuring that the ordered relief comported with the PLRA. *Doe,* 798 F.3d at 565. In fact, the district court was clear that there was *no* federal law violation found that required court remedy. *Id.* at 561. Instead, the district court had reasoned that the Administrator simply needed flexibility—and the not the burden of labor rights—to efficiently run the system. *Id.* at 563 ("The judge found that giving speed and flexibility to the Administrator would be beneficial, but not that federal law requires this…"). The *Doe* Court did not wade into the morass of the underlying agreements but focused on the nature of the action required by the 2010 order at issue in finding that their function was judicial enforcement—as distinct from a settlement agreement that would have to be returned to litigation on the merits to allow for court ordered relief—thereby falling with the PLRA's requirements for prospective relief and consent decrees. *Id.* at 563. The Court found that the Administrator was exercising the court's authority, requiring prospective relief, but without making the statutory findings required by the PLRA for such relief. *Id.* at 564.

4

Here, in stark contrast, this Court has not entered any orders coercing compliance with the Rasho Agreement's terms, and the Agreement itself does *not* call for such, much less does it empower the court-appointed monitor to take control of the IDOC or even order the Defendants to do anything. Rasho Agreement §XXIX(d), (f). Instead, the Court must first make findings of ongoing federal law violations and then, prior to ordering any relief, making findings that the relief meets the needs-narrowness-intrusiveness requirements of the PLRA. Rasho Agreement §XXIX(g). This is functionally the same as returning the case to litigation on the merits per the PLRA's definition of a private settlement agreement as one that is "not subject to judicial enforcement" in and of itself but instead through the reinstatement of the underlying claims 18 USC §3626(g)(6).

An identical situation was presented in *Disability Law Center v. Massachusetts Dept. of Corrections*. 960 F. Supp. 2d 271 (D. Mass. 2012). There, the parties negotiated a private settlement agreement to resolve a constitutional claim brought on behalf of mentally ill prisoners housed in solitary confinement for prolonged periods. The parties wanted the federal court to retain jurisdiction over the private settlement agreement and for the court to keep the case on its docket while the parties endeavored to comply with the agreement. Concerned about this very question—whether the district court could retain jurisdiction over a private settlement agreement without converting it into a consent decree—the district court requested briefing from the parties and thoroughly canvassed the applicable case law itself. *Disability Law Center v. Massachusetts Dept. of Corrections, et. al,* No. 1:07-cv-10463, ECF Nos. 253-255 (D. Mass).

The court explained that approving the agreement and continuing jurisdiction, did *not* make the agreement a consent decree under the PLRA because, in doing so, the court was not ordering the parties to comply with the agreement, or to do anything at all. *Disability Law*

*Center,* 960 F.Supp.2d at 275 ("the court is not ordering the parties to comply with their Agreement or to do anything at all. Instead, the court is merely staying the litigation and providing the parties with an opportunity to perform under their Agreement."). Like here, the parties' agreement included terms for ongoing monitoring of compliance with the agreement; still, the court explained that because the court was not *ordering* the parties to comply with those provisions, it was not entering a consent decree within the meaning of the PLRA. *Id.* at 285. For the same reasons, here, neither maintaining jurisdiction nor interpreting the force majeure clause constitute enforcement of the Agreement.

      **b. The Rasho Agreement Cannot be a Court Order Because Defendants Cannot be Held in Contempt for Violations**

Because a consent decree is a court order for relief, its hallmark is its enforceability by the court through contempt. *Disability Law Center*, 960 F. Supp. 2d at 283 ("[A]n order enforceable by contempt is a fundamental feature of a consent decree. Consistent with this, consent decrees in PLRA cases are commonly defined as orders enforceable by contempt.") (collecting cases). A violation of a private settlement agreement, in contrast, is *not* enforceable by civil or criminal contempt. *Id.* at 285; *see also Christina A. v. Bloomberg*, 315 F.3d 990, 993-94 (8th Cir. 2003) (where court does nothing more than "retain jurisdiction to enforce" a settlement agreement, but does not have ability to enforce through contempt, agreement does not become a consent decree).

