IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PATRICE DANIELS, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>DIRECTOR ROB JEFFREYS, *et al.*,<br><br>　　　　　　Defendants. | No. 1:07-CV-1298-MMM-JEH<br><br>Hon. Michael M. Mihm |

**MOTION TO DISMISS GOVERNOR AS A DEFENDANT AND NON-EIGHTH
AMENDMENT CLAIMS IN FOURTH AMENDED COMPLAINT**

　　　The history of this case shows it is well past its shelf life as a vehicle for asserting systemic deliberate indifference by the Illinois Department of Corrections in connection with its provision of mental health care. In 2018, Plaintiffs led the Court to believe that the law and the record supported the entry of a permanent injunction to remedy what Plaintiffs asserted was the Department's deliberate indifference to the mental health needs of persons in custody. Plaintiffs were wrong, and their misunderstanding of the law and the record did no favors to the class they represent. On appeal, the Seventh Circuit reversed and vacated the permanent injunction, fundamentally rejecting the theory Plaintiffs have pursued for more than fifteen years.

　　　Rather than accept the decisive judgment of the Seventh Circuit, Plaintiffs' counsel announced their intention to restart this case from the beginning, and filed a Fourth Amended Complaint. Knowing, however, that their core Eighth Amendment theory cannot survive at trial under the Seventh Circuit's *Rasho* decision, Plaintiffs' counsel now seek to expand the scope of this case far beyond what their pleadings can bear or the law allows. They do so not just by frivolously adding the Governor as a defendant—who does not operate the prison system and whose addition violates sovereign immunity—but also by adding a new equal protection claim alleging race discrimination without any valid basis. Plaintiffs also continue to assert a superfluous

substantive due process claim (that is subsumed by their Eight Amendment claim) and legally insufficient ADA and Rehabilitation Act claims. The Court should dismiss all claims against the Governor, and the claims asserted against all other Defendants in Counts II–V. This case can then proceed to the final resolution of the actual issue in dispute: whether the Department's ongoing efforts to provide mental health services to individuals in custody violate the Eighth Amendment.

## BACKGROUND

The relevant background is well known to the Court and the parties. After fifteen years of litigation, on January 13, 2022, the Seventh Circuit vacated this Court's permanent injunction in an opinion that addressed the law of deliberate indifference and the scope of relief permitted under the PLRA. *Rasho v. Jeffreys*, 22 F.4th 703, 706 (7th Cir. 2022). This Court then denied Plaintiffs' motion to extend the 2016 Settlement Agreement, and ordered the case "returned to the active docket for scheduling." *Rasho v. Walker*, 2022 U.S. Dist. LEXIS 129805, at *21 (C.D. Ill. July 21, 2022). On September 29, 2022, the parties submitted a Joint Proposed Scheduling and Discovery Order reflecting their agreement that Defendants would have the opportunity to move to dismiss Plaintiffs' Fourth Amended Complaint if leave to amend was granted. ECF 3640 ¶ 2. Accordingly, Defendants did not oppose Plaintiffs' Motion for Leave to Amend. On September 30, 2022, the Court adopted the parties' proposed scheduling order, and granted Plaintiffs' motion to amend on an unopposed basis. *See* Text Orders dated Sept. 30, 2022.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires an inquiry as to whether "the facts alleged in a complaint, taken as true, state a claim for relief under the applicable legal standard." *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020); *see also Neitske v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive

issue of law."). The Court should assume well-pleaded factual allegations are true but "need not accept as true statements of law or unsupported conclusory factual allegations." *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and grounds on which it rests, and (2) contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (cleaned up). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint in a "more complex case" will be required to contain "more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson v. Citibank*, 614 F.3d 400, 405 (7th Cir. 2010).

## ARGUMENT

All claims asserted against the Governor, and the claims asserted against all other defendants in Counts II–V, fail as a matter of law and should be dismissed.

### I.  The Governor Is Not A Proper Defendant.

Plaintiffs' addition of the Governor as a defendant is unnecessary and frivolous. Despite already naming IDOC Director Jeffreys, IDOC chief of mental health Dr. Hinton, and IDOC chief of psychiatry Dr. Puga as defendants in their official capacities, Plaintiffs now add the Governor as a named defendant in his official capacity. The sole basis for the Governor's inclusion is his role as the State's chief executive "with ultimate authority for ensuring that all executive agencies, including the IDOC, function in compliance with state and federal law." ECF 3641, 4th Am. Compl., ¶ 65. Adding the Governor on this threadbare basis violates the Eleventh Amendment and

is contrary to controlling Supreme Court precedent and the well-established law found in numerous cases within the Seventh Circuit.

