UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| PATRICE DANIELS, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-1298 |
| | ) | |
| DIRECTOR ROB JEFFREYS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss. For the reasons stated below, this motion is GRANTED in part and DENIED in part.

### PROCEDURAL BACKGROUND

This case has been ongoing since 2007 with Plaintiffs challenging the adequacy of the delivery of mental health services to mentally ill prisoners in the physical custody and control of the Illinois Department of Corrections ("IDOC" or Department). Plaintiffs are individuals incarcerated by IDOC and bring a class action claim on behalf of similarly situated individuals. For many years, the parties operated under the Third Amended Complaint which alleged violations of the Eighth Amendment of the United States Constitution; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.; and the Rehabilitation Act, 29 U.S.C. § 794, against various IDOC officials. Plaintiffs have now amended their Complaint to add the Governor as a defendant, an Equal Protection claim alleging that class members of color are treated differently than similarly situated white counterparts, and a due process claim.

The relevant background facts began in August 2015 when this Court certified a class for purposes of litigation, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, and

1

defined the class as persons in custody of IDOC who "are identified or should have been identified by the IDOC's mental health professionals as in need of mental health treatment as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association." ECF No. 252 at 7. On December 17, 2015, the parties announced they had entered into a comprehensive settlement agreement resolving the action set forth in Plaintiffs' Third Amended Complaint. Minute Entry dated 12/17/2015; ECF No. 260. This agreement was the result of years of negotiation. The Court found the agreement to be fair and reasonable over objections from class members. The parties modified the agreement and operated under the Second Amended Settlement Agreement (ECF No. 3051) for some time.

In October 2017, Plaintiffs filed a Motion for Enforcement of the Settlement Agreement. ECF No. 1559. After additional motions practice and evidentiary hearings, the Court ultimately issued a preliminary injunction to enforce the settlement agreement and later converted the preliminary injunction to a permanent injunction. Defendants' lack of adequate mental health staff was an important consideration in the Court's decision. The Court entered an injunction outlining certain staffing standards and other measurable standards Defendants needed to meet. *See* ECF No. 2633. On January 12, 2022, the Seventh Circuit vacated the Court's decision, finding that Defendants had made reasonable efforts to mitigate the harm. ECF No. 3560. In that opinion, the Seventh Circuit stated that the agreement was more accurately described as a Consent Decree. *Rasho v. Jeffreys*, 22 F.4th 703, 707 n. 2 (7th Cir. 2022).

After the case was remanded from the Seventh Circuit, Plaintiffs filed a motion seeking to have the Court extend jurisdiction over the settlement agreement due to Defendants' non-compliance. Pursuant to the Seventh Circuit's statement and other relevant case law, the Court was compelled to agree with Defendants' assertion that the agreement was a consent decree and

that the Court could not approve relief unless, in accordance with the Prison Litigation Reform Act ("PLRA"), "the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C.A. § 3626(a)(1)(A). Accordingly, the Court denied Plaintiffs' motion because they did not attempt to argue that the PLRA findings were met, particularly in light of the Seventh Circuit's recent decision vacating this court's injunction. The Court thus operated as though there was no longer an agreement and returned the case to the active docket for scheduling.

Plaintiffs filed a Fourth Amended Complaint realleging their prior claims and also adding the Governor as a Defendant, alleging Equal Protection and due process violations. Defendants have moved to dismiss all Plaintiffs' claims except for their Eighth Amendment claims. Plaintiffs have responded and Defendants have replied. The Court also held an oral argument on the motion. Accordingly, this motion is now ripe for review.

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." Fed. R. Civ. P. 8. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal,* 556 U.S. at 667.

The Federal Rules further permit a defendant to move to dismiss a claim if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a

motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal,* 556 U.S. at 667 (citing *Twombly,* 550 U.S. at 570). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. A threadbare statement of a claim supported by a conclusory statement is insufficient. *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). Moreover, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may not consider extrinsic evidence. *See* Fed. R. Civ. P. 12(b)(6). If a court considers matters outside of the pleadings, "the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12 (12)(d). However, a court may "take judicial notice of matters of public record," *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991), and it may do so without converting a motion to dismiss into one for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012)*; Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *Henson v. CSC Credit Servs*. 29 F.3d 280, 284 (7th Cir. 1994).

