UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PATRICE DANIELS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-1298 |
| ) | |
| ROB JEFFREYS, Director of IDOC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiffs filed a Motion to Compel Production of Documents sought in Plaintiffs' Request to Produce Nos. 17 and 20 pursuant to Federal Rules of Civil Procedure 34 and 37 (the "Motion to Compel"). ECF No. 3693. At a hearing on June 30, 2023, the Court granted Plaintiffs' Motion to Compel with respect to Request No. 20, and deferred its ruling with respect to Request No. 17. For the reasons stated below, the Motion to Compel with respect to Plaintiffs' Request No. 17 is GRANTED.

## BACKGROUND

The parties are familiar with the factual and procedural background of this case, and the Court therefore only sets forth those facts directly relevant to the resolution of the issue before it. This matter was initial filed in 2007 as a *pro se* § 1983 complaint against IDOC officials alleging the IDOC's treatment of his mental illness violated the Eight Amendment. ECF No. 1. Counsel was subsequently retained, and an amended class action complaint seeking declaratory and injunctive relief compelling the IDOC to overhaul their mental-health care system was filed in 2010, alleging violations of the Eighth Amendment, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. ECF No. 95. Plaintiffs are

1

now on their Fifth Amended Class Action Complaint, which includes the previously mentioned claims, adds Equal Protection and Due Process violation claims, and names Illinois Governor J.B. Pritzker as a defendant. ECF No. 3702.

Prior to Plaintiffs' filing the Fifth Amended Complaint, Plaintiffs filed the Motion to Compel, seeking production of documents requested in Plaintiffs' Request to Produce Numbers 17 and 20. ECF No. 3693.  Plaintiffs' Request to Produce Number 20 sought "IDOC/WHS Health Contract Monthly Performance Monitoring Reports beginning January 2022," (the "Monthly Reports"), which are created by each prison facility within the IDOC and detail performance metrics for mental and medical services provided from IDOC's primary vendor, Wexford Health Sources.  ECF No. 3695 Ex. 2; *see also* ECF No. 3693 at *2.  Defendants objected to production of the Monthly Reports as overly broad because they contain data beyond the issue of mental staffing and care, and therefore result in an unjustified production burden. ECF No. 3704.

Plaintiffs' Request to Produce Number 17 sought, in relevant part, "[a]ll reports, memorandum or meeting minutes of the Mental Health Oversight Committee beginning with September 2021." (the "Meeting Minutes"). ECF No. 3693, at *2.  The Mental Health Oversight Committee (the "Oversight Committee") is IDOC's mental health leadership committee that "meets regularly to review system wide trends, significance in occurrences (such as suicides and other major incidents), policies and practices, data and CQI efforts."  ECF No. 3697, Ex. 4; *see also* ECF No. 3693, at *2.  Defendants also asserted that the Meeting Minutes were privileged under the Illinois Medical Studies Act, 735 ILCS 5/8-2101 ("IMSA") because they constitute internal peer review materials.  ECF No. 3704 at *2, 8–9.  Defendants further argued that they have already produced "all reports, memoranda, and meeting agendas" related to the Oversight Committee, and therefore, their assertion of privilege under IMSA was narrowly construed to

2

Meeting Minutes alone, which contain confidential peer review discussions between IDOC's medical professionals. *Id.* at *9. Plaintiffs responded that they still required production of the Meeting Minutes themselves to review detailed notes of discussions and follow-up actions of IDOC related to prisoner care and mental health services. ECF No. 3693, at *3.

On June 30, 2023, the Court conducted a hearing on Plaintiffs' Motion to Compel and ordered Defendants produce the requested Monthly Reports, finding the relevance outweighed the burden of production. The Court declined to issue a ruling on Plaintiffs' requests for the Meeting Minutes and ordered the Defendants to submit the Meeting Minutes and related agendas, PowerPoints, and currently produced materials to the Court for *in camera* review. *See* Minute Entry 7/6/2023. Having reviewed the Meeting Minutes *in camera*, the Court now turns to whether Defendants' assertion of peer review privilege under IMSA constitutes sufficient grounds to withhold production.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 34 provides that "a party may request, among other things, the production of documents that 'constitute or contain matters within the scope of Rule 26(b)' and are in the custody or control of another party." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996) (citing Fed. R. Civ. P. 34(a)). Federal Rule of Civil Procedure 37 further provides that a party seeking discovery may move for an order compelling production against another a party if they have failed to produce documents requested under Federal Rule 34. Fed. R. Civ. P. 37(a)(3)(B).