The Rasho Agreement does not allow this Court to hold Defendants in contempt or issue any other form of prospective relief for noncompliance with the Rasho Agreement. ECF No. 1597, Defs' Mem. In Resp. to Pls' Motion to Enforce, at 1-2 (arguing that injunctive relief is "not available to remedy a violation of the Agreement" but rather is contingent on finding of violation(s) of federal law). Quite to the contrary, the Rasho Agreement explicitly prohibits

contempt as a remedy for noncompliance. § XXIX(d), (f). Defendants argue that the availability of contempt did not "factor into" the analysis in *Doe* (ECF No. 3547 at 3), but that was because there was no valid order for relief ever entered in *Doe* from which contempt could be held. Here, this limitation was intentionally written into the Rasho Agreement so as to *not* to create a consent decree.[1] By purposefully removing this characteristic fundamental to consent decrees, and requiring trial on the merits of a federal rights violation for any relief to issue, the parties reached the compromise of creating a private settlement agreement within the meaning of the PLRA.

Defendants argue without basis in fact or logic that Plaintiffs voluntarily "bargained away" their right to seek contempt despite the Agreement being a consent decree. Defendants do not bother to cite anything in the record to support this mythical concession. Indeed, this concession is factually false and contrary to the record, which demonstrates that the Defendants refused to enter the negotiated consent decree and the only means to move away from litigation and to reform was through a private settlement agreement. It is also nonsensical—no plaintiff would bargain away the quintessential enforcement mechanism of a consent decree, as it is the fundamental benefit of that type of relief, without any benefit in return. Indeed, Plaintiffs bargained for two key things when they gave up the benefits of a judicially enforceable consent decree: an agreement more expansive in scope than the previously negotiated consent decree and

---

[1] Defendants also argue that it does not matter what the parties intended or that the Rasho Agreement does not make PLRA findings; under *Doe,* they argue, the Rasho Agreement has the legal effect of a consent decree regardless of the parties' intent. But the Rasho Agreement is, at its core, a contract, and contract principles apply. *Holmes v. Godinez,* 991 F.3d 775, 780 (7th Cir. 2021) (explaining that, under Illinois law, "the court's primary objective in construing a contract is to give effect to the intent of the parties."). If both parties intended the Rasho Agreement to be a private settlement agreement and not a consent decree, the Seventh Circuit cannot transform the Agreement into a consent decree against the parties' will—rather, the appropriate procedure would be to reform the contract's terms to meet the parties' intent. *See* Restatement (Second) of Contracts § 155 ("If the parties are mistaken with respect to the legal effect of the language that they have used, the writing may be reformed to reflect the intended effect.").

the continued jurisdiction of this Court to maintain the docket of any subsequent related litigation. And in approving the Rasho Agreement, this Court opined that its continued involvement—by providing a forum to address issues of compliance and performance—was necessary to render the Agreement fair and reasonable. ECF No. 709.

Defendants cherry pick the Agreement's terms to suggest that this Court *can* issue prospective relief for violations of the Agreement, ECF No. 3547 at 4; Rasho Agreement at §XXIX(f). In so doing, Defendants conveniently ignore and fail to discuss the import of the Agreement's *requirements* for the issuance of such relief outlined in §XXIX(g) and discussed above, which require a finding on the merits of a federal law violation and mirror the PLRA's requirements for ordering prospective relief. 18 USC §3626(a)(1)(A). As previously discussed, the *only* way for the Rasho Agreement to be enforced in federal court is for this Court to find that violations of the Agreement *also* constitute independent violations of federal law. In other words, but-for the continuation of this Court's jurisdiction, Plaintiffs could and would have filed new complaints in federal court for injunctive relief whenever an ongoing violation of the Rasho Agreement rose to the level of a federal law violations, instead of filing them on this docket.

    **c. The Rasho Agreement is Not an Order Merely Because the Court "Approved" It**

To the extent Defendants suggest that the Rasho Agreement is a court order because the Court entered an order "approving" it, this argument is unavailing. Class action settlements—whether prison conditions, consumer fraud, or products liability—are approved by the court pursuant to Federal Rule of Civil Procedure 23. These private settlement agreements are not magically transformed into consent decrees because a court approved them. Again, the Court addressed this very question in *Disability Law Center*, concluding that the fact that the court

8

"approved" of the settlement agreement did not render it a consent decree. *Disability Law Center,* 960 F.Supp.2d at 279-80.