Sovereign immunity stands as a constitutional limit on federal judicial power. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). This immunity extends to state agencies and officials sued in their official capacities, *Olison v. Ryan*, 2000 U.S. Dist. LEXIS 13074, at *4 (N.D. Ill. Sept. 5, 2000), subject to specific exceptions, including claims for prospective relief to prevent officials from violating the Constitution. *Ex Parte Young*, 209 U.S. 123, 157 (1908). But this exception is limited to allowing suit against the official who is enforcing the alleged unconstitutional policy: "In making an officer of the state a party defendant in a suit . . . it is plain that such officer must have some connection to the enforcement of the act . . . ." *Id*.

It is well-established that Plaintiffs cannot meet this test through their bare allegation that the Governor is the chief executive of the State responsible for ensuring that State agencies comply with state and federal law. ECF 3641 ¶ 65. In *Ex parte Young*, the Supreme Court rejected this approach, noting it would make governors a potential party in nearly every suit alleging a constitutional violation. 209 U.S. at 157. Applying this principle, courts in the Seventh Circuit have repeatedly held that a governor cannot be joined in an action for injunctive relief based solely on his or her role as the chief executive of a state. *See*, *e.g.*, *Eason v. Pritzker*, 2020 U.S. Dist. LEXIS 214779, at *21 (N.D. Ill. Nov. 18, 2020); *see also Illinois League of Advocates for the Developmentally Disabled v. Quinn*, 2013 U.S. Dist. LEXIS 145246, at *3–4 (N.D. Ill. Oct. 8, 2013) ("A theory of liability predicated on a governor's general obligations as the executive of the State cannot avoid the consequences of the Eleventh Amendment.") (collecting cases); *Mexicana v. Indiana*, 2013 U.S. Dist. LEXIS 113885, at *6 (N.D. Ind. Aug. 13, 2013); *accord Marie O. v. Edgar,* 1994 U.S. Dist. LEXIS 7881, at *4-5 (N.D. Ill. June 13, 1994) ("A Governor's generalized

duty under Article 5, § 8 of the Illinois Constitution to 'faithfully execute' Illinois law, is insufficient to satisfy the requirement that a state official bear some connection with the enforcement of a challenged statute."); *Hearne v. Bd. Of Educ. of City of Chicago*, 185 F.3d 770, 777 (7th Cir. 1992) ("[T]he governor has no role to play in the enforcement of the challenged statutes, nor does the governor have the power to nullify legislation once it has entered into force.").

To fall within the injunction exception allowed under *Ex parte Young*, the plaintiff must instead allege "specific involvement by the governor in the unconstitutional policy or practice." *Eason*, 2020 U.S. Dist. LEXIS 215779 at *21–22 (collecting cases). The prisoner plaintiffs in *Eason*, like Plaintiffs here, sought to include the Governor in an action seeking an injunction based on alleged constitutional and ADA violations in Illinois prisons, "simply because he is the top official in the executive branch in state government." *Id.* at *23 The court rejected that effort as a "non-starter." *Id*. at *22. This Court should do the same, and dismiss the Governor as a defendant in this action.

**II.    Plaintiffs' Substantive Due Process Claim Is Subsumed By Their Eighth Amendment Claim, And Must Be Dismissed.**

In Count III, Plaintiffs incorporate by reference their allegations under the Eighth Amendment and Equal Protection Clause, asserting that Defendants' actions and omissions subject Plaintiffs to "punishment and discipline" that, due to their mental health, violate their liberty interests and due process rights secured by the Fourteenth Amendment. ECF 3641 ¶¶ 78–79.

Plaintiffs' substantive due process claim must be dismissed under Supreme Court and Seventh Circuit precedent holding that claims "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment . . . must be analyzed under the standard appropriate for that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520

5

U.S. 259, 272 n.7 (1997); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' these claims.") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Whitley v. Albers*, 475 U.S. 312 (1986); *Henry v. Hulett*, 969 F.3d 769, 780–81 (7th Cir. 2020) ("claims 'covered by a specific constitutional provision . . . must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'"); *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988) (the Eighth Amendment, not substantive due process, provides the standards to assess injuries inflicted on prisoners as a result of excessive force); *accord O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 344 (6th Cir. 2014) (affirming dismissal of prisoner's substantive due process claim based on denial of medical care because Eighth Amendment was the primary source of substantive protection available to him).