## DISCUSSION

**A. Plaintiffs adequately plead Defendants are violating the ADA and Rehabilitation Act.**

In Counts IV and V, Plaintiffs assert claims of discrimination under the ADA and Rehabilitation Act. The parties agree that the two claims can be considered together because at the pleading stage, the only difference between the two claims is whether Defendants receive federal funds, which Defendants do not appear to contest. *See* ECF No. 3655 at 9 (citing *Jaros v. Ill Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012)); ECF No. 3668 at 15. Accordingly, the Court will consider these claims together. To state a claim under the ADA or Section 504 of the Rehabilitation Act, Plaintiffs must allege that they have a qualifying disability and due to that

disability, the Department is denying them access to services programs or activities or they were subjected to discrimination. *See* 42 U.S.C. 12132; *Jaros*, 684 F. 3d at 672.

Plaintiffs paint a bleak picture of life inside IDOC for individuals with serious mental illness. They explain that the Residential Treatment Units segregate class members from the general prison population and that class member do not have access to the same programs and services that IDOC provides the general population. Plaintiffs assert that generally, class members in a residential treatment unit are less able to access, or are entirely excluded from rehabilitative programming, jobs, vocational development, and education. This means that they are also cut off from opportunities to get program credit. ECF No. 3641 at 14. Instead of providing treatment in the RTU, Plaintiffs allege that class members are often placed in isolation that exacerbates their existing mental illness. As they suffer decompensation due to mental illness and isolation, Plaintiffs assert that they are met with punitive measures that include use of force and disciplinary tickets that are in themselves harmful and often lead to further isolation. *Id*. at 15. The Complaint describes the particular plight of named class members who spend most of their time in their cell with only a few hours of recreation a week. The Complaint also describes a scenario where a class member attempted to hang himself and an officer sprayed him with oleoresin capsicum spray and the class member received a disciplinary ticket for insolence. *Id*. at 20. The Complaint further describes one of the named Plaintiffs as being placed on crisis watch for ten days where she was kept alone in a cell with no property, at first not even a mattress, for nearly 24 hours a day with the only mental health treatment being two-minute daily assessments. *Id*. at 21.

Defendants do not dispute that Plaintiffs have a qualifying disability but appear to base their motion to dismiss on the assertion that class members are not being discriminated against or

denied access to programs based on that disability. Defendants point to the parts of the Complaint that mention the minimally provided mental health care that the named Plaintiffs receive. Defendants point to monthly check ins with providers as justification for this extreme isolation while Plaintiffs describe a dire situation of isolation and lack of treatment away from the programming benefits available for the general population. While the class members were purportedly separated from the general population for treatment, Plaintiffs describe a situation that is punitive, neglectful, and where treatment is desperately lacking. In their reply, Defendants argue plaintiffs do not sufficiently allege that class members are treated differently due to their mental illness "as opposed to because of their alleged prison misconduct." ECF No. 3672 at 11–12. Plaintiffs assert that Defendants are subjecting class member to discipline and punishment, both formal and informal, because of their mental illness. Defendants' apparent response is that Plaintiffs deserve it. This argument misunderstands the motion to dismiss standard. The facts will be for a jury to decide, but the Complaint sufficiently alleges that Plaintiffs have qualifying disabilities and have been excluded from programs and subject to discrimination sufficient to allege ADA and 504 Rehabilitation Act claims.

### B. As pleaded, the Governor is not an appropriate party to the litigation.

Plaintiffs add the Governor of Illinois as a Defendant to their Fourth Amended Complaint. In the Complaint, Plaintiffs' basis for the Governor's inclusion is his role as the State's chief executive "with ultimate authority for ensuring that all executive agencies, including the IDOC, function in compliance with state and federal law." ECF No. 3641. Defendants argue that this claim is barred by the Eleventh Amendment.