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." *Mem. Hosp. for McHenry Cty v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.

1981) (citing Fed. R. Civ. P. 26(b)(1)). The term "relevant" for the purposes of discovery is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). District courts have broad discretion to adjudicate discovery disputes and determine the underlying relevancy. *Brown–Bey v. United States*, 720 F.2d 467, 470–71 (7th Cir. 1983); *Eggleston v. Chicago Journeymen Plumbers' Local Union 130*, 657 F.2d 890, 902 (7th Cir. 1981); *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 183 (7th Cir. 1985) (providing that on review, courts of appeal will only reverse a decision of a district court relating to discovery upon a clear showing of an abuse of discretion)).

Rule 501 of the Federal Rules of Evidence provides the framework for determining whether the material sought in discovery is privileged. *Shadur*, 664 F.2d at 1061. In a case involving a federal question "[t]he common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege," unless provided otherwise by "the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501; *see also Hamdan v. Indiana Univ. Health North Hosp., Inc.*, 880 F.3d 416, 421 (7th Cir. 2018) ("[F]ederal courts apply the federal common law of evidentiary privileges—not state-granted privileges—to claims . . . that arise under federal law."). Thus, in cases based on a federal cause of action, the federal common law governs issues of privilege. *See Shadur*, 664 at 1061 n.3.

## DISCUSSION

The only remaining issue for the Court to address is the production of the Meeting Minutes requested in Plaintiffs' Request to Produce No. 17, and whether the peer review privilege under Illinois law weighs in against production of those documents. IMSA states, in pertinent part:

> All information, interviews, reports, statements, memoranda, recommendations letters of reference or other third party confidential assessments of a health care

4

>practitioner's professional competence, or other data of . . . health care delivery entities or facilities . . . used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services . . . .

735 ILCS § 5/8–2101.

IMSA further provides that such information "shall not be... discoverable in any action of any kind in any court or before any tribunal, board, agency or person." 735 ILCS § 5/8–2102. IMSA's grant of peer review privilege, however, is not boundless: "[t]he Act was never intended to shield hospitals from potential liability, nor does it protect all information used for internal quality control purposes." *In re Estate of Belbachir*, 2007 WL 2128341 at *3 (citing *Webb v. Mount Sinai Hosp. and Med. Ctr. of Chi.*, 347 Ill. App. 3d 817, 824 (Ill. App. Ct. 2004)).

Here, the Fifth Amended Complaint asserts only federal causes of action. ECF No. 3716. Thus, the Court must look to "principles of the common law as they may have been interpreted by the courts of the United States in light of reason and experience." *Shadur*, 664 F.2d at 1061. Further, although this Court is not mandated to apply IMSA's state law privilege,[1] the Seventh Circuit has emphasized that "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Shadur*, 664 F.2d at 1061 (internal citations omitted). In doing so, the Seventh Circuit outlined two guiding principles courts must consider when determining whether to recognize state law evidentiary privileges in a federal cause of action:

---

[1] As the Seventh Circuit has recognized, state law privileges—including those asserted under IMSA—are not binding on this Court when the underlying claims arise under federal law. *See Shadur*, 664 F.2d at 1061; *see also Green v. Meeks*, No. 20-00463, 2023 WL 1447817, at *3 (S.D. Ill. Feb. 1, 2023) ("As the Seventh Circuit and other district courts in this circuit have recognized, the privilege arising under the IMSA is not binding on this Court where Plaintiff's principal claims arise under 42 U.S.C. § 1983, as they do here.") (internal citations omitted).

> First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case."

*Id.* (citing *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 542–43 (7th Cir. 1977)). With these principles in mind, the Court will turn to whether the peer review privilege under IMSA should be applied.

### A. Whether the Defendant has met its Burden of Establishing IMSA Privilege Applies.

As an initial matter, "[t]he party seeking to invoke the privilege bears the burden of establishing that the privilege applies." *See Green*, 2023 WL 1447817 at *3 (internal citations omitted). "This burden may be met by submitting the claimed privileged materials for *in camera* review or by submitting affidavits setting forth facts sufficient to establish the applicability of the privilege to the documents being withheld." *Crook v. Dart*, 408 F. Supp. 3d 928, 931 (N.D. Ill. Oct. 2, 2019). Further, an assertion of evidentiary privilege, when recognized, must be "narrowly construed." *Shadur*, 664 F.3d at 1061–62 (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