Defendants cite without explaining *Huerta v. Ewing*, as standing for the proposition that "[T]he Court's approval is not necessary or appropriate" in the case of a PLRA private settlement agreement." (ECF No. 3547 at 6). That decision, however, was for class certification and partial approval of a stipulation for which the parties did not agree as to whether it constituted a private settlement agreement or a consent decree under the PLRA. *Huerta v. Ewing*, No. 216CV00397JMSDKL, 2017 WL 2198632, at *1 (S.D. Ind. May 19, 2017). The court was not considering or discussing approval in general (under Rule 23) or whether it could maintain jurisdiction. In fact, the court denied a portion of the stipulation because a merits order was not being entered. *Id.* The *Huerta* court did exactly what this Court did—it treated the agreement as an agreement with the proviso that the court would retain jurisdiction. The court approved notice to the class and held a fairness hearing just as the federal rules *required* this Court to hold a fairness hearing and approve of the settlement, whether it was a private settlement agreement or a consent decree, *see* Fed. R. Civ. P. 23(e)(2). Moreover, given that this case concerns the constitutional rights of thousands of prisoners with mental illness, the district court has the discretion to review the fairness of any agreement intended to result in resolution of these claims. *See Disability Law Center,* 960 F. Supp. 2d at 279-80.

## II. The Fact that the Court Reserved Jurisdiction Over a Private Settlement Agreement Does Not Transform It Into a Consent Decree

This Court had subject-matter jurisdiction when this case was filed and never relinquished it. And any subsequent violation of the Rasho Agreement can and should be litigated in this Court so long as there is an independent basis of subject-matter jurisdiction beyond mere state law breach of contract. *Jones v. Ass'n of Flight Attendants-CWA*, 778 F.3d

9

571, 573 (7th Cir. 2015) (suits for breach of settlement agreement may be pursued in federal court if there is an independent basis of subject matter jurisdiction). That is achieved by the Agreement's requirements that violations of federal law be shown alongside any alleged violations of the Agreement.

Federal courts may retain jurisdiction over private settlement agreements. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994) (explaining that a court is "authorized" to "retain jurisdiction over the settlement contract if the parties agree"). In *Kokkonen*, the Supreme Court made clear that federal courts may retain jurisdiction over a settlement agreement, even after dismissing a case with prejudice, by either 1) requiring the parties' compliance with the terms of the settlement as part of its dismissal order, 2) incorporate the terms of the settlement in the dismissal order, or 3) explicitly retain jurisdiction over the agreement if the parties agree.

Nothing in the PLRA prohibits a federal court from maintaining jurisdiction over a private settlement agreement in the prison reform context. Indeed, district courts all over the country routinely maintain jurisdiction over private settlement agreements in prison reform litigation. *See e.g., Conn. Office of Protection and Advocacy v. Choinski*, No. 3:03CV1352, ECF No. 75 (D. Conn. Sept. 26, 2005); *Tyson v. Grant County Sheriff*, No. 1:07-cv-00010, ECF Nos. 38, 45 (N.D. Ind. 2008); *Disability Rights Network of Pennsylvania v. Wetzel*, No. 1:13-cv-00635, ECF No. 59 (M.D. Pa. Jan. 9, 2015); *Minnis v. Johnson*, No. 1:10-cv-00096 (E.D. Va.); *Richardson v. Monroe County Sheriff*, No. 1:08-cv-00174, ECF No. 52 (S.D. Ind. Aug. 14, 2009). While those cases tend to follow the *Kokkonen* method of dismissing a case while explicitly retaining jurisdiction over the agreement in the dismissal order, that distinction from

our case has no import here, as the effect is the same—federal courts routinely retain jurisdiction over private settlements in the prison reform context.