In *Whitley*, a prisoner sued prison officials alleging excessive force in violation of the Eighth Amendment and the Fourteenth Amendment's due process clause. 475 U.S. 312. The Supreme Court confirmed that the case was properly considered under the Eighth Amendment, not the Fourteenth Amendment's due process clause, because the "Due Process Clause affords [prisoners] no greater protection than does the Cruel and Unusual Punishments Clause" in the Eighth Amendment. *Id*. at 327. The same result must apply here. Because the substantive due process clause does not afford Plaintiffs greater protections than those afforded by the Eighth Amendment, Plaintiffs' due process claim in Count III is subsumed by their Eighth Amendment claim, and must be dismissed.

### III. Plaintiffs Fail To State An Equal Protection Claim.

In Count II, Plaintiffs assert an entirely new equal protection claim based on two theories: a "disparate impact" theory, and a "disparate treatment" theory. Both fail, and must be dismissed.

#### A. Plaintiffs' equal protection claim based on alleged "disparate impact" fails as a matter of law.

Plaintiffs allege that "security levels, discipline, use of force, and placement" policies result in "statistically disproportionate racial impact" on Black and Brown persons in violation of the equal protection guarantees of the Fourteenth Amendment. ECF 3641 ¶¶ 49–52, 72–76. This claim fails for the simple reason "that disparate impact does not violate the equal protection clause of the fourteenth amendment and cannot be redressed by suits under § 1983." *Bond v. Atkinson*, 728 F.3d 690, 692–93 (7th Cir. 2013) (*citing Washington v. Davis*, 426 U.S. 229, 242 (1976)); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 726 n.3 (7th Cir. 2014) ("[T]he Supreme Court's equal-protection jurisprudence does not recognize a claim for disparate impact.").

It is therefore insufficient for Plaintiffs to allege that a policy had a disparate impact on different groups. Instead, to state an equal protection claim Plaintiffs would need to allege "intentional discrimination." *Bond*, 728 F.3d at 693. In other words, they would need to allege sufficient facts to plausibly show that Defendants "adopted [the challenged] policy because of, not in spite of or with indifference to, its effect . . . ." *Bond*, 728 F.3d at 693; *see also Franklin v. City of Evanston*, 384 F.3d 838, 846 (7th Cir. 2004) ("to make out a prima facie case for an equal protection violation, Franklin may not rely on a disparate impact claim but must show that the City acted with discriminatory intent"). Plaintiffs include no such allegation. *See* ECF 3641 ¶¶ 49, 75 (alleging only that at an unidentified time, unidentified "staff" used unidentified "racial epithets" and "racially degrading statements and behaviors" in reference to unidentified persons). In the absence of allegations of intentional discriminatory purpose in the adoption of the challenged

7

mental health policies and practices, Plaintiffs' equal protection claim predicated on alleged disparate impact must be dismissed.

### B. Plaintiffs also fail to state an equal protection claim based on alleged "disparate treatment."

Plaintiffs also assert that Defendants are violating the Fourteenth Amendment's equal protection clause based on their allegation that "selective enforcement and application of [security levels, discipline, use of force, and placement] policies results in disparate and discriminatory treatment of Black and Brown class members." ECF 3641 ¶ 73. But to state an equal protection claim based on disparate treatment, Plaintiffs must plead that they are (a) members of a protected class, (b) that "someone similarly situated was treated differently," and (c) that Department officials are acting with discriminatory intent. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 n.1 (7th Cir. 2009); *Bond*, 728 F.3d at 693. Moreover, in a "more complex case," like this one, Plaintiffs must provide "more detail, both to give the opposing party notice of what the case is all about and to show how, in [Plaintiffs'] mind at least, the dots should be connected." *Swanson*, 614 F.3d at 405.