As a general matter, plaintiffs cannot sue the state in its own name because the Eleventh Amendment to the Constitution deprives federal courts of jurisdiction over suits brought by

private parties against a state. *See Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997); *David B. v. McDonald*, 156 F.3d 780, 783 (7th Cir. 1998). There are limited exceptions to this rule in cases where (1) a state waives sovereign immunity and consents to suit in federal court, (2) Congress explicitly abrogates the state's immunity pursuant to a valid exercise of its power; (3) plaintiffs sue state officials for prospective equitable relief for ongoing violations of federal law. *Edgar*, 131 F.3d at 615 (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 609 (1996); *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The parties only raise the third exception under *Ex parte Young*, that allows plaintiffs to sue state officials for prospective equitable relief for ongoing violations of federal law. *Ex parte Young*, "treats public officials who violate federal law as renegades acting [without legal authority], who therefore may be enjoined without enjoining the state itself." *McDonald*, 156 F.3d 780 at 783. Part of the reasoning behind *Ex parte Young*, is that a state "has no power to impart to [state officials] any immunity from responsibility to the supreme authority of the United States." *Virginia Off. for Protec. and Advoc. v. Stewart*, 563 U.S. 247, 252 (2011). This doctrine "rests on the premise—less delicately called a fiction—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Id*. (internal citations and quotations omitted).

   To take advantage of *Ex parte Young*, plaintiffs cannot treat the state and its agent as "fungible," plaintiffs "must sue the particular public official whose acts violate federal law." *McDonald*, 156 F.3d 780 at 783. A suit against "a public official as representative of the state (rather than as a renegade) is a suit against the state" and barred in federal court. *Id*. As Defendants observe, the Supreme Court expressed concern about this exception being applied in an overbroad manner against the governor or attorney general of a state. *Ex parte Young*, 209

U.S.at 157. The Supreme Court endorsed a prior decision's observation that if "because [the governor or attorney general] were law officers of the state" they could be subjected to suit, then "the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws." *Id*. (citing *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)). The Supreme Court cautioned against such a broad application of this exception.

Defendants also cite *Eason v. Pritzker*, a recent district court decision, in support of their assertion that the Governor is not a proper party to this litigation. *Eason v. Pritzker*, 2020 WL 6781794 (N.D. Ill. Nov. 18, 2020). There, a hearing-impaired inmate in the custody of IDOC brought suit against the Governor and other Illinois prison administrators for failing to accommodate his disability. *Id*. The court found that the inmate did not "allege any meaningful connection between Governor Pritzker and the prison policies for disabled inmates." *Id*. at 9. Accordingly, the case against the Governor was dismissed even though the plaintiff was able to proceed with his case against various IDOC officials.

*Eason* is not binding on this Court and the present case is otherwise distinguishable in that Plaintiffs assert in their response brief that there are large systemic problems that can only be resolved by the Governor. In their response brief, Plaintiffs argue that the IDOC officials have attempted to avoid their obligations by finger-pointing at other state agencies. They argue that it is the Governor, and the Governor alone, who can remedy the wrongs suffered at a systemic level. Plaintiffs point to multiple instances of Defendants arguing that they did not have control over construction or other capital projects. They also point to a previous Governor thwarting settlement negotiations when the parties were very near to a resolution. Plaintiffs point to overall

hiring issues, budgeting issues, failure of state agency to work together, years long delay in providing the necessary care while state agencies resolve their conflicts, as further evidence that the Governor is a necessary party to this litigation and plays an important role in ensuring interagency cooperation and appropriate budgeting and hiring for IDOC. The issues here are much greater than a single inmate objecting to lack of accommodations. In *Eason*, the inmate was able to pursue claims against other officials capable of providing him the relief he requested. In their response, Plaintiffs have demonstrated that this case is different from the concerns cited in *Ex parte Young* and the facts of *Eason*, by providing multiple instances of the Governor being involved in the administration of mental health at IDOC in significant ways. Plaintiffs explain in their response brief how the Governor's office generally plays a critical role in this systemic problem.

> a. **Plaintiffs did not plead the necessary facts in their Complaint and the Court may not take judicial notice of newspaper articles over Defendants' objection.**

However, Plaintiffs' Complaint focuses on the Governor's role as the Chief Executive Officer of the state. It is in Plaintiffs' response brief where they have information about the Governor having direct involvement. To account for the issues with their Complaint, Plaintiffs ask the Court to take judicial notice of the various facts found in their response brief. Defendants object that these new assertions are not in the Complaint and that the news accounts regarding the current Governor are hearsay, not in the complaint, and do not show the Governor is operating the prison system. ECF No. 3672 at 3. As explained below, the Court finds that it cannot take judicial notice of news articles over Defendants' objection and that Plaintiffs cannot amend their complaint through their response brief.