Here, Defendants seek to apply IMSA's peer review privilege to a narrow set of documents, specifically, the Oversight Committee's Meeting Minutes. ECF No. 3704. Defendants have produced materials the Oversight Committee reviewed or produced at these meetings, such as meeting agendas, autopsy reports, internal studies, and PowerPoint presentations. *Id.* Defendants also submitted a supporting affidavit from Dr. Jeff Sim, the Statewide Mental Health Quality Improvement Manager, which outlines the purpose of IDOC's Meeting Minutes and benefits afforded to IDOC from preserving the confidentiality of the Oversight Committee's discussions summarized in the Meeting Minutes. ECF No. 3704, Ex. 1. Defendants further submitted the

6

Meeting Minutes to the Court for *in camera* review. Accordingly, the Court finds that Defendants have satisfied their evidentiary burden and must now determine whether the balance of interests weighs in favor of applying peer review privilege to the Meeting Minutes.

**B. Whether the Need for Truth Outweighs the Policy Furthered by the Assertion of IMSA's Peer Review Privilege in this Case.**

Under *Shadur*, the Court must "weigh the need for truth" against the importance of the policy sought to be furthered by IMSA's peer review privilege as applied in the factual setting of this case. *Shadur*, 664 F.3d at 1061–62. Plaintiffs assert that the Meeting Minutes are necessary to address the ultimate issues at in this case—whether IDOC provided constitutionally adequate medical care or acted with discriminatory intent toward mentally ill inmates. ECF No. 3693, at *8. Plaintiffs contend the Meeting Minutes are essential—rather than merely materials reviewed by the Oversight Committee—to evaluate the quality of IDOC's control procedures and how the Oversight Committee addresses the alleged constitutional deprivations. *Id.* Defendants, however, argue that they have produced records that demonstrate the Oversight Committee's deliberations and outcomes, and that the federal interests underlying Plaintiffs' claims are sufficiently protected without the need to produce the Meeting Minutes themselves. ECF No. 3704, at *11. Additionally, Defendants assert that withholding the Meeting Minutes "serves the goal of bolstering the effectiveness of the peer review meetings by allowing those meetings to occur without concern that they will be used in litigation." *Id.* at *10.

First, the Court recognizes that the IMSA peer review privilege serves an important purpose. IMSA was enacted "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Accreditation Ass'n for Ambulatory Health Care, Inc. v. United Sates (In re Subpoena Duces Tecum)*, No. 03-cv-7380, 2004 U.S. Dist. LEXIS 6493 at *8 (N.D. Ill. Jan. 7, 2004) (citing *Roach*

7

*v. Springfield Clinic*, 623 N.E.2d 246, 251 (Ill. 1993)). It also "seeks to improve the effectiveness of hospital peer review committees, which operate to ensure adequate medical care and treatment for patients," without the fear of litigation. *Levitin v. Nw. Cmty., Hosp.*, No. 13 C 5553, 2014 WL 5510949, at *1 (N.D. Ill. Oct. 31, 2014) (citing *Shadur*, 664 F.2d at 1062).

Second, the Court recognizes that "[i]t is generally accepted that the confidentiality of peer review material fosters the free flow of information between healthcare professionals, resulting in higher quality care at little cost to the victims of medical malpractice." *In re Estate of Belbachir*, 2007 WL 2128341 at *7. As a result, the Court acknowledges that denial of IMSA's peer review privilege may "frustrate irretrievably the state legislation that fosters confidential communications thought essential to the achievement of a public good of transcendent importance," and therefore, must be carefully weighed against the need for truth and compelling federal interests. *Sevilla v. U.S.*, 852 F. Supp.2d 1057, 1061 (N.D. Apr. 4, 2012).

While the state has a significant interest in preserving confidential communications, the balance between federal and state interests is skewed when individualized civil rights are implicated:

> Through enacting section 1983, Congress used the power of the Fourteenth Amendment to set aside concerns over state sovereignty and authorize the federal courts to vindicate deprivations of liberty carried out under color of state law. The interest in protecting the civil rights of individuals has led the courts to take caution before recognizing privileges in federal civil rights actions, "where any assertion of privilege must overcome the fundamental importance of a law meant to protect citizens from unconstitutional state action.

*In re Estate of Belbachir*, 2007 WL 2128341 at *7; *Jenkins v. DeKalb Cty., Georgia*, 242 F.R.D. 652, 658 (N.D. Ga. 2007) ("[W]hen Congress acts pursuant to section 5 of the Fourteenth Amendment, concerns for state sovereignty are at their lowest ebb.").