Many of these agreements allow for ongoing monitoring and reporting by a subject-matter experts, just as the Rasho Agreement does. (*see e.g. Disability Rights Network of Penn. v. Wetzel* (parties agreed on consultant only terminable by good cause)*; Conn. Office of Protection and Advocacy v. Choinski* (parties each obtained their own consultants); *Minnis v. Johnson* (allowing both plaintiffs' counsel and state agency with subject matter expertise regular access for monitoring). Some require the parties to submit regular status updates to the court (*Tyson v. Grant County Sheriff)*. Some contain explicit time limits for the court's jurisdiction (*Conn. Office of Protection and Advocacy v. Choinski)*, while others allow for jurisdiction over the agreement to be extended until substantial compliance is reached (*Disability Rights Network of Pennsylvania v. Wetzel; Minnis v. Johnson*). The fact that the federal court retains jurisdiction, allows for monitoring, and allows the parties to return to the court for breaches of the agreement or extension of jurisdiction for lack of compliance, does not convert these private agreements into consent decrees, nor does it convert the Rasho Agreement into a consent decree.

Moreover, the case for continued subject matter jurisdiction is even stronger in this case than in those other cited private settlement agreements. Those cases tend to follow the *Kokkonen* method of *dismissing* a case while explicitly retaining jurisdiction to enforce the agreement in the dismissal order. The Seventh Circuit has disfavored this practice, instead advising that district courts should delay dismissal of an action while jurisdiction is retained, especially where dismissal is contingent on achieving some level of compliance that may itself have to be adjudicated, as is the case here. *Shapo v. Engle,* 463 F.3d 641, 644 (7th Cir. 2006).

In maintaining jurisdiction over this case, this Court is continuing to provide a forum for ongoing monitoring of Defendants' compliance, protecting the monitor from arbitrary termination, and ensuring judicial economy over any future requests for court-ordered relief for federal law violations that parallel violations of the Agreement. Defendants do not cite any case law demonstrating that providing such a forum after the parties have agreed to a private settlement is prohibited by the PLRA, or that it constitutes "prospective relief" under the PLRA. The PLRA defines "prospective relief" as "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7). It further defines "relief" as "all relief in any form granted or approved by the court, including consent decrees but not including private settlement agreements." 18 U.S.C. § 3626(g)(9). While these definitions are a bit circular, relief is a legal term of art that has never been used to include jurisdiction (if it did, even a pending case would require PLRA finding for the court to maintain jurisdiction).

Plaintiffs did not concede that the private settlement agreement here resolved the constitutional violations alleged in *Rasho*; what the parties agreed was that under the supervision of the federal court they would work together with the assistance of the Court and the Monitor to address the constitutional violations in the context of the private settlement agreement. Claims deferred are not claims resolved. The PLRA does not require dismissal of a federal action when a private settlement agreement is reached; if Congress intended to oust federal courts of jurisdiction when a private settlement agreement was reached, it would have explicitly so stated.

III. **The Seventh Circuit's Footnote Cannot Transform the Rasho Agreement into a Consent Decree, and the Defendants Continue to Pursue an Alternate Position in the Appellate Court**

When the Seventh Circuit panel stated in a footnote that the Rasho Agreement was a consent decree, it did not analyze the PLRA's requirements for consent decrees or their

12

applicability to the Rasho Agreement. With all due respect to the panel, the issue was not fully argued and was not necessary to resolution of the appeal. The questioning by Judge Ripple, pointed to by Defendants in their brief, demonstrates the lack of clarity on the point. ECF No. 3547 at 11-12.  Judge Ripple asked why Plaintiffs would not have just filed a motion to enforce the decree if the Rasho Agreement were, in fact, a consent decree. (Indeed, if the Rasho Agreement were properly a consent decree, this Court could have ordered relief without making findings of federal law violations or the PLRA's needs-narrowness-intrusiveness requirement, as explained above, and those issues would not have even needed to be decided by the Seventh Circuit). Both sides attempted to explain the parties' intent *not* to create a decree, but without thorough briefing, the nuances of this issue were not deeply analyzed or addressed.

Defendants disingenuously argue that they *did* present this issue to the Seventh Circuit, citing to a single sentence in their brief. ECF No. 3547 at 11. But they cannot seriously assert that the issue of whether or not the Rasho Agreement is a PLRA consent decree was presented for appellate consideration. Certainly, it does not appear as an "Issue Presented for Review" in Defendants' appellate briefing. *See Rasho v. Jeffreys,* No. 19-1145, Corrected Brief And Required Short Appendix Of Defendants-Appellants at 5 (7th Cir. 2019). Even if it had been, it would have been inappropriate to raise for the first time on appeal as it had not been made to the district court. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("[A] party has waived the ability to make a specific argument for the first time on appeal when the party failed to present the specific argument to the district court, even though the issue may have been before the district court in more general terms."). Of course, Defendants never made that argument to this Court and indeed, took the opposite position, arguing that Plaintiffs could not

13

pursue a motion to enforce based on violations of the agreement without first making showings of federal law violations. ECF No. 1597.