Plaintiffs do not adequately plead the three elements required for a disparate treatment equal protection claim. *First*, there are no allegations that any of the named Plaintiffs are "Black or Brown." *Id*. ¶¶ 54–60. *Second*, there are no allegations that the named Plaintiffs face disparate treatment when compared to any persons who are "similarly situated." *Id.* And *third*, while Plaintiffs make a generalized assertion that "rampant use of racial epithets and racially degrading behaviors by staff demonstrate . . . racially discriminatory motivation," they do not allege that any *named* Plaintiff experienced or was targeted with such language or behavior, or experienced any racial animus whatsoever. *Id.*

8

Plaintiffs' threadbare allegations—which amount to a conclusory assertion that unspecified use of epithets by unnamed persons at unidentified times somehow demonstrates that the Governor, the IDOC Director, and two senior IDOC physicians purposefully administer a mental health system driven by racial animus—are legally insufficient and must be dismissed. *See Eades v. Thompson*, 823 F.2d 1055, 1062 (7th Cir. 1987) (affirming dismissal of equal protection claim because plaintiff's "complaint . . . does not allege that he was treated any differently than other prisoners at either Joliet or Vandalia with respect to receiving medical attention"); *Norfleet v. Miller-Pickering*, 2018 U.S. Dist. LEXIS 116326, at *21 (S.D. Ill. July 11, 2018) ("[T]he Court finds that Plaintiff has not adequately pleaded that other similarly situated inmates were treated differently than him for the purposes of stating an equal protection claim.").

## IV. Plaintiffs' ADA And Rehabilitation Act Claims Must Be Dismissed.

In Counts IV and V, Plaintiffs continue to assert claims of discrimination under the ADA and Rehabilitation Act. Because the only substantive difference between the ADA and the Rehabilitation Act at the pleading stage is that the Rehabilitation Act is implicated by the agency's receipt of federal funds, courts apply the same analysis to review both claims. If one fails, the other fails as well. *Jaros v. Ill. Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012); *Estate of Crandall v. Godinez*, 2015 U.S. Dist. Lexis 40950, at * 18 (C.D. Ill. Mar. 31, 2015). To state a claim under the ADA and Rehabilitation Act, Plaintiffs must plead they have a qualifying disability, and that the Department is denying them access to services, programs, or activities "*because of* [that] disability." *Jaros*, 684 F.3d at 672 (emphasis added); *see also Estate of Crandall v. Godinez*, 2015 U.S. Dist. LEXIS 40950, at *18 (C.D. Ill. Mar. 30, 2015). Plaintiffs fail to meet this standard.

Plaintiffs base their ADA and Rehabilitation Act claims on the implausible assertion that all "Plaintiffs and class members" are subject to disproportionate isolation, punishment, and discipline "on the basis of" their mental illness. ECF 3641 ¶¶ 87, 95. These allegations are flatly contradicted by the allegations as to the named Plaintiffs where they *admit* the Department is providing them mental health programs and services, but complain those programs and services are inadequate:

- Plaintiffs admit that Patrice Daniels sees his assigned QMHP and psychiatric providers monthly, but they complain his treatment is not sufficiently "enhanced." *Id.* ¶ 54.

- Plaintiffs admit that Gerrodo Forrest is scheduled to see his QMHP monthly, and has been placed on crisis watch consistent with his "repeated suicide attempts," but they complain that he should receive more hours of dayroom and recreational activities and more mental health treatment. *Id.* ¶ 55.

- Plaintiffs admit that J. Herman has been transferred from Dixon's X-house to the Joliet Treatment Center, has been placed on crisis watch, and has been taken to an outside hospital for urgent treatment "on multiple occasions," but they complain she does not receive sufficient out-of-cell treatment or activity. *Id.* ¶ 56.

- Plaintiffs admit that Henry Hersman receives medication management and check-ins with this QMHP every 30 days, but complain that his symptoms worsened during a period of restriction and in-cell isolation. *Id.* ¶ 57.

- Plaintiffs admit that Rasheed McGee receives psychotropic medications, but they complain that his visits with his QMHP and psychiatric provider are not sufficiently frequent, and that he has been the victim of improper treatment by correctional staff. *Id.* ¶ 58.

- Plaintiffs admit that Fredricka Lyles is housed in a mental health unit where she sees her QMHP, but they complain those visits are not sufficiently confidential and that she has faced inconsistent visits from her psychiatric provider resulting in gaps in her medications. *Id.* ¶ 58.

- Plaintiffs allege that Clara Plair is at an outpatient level of care where she receives daily assessments and 90 minutes of out-of-cell dayroom time in the morning and 90 minutes of dayroom time in the evening, but they complain that is not enough and that "she has a hard time getting help when she needs it" resulting in gaps in her medications due to "inconsistent psychiatric care." *Id.* ¶ 59.