"It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss." *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (citing

9

*Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)). Courts may take judicial notice of historical documents, documents contained in the public record, reports of administrative bodies and state court opinions. *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir.1998); *In re Salem*, 465 F.3d 767, 771 (7th Cir. 2006). Taking judicial notice of such records does not convert a motion to dismiss into a motion for summary judgment. *Id*. (citing *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012)). Most relevant to this decision are the newspaper articles about the current Governor. In their briefing, Plaintiffs did not point to any legal authority that would allow the Court to take judicial notice of a newspaper article. [1] Instead, the Tenth Circuit has found that the facts contained in a newspaper article did not satisfy the judicial notice requirements. *United States v. Friday,* 525 F.3d 938, 960 (10th Cir. 2008). The Seventh Circuit has also found that quotations from a newspaper were hearsay when they were presented for the truth of the matter asserted. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). While Plaintiffs may eventually be able to present the same evidence to the Court in a way that does not qualify as hearsay, the Court finds it cannot take judicial notice of such articles because Defendants object that the articles are hearsay, and the articles are not otherwise reasonably described as matters of public record.

Plaintiffs also suggest that they are able to provide additional details in their response brief that do not necessarily appear in the Complaint. In opposing a 12(b)(6) motion, plaintiffs "may submit materials outside the pleadings to illustrate the facts the party expects to be able to

---

[1] Plaintiffs filed an Authority on Judicial Notice, containing just a few sentences. Plaintiffs assert that because Federal Rule of Evidence 902(6) provides that newspaper articles are self-authenticating, Courts can take judicial notice of them. The question here is not the authenticity of the newspaper, but whether the quotation attributed to the governor "cannot reasonably be questioned." Fed. R. Evid. 201. Plaintiffs may be able to present this evidence in some fashion at a later stage, but they are attempting to stretch Rule 201 too far. Plaintiffs' assertion that the Governor's office did not specifically challenge the accuracy of the quotation at this early stage does not require that the Court consider this an unquestionable fact. Defendants have objected to the judicial notice as hearsay, and the authenticity of the quotation can be addressed in the normal discovery process, but it is not a judicially noticeable fact.

prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 751 (7th Cir. 2012) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004) (denying motion to strike new materials submitted on appeal); *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (reversing dismissal; plaintiff is free to assert new facts in brief opposing motion to dismiss); *Roe v. Bridgestone Corp.*, 492 F.Supp.2d 988, 1007 (S.D. Ind. 2007) ("Such documents are not evidence, but they provide a way for a plaintiff to show a court that there is likely to be some evidentiary weight behind the pleadings the court must evaluate"). The Court cautioned that it may be prudent for plaintiffs to explain that the materials are only submitted for illustrative purposes and should not convert the motion to a motion for summary judgment. *Id*. Accordingly, in some cases, it is appropriate for Plaintiffs to demonstrate that they do have materials to support their claims without converting the motion to summary judgment.

  Here, however, Plaintiffs' Complaint fails to state a claim against the Governor that survives sovereign immunity, and the "axiomatic rule" remains that "a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). The Complaint focuses on the Governor's role as the Chief Executive of the State and relevant case law clearly states that suing the Governor simply because he is responsible for enforcing all laws is not enough. Their response also does not focus on why the *current* Governor can be subject to suit in federal court. At bottom, Plaintiffs need to plead that the Governor is a "renegade" personally responsible for violation of federal law. Plaintiffs need to cite to particular actions, beyond generally being responsible for the enforcement of all laws, that this Governor took or failed to take that would subject him to liability. Accordingly, Defendants' Motion to Dismiss the Governor as a party is granted and the

Court agrees with Plaintiffs that they should be given the opportunity to replead this cause of action.