As a result, many courts have declined to recognize state law peer review privileges in federal question cases. *See, e.g.*, *Veith v. Portage Cty.*, Ohio, No. 11-cv-2542, 2012 WL 4850197,

at *2 (N.D. Ohio Oct. 12, 2012) ("However, this Court recognizes that a substantial number of federal courts have declined to expand the federal common law to include a privilege for physician peer review materials."); *Jenkins v. DeKalb Cty., Georgia*, 242 F.R.D. 652, 659 (N.D. Ga. 2007) ("It appears that every United States Court of Appeals that has addressed the issue of whether there is a federal medical peer review privilege has rejected the claim."); *see also Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004) ("Patients, physicians, and hospitals in Illinois . . . are not entitled to count on the state privilege's being applied in federal court").

The outcomes of these cases often turn on a fact-intensive inquiry, with courts most frequently recognizing peer review privilege in the medical malpractice context, because in those cases "[the] crucial issue . . . is not what occurred at the review proceeding, but whether the defendant was in fact negligent in his care and treatment of the plaintiff. . . 'what someone . . . at a subsequent date thought of these acts or omissions is not relevant to the case.'" *Shadur*, 664 F.2d at 1063 (internal citations omitted); *see also Sevilla*, 852 F. Supp.2d at 1061 ("Recognition of the IMSA privilege in the limited setting of an FTCA medical malpractice case will not adversely impact any federal substantive interest."); *Veith v. Portage Cty., Ohio*, 2012 WL 4850197, at *4 ("The public interest lies strongly in favor of recognizing a privilege for these materials in medical malpractice actions.").

Yet "the application of the peer-review privilege outside of the context of a medical malpractice case comes at a greater cost. In a civil rights case, such as this one, evidence of unconstitutional policies and customs may not exist outside of the confines of a post-death consultation of jail personnel." *Estate of Belbachir*, 2007 WL 2128341, at *7. Accordingly, nearly every court considering the issue has declined to recognize state law peer review privilege in cases concerning a prisoner's civil rights under federal law. *See, e.g., Agster v. Maricopa Cty.*, 422 F.3d

9

836, 839 (9th Cir. 2005) (declining to recognize peer review privilege in case in prisoner death case); *Jackson v. Wexford Health Sources, Inc.*, No. 20-cv-00900, 2023 WL 4352068, at *5 (S.D. Ill. July 5, 2023) (declining to recognize IMSA peer review privilege with respect to records held by Wexford Health Sources, Inc. in prisoner rights case); *Green*, 2023 WL 1447817, at *3 (declining to recognize IMSA privilege in prisoner rights case under section 1983 and distinguishing the need for such information in medical malpractices cases from civil rights cases); *Johnson*, 309 F. Supp. 3d at 582–83 (declining to recognize IMSA privilege in a prisoner death case because the peer review privilege was highly probative and vital to proving claims, and distinguishing federal policy in prisoner cases from the state's interests in medical malpractice cases); *Estate of Belbachir*, 2007 WL 2128341 at *7 (declining to recognize IMSA privilege in prisoner's rights case, and distinguishing civil rights cases concerning prison practices and customs from medical malpractice cases); *Jenkins*, 242 F.R.D. at 661 (declining to recognize peer review privilege in prisoner's rights action).

      Similarly, the Court finds that here the need for truth outweighs the state's concerns about the flow of information among medical professionals. Plaintiffs allege discriminatory practices and policies toward mentally ill prisoners and prisoners of color held in custody throughout multiple facilities within the IDOC. Plaintiffs' claims implicate not only issues around patient evaluations, medication, and treatment, but also the Defendants' efforts to provide constitutionally adequate care—including their alleged indifference to delayed emergency response times, inadequate crisis practices, and discriminatory and punitive acts to mentally ill inmates and persons of color. *See* ECF No. 3702. Having reviewed the Meeting Minutes *in camera*, the Court finds them relevant to the above issues.

The Meeting Minutes encompass detailed discussions about not only the mental health treatment of prisoners within IDOC, but also proposed next steps and improvements from medical and non-medical professionals. As numerous courts have noted, prisoners face immense difficulty in obtaining evidence of prison customs, practices, and policies that are crucial to establishing a violation of their federal rights. *See Estate of Belbachir*, 2007 WL 2128341 at *7 (requiring production of meeting minutes and noting that in civil rights cases, "evidence of unconstitutional policies and customs may not exist outside of the confines of a post-death consultation of jail personnel"). While the records Defendants previously produced undoubtedly provide information relevant to IDOC's customs and practices, the Meeting Minutes provide insight into IDOC's affirmative actions in addressing patient care deficiencies. Indeed, "the very existence of quality assurance review committees, their evaluations, and their recommended action or inaction is important in deciding the ultimate issue in the case—whether the defendant was providing adequate medical care . . . ." *United States v. State of Ill.*, 148 F.R.D. 587, 588 (N.D. Ill. 1993).