The instant briefing is the first time, since the entry of the Rasho Agreement, that Defendants have attempted to assert that the Agreement is a consent decree. As noted in the introduction to this brief, Defendants are not even now taking this position in the Seventh Circuit. On literally the same day Defendants filed their response at ECF No. 3547 in this Court, Defendants continued to argue to the Seventh Circuit that the Rasho Agreement is not itself a court order or prospective relief:

> Here, the issue before the district court was whether to issue a permanent injunction in the first place, and the court did not, and could not, base that decision on the effectiveness of an existing injunction. As stated, the district court based its decision on defendants' alleged noncompliance with the agreement, which was not an injunctive order under the PLRA because it did not purport to be the least intrusive means for correcting a violation of a federal right, and the court made no findings to that effect.

*See Rasho v. Jeffreys,* No. 19-1145, ECF No. 89, Answer of Defendants-Appellants to Petition for En Banc Rehearing at 13 (7th Cir. 2022). Setting aside the Defendants' misrepresentation that there had been no prior injunction (this Court had entered a preliminary injunction, which Defendants did not comply with), the more important point is that Defendants persist in their attempts to have their cake and eat it too. They argue to the Seventh Circuit that the Agreement was not a court order yet argue to *this* Court that it is. If the Rasho Agreement is not an injunctive order, then it is not prospective relief, and this Court is not required to make PLRA findings in order to extend its jurisdiction over it.

Defendants' duplicitous approach to this question is precisely why Defendants should be judicially estopped from raising this argument at this late date. Defendants should not be permitted to advocate to the Seventh Circuit that the Rasho Agreement was not a judicial order, and that their blatant noncompliance with it is somehow less egregious or warranting of

injunctive relief than if the Agreement *had* been, while also arguing to this Court that the Agreement has been an injunctive order all along.

IV. *Hallett* **Stands for Proposition that a Consent Decree Must Conform to PLRA's Requirements for Consent Decrees, Nothing More**

Defendants continue to obscure the meaning and import of the *Hallett v. Morgan* decision. That decision stands for the proposition that, when a party asks a court to continue a PLRA consent decree, which is court-ordered prospective relief, the court must make PLRA findings to support the continuation of that prospective relief. *Hallett v. Morgan,* 296 F.3d 732 (9th Cir. 2002). But neither the parties nor the court in *Hallet* ever faced the question of whether the parties' agreement was a "private settlement agreement" or a "consent decree" under the PLRA—all sides understood from the beginning that it was a PLRA consent decree. Plaintiffs do not contest that PLRA findings must be shown for the entry of a PLRA consent decree. What Plaintiffs contest is Defendants' attempts, in their earlier briefing, to make it sound like *Hallett* involved a "private settlement agreement" within the PLRA's definitions, when it did not.

Moreover, as the above-cited private PLRA settlement agreements demonstrate, *supra,* federal courts *routinely* maintain jurisdiction over private settlement agreements without converting them into consent decrees. Many of those private settlement agreements contain provisions allowing for extension of the court's jurisdiction based on Defendants' noncompliance, and in many cases jurisdiction has been so extended, without the federal courts ever holding that PLRA findings are required to extend jurisdiction over those private settlement agreements.

RESPECTFULLY SUBMITTED,

/s/ Amanda Antholt
One of the attorneys for Plaintiffs

| | |
|---|---|
| Harold C. Hirshman<br>Samantha Reed<br>DENTONS US LLP<br>233 S. Wacker Drive, Suite 7800<br>Chicago, IL  60606<br>Telephone: (312) 876-8000<br>Facsimile:  (312) 876-7934<br><br>Alan Mills<br>Nicole Schult<br>Uptown People's Law Center<br>4413 N Sheridan<br>Chicago, IL  60640<br>(773) 769-1410 (phone) | Amanda Antholt<br>Equip for Equality<br>20 N. Michigan Ave., Suite 300<br>Chicago, IL 60602<br>(312) 895-7330 (phone) |