10

Plaintiffs' ADA and Rehabilitation Act claims must be dismissed because Plaintiffs do not allege that the Department is denying them access to programs or services because they are mentally ill or for reasons relating to mental illness. As in *Estate of Crandall*, Plaintiffs admit they receive mental health services but complain those services are not adequate to serve their needs. 2015 U.S. Dist. LEXIS 40950, at *22. Such allegations are insufficient to state a claim under the ADA and Rehabilitation Act because "a prison official does not violate the ADA when failing to attend to the medical needs of . . . disabled prisoners." *Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001) (cleaned up); *see also Estate of Crandall*, 2015 U.S. Dist. LEXIS 40950 at *18 (collecting cases and dismissing ADA and Rehabilitation Act claims predicated on alleged inadequate mental health care); *Miller v. Kozel*, 2010 U.S. Dist. LEXIS 128486, *14 (N.D. Ill. Dec. 6, 2010) (dismissing prisoner ADA claim because plaintiff did "not allege that other inmates were given a different bed or that Jamal was denied a different bed because of his mental illness"); *accord Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (rejecting ADA claim based on alleged inadequate treatment and bad medical decisions, ruling that such complaints "do not ordinarily fall within the scope of the ADA or the Rehabilitation Act").

Because Plaintiffs do not allege a plausible basis to support the conclusion that the Department is preventing class members from participating in programs or activities because they are mentally ill, their ADA and Rehabilitation Act claims fail and must be dismissed.[1]

---

[1] If the Court determines that Plaintiffs have stated an ADA claim, the Court would then have to address whether Plaintiffs' ADA claims are nonetheless barred by the Eleventh Amendment. Specifically, In *United States v. Georgia,* the Supreme Court established a three-part test to determine if Congress validly abrogated a state's sovereign immunity from suit in a particular Title II claim. A court must determine at the pleading stage (1) which aspect of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *United States v. Georgia,* 546 U.S. 151, 159 (2006). "Title II of the

## CONCLUSION

For all of these reasons, Defendants respectfully request the Court to dismiss all claims against the Governor, and dismiss the claims asserted in Counts II–V as to all other Defendants. Because these defects cannot be cured by another amended pleading, the dismissal should be with prejudice.

Dated: October 31, 2022

Respectfully submitted,

Defendant ROB JEFFREYS, et al.

By: KWAME RAOUL,
   Illinois Attorney General

*/s/ R. Douglas Rees*, #6201825
Deputy Attorney General, Civil Litigation
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel. 312-814-3000
*richard.rees@ilag.gov*

Laura Bautista
Office of the Attorney General
500 South Second Street
Springfield, IL 62701
Tel.: (217) 782-9075
*laura.bautista@ilag.gov*

---

ADA abrogates the States' Eleventh Amendment immunity only if its enactment represents a valid exercise of authority under § 5 of the Fourteenth Amendment." *Wilke v. Cole*, 2014 U.S. Dist. LEXIS 174137, at *12 (E.D. Wis. Dec. 17, 2014). As applied here, if the Court were to find that Plaintiffs have stated an ADA claim, the Court would then have to determine whether Plaintiffs' claims must be dismissed as transgressing the Eleventh Amendment under the *Georgia* standard. *See*, *e.g.*, *Robinson v. Bishop*, 2021 U.S. Dist. LEXIS 127427, at *15 n.7 (D. Md. July 8, 2021); *Leak v. N.C. Dep't of Pub. Safety*, 2020 U.S. Dist. LEXIS 180341, at *9 (E.D.N.C. Sep. 30, 2020); *Dorn v. Mich. Dep't of Corr.*, 2017 U.S. Dist. LEXIS 86417, at *21 (W.D. Mich. June 6, 2017); *Chase v. Baskerville*, 508 F.Supp.2d 492 (E.D. Va. 2007), *aff'd on other grounds*, 305 Fed. App'x 135 (4th Cir. Dec. 31, 2008). The Court need not reach this issue of sovereign immunity, however, because Plaintiffs' pleadings are inadequate, and they have not stated a claim under Title II of the ADA. *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 166 (2d Cir. 2013) (ruling on alternative grounds negates need to address sovereign immunity implications of ADA Title II).

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on October 31, 2022, he caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification to counsel of record.

                                            */s/ R. Douglas Rees*
                                            Deputy Attorney General, Civil Litigation
                                            Office of the Illinois Attorney General
                                            100 West Randolph Street, 12th Floor
                                            Chicago, Illinois 60601
                                            Tel. 312-814-3000
                                            *richard.rees@ilag.gov*