### C. Plaintiffs must include additional information to support their Equal Protection claims.

In order to state an Equal Protection claim based on disparate treatment, a plaintiff must allege that (1) they are members of a protected class (2) they are otherwise similarly situated to members of the unprotected class; (3) that they were treated differently from members of the unprotected class; (4) that the defendant was motivated by a discriminatory purpose. *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Here, Plaintiffs allege that "class members of color, and particularly those who are Black" are treated differently from their White counterparts. ECF No. 3641 at 24. Plaintiffs assert that Defendants implement their policies in such a way that "that Black and Brown class members who are experiencing mental illness are more likely to be placed in settings that are more restrictive and less therapeutic, and more likely to be the subjects of use of force, than their White peers who are similarly situated." *Id*. Plaintiffs support their claims with statistics demonstrating that Black class members are much more likely to be placed in restrictive housing compared to their overall population at IDOC. ECF No. 3641 at 17. Plaintiffs also assert that in addition to the "statistically disproportionate racial impact" staff "rampantly" use "racial epithets and racially degrading statements" which reveal the discriminatory animus behind the unequal application of their policies and procedures. They further provide specific numbers to assert that class members of color are held in segregation at higher rates and sufficiently allege that the Defendants are motivated by a discriminatory purpose as exampled by the unchecked use of racially degrading language. However, Defendants point out that Plaintiffs do not allege specific facts about the named Plaintiffs.

Defendants argue that because Plaintiffs do not plead that the named Plaintiffs are part of a protected class, face disparate treatment, or are targeted by racially degrading language, their claims are doomed. The Complaint focuses on the claims of the class and does not plead anything regarding the named Plaintiffs' race or whether they have faced different treatment or were targeted by racially degrading language. Plaintiffs assert that Defendants do not cite any language requiring that Plaintiffs plead specific facts about the named Plaintiffs. The law, however, is clear that "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20, (1976); *see also Warth v. Seldin,* 422 U.S. 490, 498–499, (1975). The Seventh Circuit has also stated that if the class representative "knows he has nothing to gain from the victory of the class" then the case is "a pure class action lawyer's suit." *Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. 1999). Accordingly, it is important that the class representatives have suffered the same injury as the class members they seek to represent. Plaintiffs assert that they can readily remedy this matter. Accordingly, the Court will give them the opportunity to do so, and Plaintiffs are granted the opportunity to amend their complaint to plead additional facts specific to the named Plaintiffs. *See* Fed. R. Civ. Pro. 15(a)(2) (stating that the Court should freely give leave to amend "when justice so requires").[2]

---

[2] The parties have not fully addressed the issue, but the Court remains concerned that this claim does not meet the 23(b)(2) standard that representative parties may only sue on behalf of class members if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011)("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant"). The class is

Defendants also argue that Plaintiffs cannot maintain a cause of action based solely on disparate impact and suggest that Plaintiffs' allegations regarding officers yelling racial epithets are too vague to demonstrate that the Governor and senior IDOC officials are motivated by racial animus. ECF No. 3655 at 7. Plaintiffs do not dispute that disparate impact alone is not enough to sustain their claims but counter that the "facially neutral policies" are imposed in such a way that allows for an inference of impermissible intent, and that these allegations are sufficient to survive a the motion to dismiss. ECF No. 3668 at 11. Plaintiffs also allege that the pattern of racial degradation and use of racial epithets further demonstrates that the individuals are implementing the policies in a discriminatory way. Plaintiffs have the opportunity to amend their complaint and make more specific allegations regarding staff's use of racially degrading language, which the Court agrees are so vague as to possibly fall on the side of a conclusory statement, particularly given the extensive discovery that has already occurred. Plaintiffs should provide more specific allegations in their Amended Complaint.