For these reasons, the Meeting Minutes are essential to not only prove what remedial steps were taken in the past, but also to determine whether Defendants are providing constitutionally adequate care or acting with discriminatory intent. *See, e.g.*, *Green* 2023 WL 1447817, at *3; *see also United States v. State of Ill.*, 148 F.R.D. at 588 ("Adequate medical care is not only measured by remedial steps after injury but also by evaluation and affirmative steps taken by quality assurance committees.").

Finally, the Court is not persuaded by Defendants reliance on *Hadix v. Caruso*, No. 92-cv-110, 2006 WL 2925270 (W.D. Mich. 2006). ECF No. 3704, at *11. In *Hadix*, the court denied the plaintiff's motion to compel the production of peer review medical documents, stating "[p]risoner civil rights cases founded on Eight Amendment claims that doctors failed to provide

11

adequate medical care are the federal equivalent of state medical malpractice suits (with the caveat that liability in such suits depends on a showing of intentional or reckless disregard of the prisoner's rights.)" 2006 WL 2925270 at *2. That court found these types of suits are "the very object of the state statutes which create the peer review privilege, especially as it relates to peer review of prison facilities," and, therefore, the peer review documents are protected from civil discovery. *Id. Hadix*, however, appears to be an outlier decision, with a growing majority of courts declining to recognize peer review privilege in a prisoner's civil rights proceeding. *See Jenkins v. DeKalb Cty., Georgia*, 242 F.R.D., at 660 (*Hadix* "is the only case to defend and recognize a medical peer review privilege in the context of prison litigation").

Moreover, unlike *Hadix*, this case implicates discriminatory treatment of an entire class of mentally ill prisoners within a state-wide prison system and not a claim that could be satisfied through an individualized review of a single prisoner's own records. Plaintiffs allege numerous discriminatory and unconstitutional practices, including a lack of individualized treatment plans, lack of patient confidentiality, delayed crisis responses, arbitrary standards for moving patients to higher levels of care, and punitive practices toward mentally ill patients and people of color. Fifth Am. Compl., ECF No. 3702. Evidence of discriminatory practices is difficult to obtain in the prison context. Further, the need for truth in examining potential discriminatory and unconstitutional state actions outweigh any potential chilling effect on the confidentiality preserved under IMSA. *See Estate of Belbachir*, 2007 WL 2128341 at *7 ("Assuming there is some amount of a chill placed on the peer review process by allowing the discovery of peer-review material in the context of a federal civil rights action rooted in the death of an inmate, the court is nevertheless convinced that the need for truth in rooting out unconstitutional state-action outweighs that concern."); *Johnson*, 309 F. Supp. 3d at 579 (emphasizing that "it is peculiarly

important that the public have access to the assessment by peers of the care provided" in prisoner cases).

Accordingly, the Court, finds that production of the Meeting Minutes is necessary, as the need for truth and the compelling federal interests outweigh the state's policy of improved candor and self-evaluation sought to be furthered by the application of IMSA's peer review privilege in this matter. The Court, however, takes seriously the benefits of IDOC's peer review process, especially here where the Meeting Minutes implicate IDOC's confidential policies and proposed affirmative steps. The Court, therefore, will require that the Meeting Minutes be designated as "ATTORNEYS EYES" only under the Protective Order.[2]

## CONCLUSION

For the reasons stated above, Defendants' Motion to Compel [3693] is GRANTED.

ENTERED this 24th day of July, 2023.

                                                    /s/ Michael M. Mihm
                                                        Michael M. Mihm
                                                    United States District Judge

---

[2] The Court notes that subjecting production to a protective order obviates certain confidentiality issues Defendant raised, and follows an alternative approach suggested in the *Hadix* decision cited by the Defendants. While the *Hadix* court declined to recognize peer review privilege, the court reasoned that had it required production, it would have utilized an "alternative ground . . . that the peer review process, including its confidentiality, must be preserved in order to facilitate the proper delivery of medical care at the Hadix facilities." *Hadix v. Caruso*, 2006 WL 2925270 at *3. The Court, therefore, believes that in conducting a confidential *in camera* review and requiring strict confidentiality under a protective order, the state's interests in confidentiality and chilling effect on the peer review process are minimized.

13