The Court finds that amending the Complaint is in the interest of justice and not futile. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and N.W. Indiana,* 786 F.3d 510, 520 (7th Cir. 2015) (stating that courts should allow amends unless it is certain from the face of the complaint that amendment is futile). In order for the parties and the Court to move forward on the same page, the Court must correct the Defendants' misunderstanding regarding the pleading standard for this claim. Defendants splice quotations from a Seventh Circuit case to

---

comprised of seriously mentally ill inmates while the equal protection claim only appears to relate to seriously mentally ill inmates of color. The Seventh Circuit has observed that to ensure that the class members can have representation free from any conflict of interest, classes must be relatively "homogeneous" as it relates to the class claims. *Culver v. City of Milwaukee*, 277 F.3d 908, 911 (7th Cir. 2002). However, the Seventh Circuit has also observed that in some circumstances, subclasses can remedy an issue with an overbroad class. *Id.*; *see also Johnson v. Meriter Health Services Employee Ret. Plan,* 702 F.3d 364, 368 (7th Cir. 2012). Regardless, the Court does not see this as a reason to prohibit Plaintiffs from amending their Complaint at this juncture, particularly since Defendants did not raise this issue.

argue that this is a complicated case where additional details are necessary. ECF No. 3655 at 8 (citing *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010)). The Seventh Circuit was referring to fraud cases subject to the heightened pleading standard found under Rule 9 of the Federal Rules of Civil Procedure. *Id*. The cited case was about an African American woman who claimed that a bank and an appraisal company appraised her home far below its actual value so that they would have an excuse to deny her loan. *Swanson*, 614 F.3d 400 at 403. She alleged that the defendants violated the Fair Housing Act and Equal Credit Opportunity Act in so doing since their true reason for turning down her loan application was that she was African American. The district court also liberally construed the plaintiff's complaint to include a common-law fraud claim. There, the Seventh Circuit distinguished the pleading standard for the fraud claim from the other claims, dismissing the fraud claim and allowing plaintiff to proceed on the other causes of action. The Seventh Circuit explained that a "plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else." *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010). The Seventh Circuit goes on to say that a more complex case such as those "involving financial derivatives, or tax fraud that the parties tried hard to conceal, or antitrust violations, will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." Thus, the Seventh Circuit held that the violation of Fair Housing Act could proceed because the complaint identified the type of discrimination she believed occurred, by whom and when and "this is all that she needed to put in the complaint." *Swanson*, 614 F.3d at 405. The Seventh Circuit distinguished those claims from fraud claims that are subject to Rule 9 of the Federal Rules of Civil Procedure. *Id*. at 406.

15

Here, Plaintiffs are not alleging fraud or concealment. They assert that officers scream racial epithets at class members of color and discipline them more harshly due to the color of their skin. Defendants' suggestion that Plaintiffs must meet a heightened pleading standard pursuant to *Swanson*, does not carry any water because *Swanson* only applied that heightened pleading standard to the fraud claims as required under Rule 9 of the Federal Rules of Civil Procedure. Defendants are cautioned to not remove important context from quotations when citing them to the Court.

### D. Plaintiffs do not adequately plead a procedural due process claim.

Defendants argue that Count III of the Fourth Amended Complaint is a substantive due process claim, subsumed by Plaintiffs' Eight Amendment claim, and thus, must be dismissed. Plaintiffs do not dispute Defendants' assertion that a substantive due process claim would be subsumed within Plaintiffs' Eighth Amendment Claim but assert that Count III is a procedural due process claim. Plaintiffs continue that the claim is about Defendants' failure to adequately account for class members mental illness in the disciplinary process and placement of individuals in segregation.

The Seventh Circuit has stated that there are two steps to any procedural due process analysis: (1) "identify the protected property or liberty interest at stake" and (2) "determine what process is due under the circumstances." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013). As Defendants point out, Plaintiffs do not indicate what process is due under the circumstances. Plaintiffs also do not specifically mention *procedural* due process in the Amended Complaint at all. Based upon the statements in the Complaint, the Court is unable to decipher whether Plaintiffs are making a substantive or procedural due process claim. Plaintiffs did not put Defendants on notice of the claim against them and Defendants' assumption

that Plaintiffs were bringing a substantive due process claim was a reasonable interpretation given the dearth on information in the Complaint about this claim. Accordingly, Defendants' Motion is granted on this issue and Plaintiffs have the opportunity to amend this portion of their Complaint as well.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [3655] is GRANTED in part and DENIED in part. Defendants' Motion is DENIED as to Plaintiffs' ADA and Rehabilitation Act claims and GRANTED as to the claims against the Governor, the Equal Protection Claims, and the Due Process claims. Plaintiffs shall have 21 days from the entry of this opinion to file an Amended Complaint.

ENTERED this 28th day of February, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge