UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| PATRICE DANIELS, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-1298 |
| | ) | |
| ROB JEFFREYS, Director of IDOC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On August 4, 2023, Plaintiffs filed a Motion for Preliminary Injunction seeking relief for Class Members held in restrictive conditions at the Illinois Department of Corrections' (the "IDOC") Northern Reception Center ("NRC"), ECF No. 3723, and a Motion for Leave to File Oversized Brief and Set a Schedule for Hearing, ECF No. 3724.  On August 8th, Defendants filed a Combined Motion to Strike Plaintiff's Motion for Preliminary Injunction for Lack of Article III Standing, and Opposition to Plaintiff's Motion to Schedule a Hearing. ECF No. 3726.  The Court held a status conference on August 9th and set a briefing schedule on Defendant's Motion to Strike. *Min. Entry* on 08/09/2023. On August 14th, Plaintiffs filed a Response to Defendant's Motion to Strike, ECF No. 3728, and Defendants filed a Reply supporting their Motion to Strike on August 16th, ECF No. 3729.  The Court held oral argument on August 21st and denied Defendants' Motion to Strike.  This written opinion follows to provide a detailed explanation of the Court's ruling announced at oral argument.

## BACKGROUND

The parties are familiar with the factual and procedural background of the case; the Court therefore only sets forth facts directly relevant to the resolution of the issue of Defendants' Motion

to Strike Plaintiffs' Motion for Preliminary Injunction for Lack of Article III Standing.  ECF No.

3726.

On August 14, 2015, this Court certified this case a class action under Federal Rule of Civil

Procedure 23(b)(2), and defined "Class Members" as:

> Persons now or in the future in the custody of the Illinois Department of Corrections ("IDOC") are identified or should have been identified by the IDOC's mental health professionals as in need of mental health treatment as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association. A diagnosis of alcoholism or drug addiction, developmental disorders, or any form of sexual disorder shall not, by itself, render an individual mentally ill for the purposes of this class definition.

ECF No. 252 at *7.

Presently pending before the Court is Plaintiffs' Fifth Amended Class Action Complaint,

which was filed on May 26, 2023 (the "Complaint").  ECF No. 3702.  The Complaint asserts that

the IDOC and Illinois Governor J.B. Pritzker violated the Class Members' rights under the Eighth

Amendment, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, the Rehabilitation

Act, 29 U.S.C. § 794, the Equal Protection Clause, and the Due Process Clause in their treatment

of mentally ill prisoners within the custody of IDOC.  *Id.*  On July 10th, Defendants filed a motion

to dismiss Counts II and III, which allege violations of the Equal Protection and Due Process

Clauses respectively, and to dismiss Governor Pritzker as a Defendant.  ECF No. 3717.  On July

25th, Plaintiffs filed a response in opposition to Defendant's motion to dismiss.  ECF No. 3721.

While Defendants' motion to dismiss was pending, prior to this Court ruling on the motion,

Plaintiffs filed this Motion for Preliminary Injunction (the "P.I. Motion").  ECF No. 3723.

Plaintiffs' P.I. Motion seeks relief for approximately twenty-five Class Members who are being

held at the NRC in confinement for 23-24 hours a day and not receiving vital mental health care.

*Id*.  Specifically, Plaintiffs ask the Court to enter a preliminary injunction that requires IDOC to

take immediate steps to transfer the harmed Class Members to proper correctional centers that will

provide adequate care.  *Id.*  Defendants' Motion to Strike argues this Court lacks subject matter

jurisdiction to issue the preliminary injunction because, among other things, the "Named

Plaintiffs"[1] lack Article III standing to seek the requested relief because none are located at the

IDOC's NRC.  ECF No. 3726.

**A.      Plaintiffs' P.I. Motion and Requested Relief**

The NRC is a prisoner reception and classification center within the IDOC that functions

as the major adult male intake and processing unit for Illinois.  Prisoners admitted into the NRC

are in "reception status" until transferred to a long-term institution.

Plaintiffs' experts Dr. Sharen Barboza and Mr. Daniel Pacholke visited the NRC on July

24, 2023, and subsequently submitted declarations (collectively "Declarations") describing their

observations of the NRC and interviews with mentally ill prisoners there.  *See* ECF Nos. 3723-1;

3723-2.  The Declarations assert that certain Class Members in the custody of NRC are held for

prolonged periods of time compared to non-mentally ill individuals, and detail inadequate mental

health treatment of Class Members that are alleged to constitute severe and immediate harm.

Dr. Barboza's Declaration notes the following "troubling conditions" of individuals

"identified as requiring enhanced mental health treatment at the Residential Treatment Unit

("RTU")," based on her observations and speaking with patients:  a lack of access to psychiatric

staff and mental health clinicians; lack of medication, therapy, and treatment plans; placement in

unsanitary and unhealthy conditions; and prolonged placement in restrictive housing locations that

subject mentally ill individuals to solitary confinement for months longer than non-mentally ill

---

[1] The Named Plaintiffs include:  (i) Patrice Daniels, incarcerated at the Joliet Treatment Center, which is an RTU; (ii) Gerrodo Forrest incarcerated at Pinckneyville Correctional Center and considered SMI; (iii) J. Herman incarcerated at Dixon Correctional Center and designated as RTU level of care; (iv) Henry Hersman incarcerated at Jacksonville Correctional Center; (v) Rasheed McGee at Pontiac Correctional Center in RTU level of care; (vi) Fredricka Lyles who was previously incarcerated at Logan Correctional Center; and (vii) Clara Plair incarcerated at Logan Correctional Center and designated as having SMI.  ECF No 3702, at *21–24.

individuals.  *See* ECF No. 3723-1, at *1–2.  Dr. Barboza also describes these patients' living conditions as lacking natural light, clean clothes, working toilets, showers, or out-of-cell and recreational time.  *Id.* at *2–3, 5, 7.  Dr. Barboza believes the IDOC should immediately transfer these individuals with serious mental illness identified as needing enhanced care to correctional facilities where that care can be provided.  *Id.* at *2, 9–10.

Mr. Pacholke's Declaration sets forth similar observations.  ECF No. 3727-2.  Specifically, Mr. Pacholke explains that inmates are confined to cells with no exterior windows for twenty-three hours a day in highly unsanitary and inhumane conditions.  ECF No. 3727-2, at*6–8 (detailing that he saw feces, contraband, and insects in prisoners' cells).  He further notes that certain units within the NRC—such as Unit H where many severally mentally ill ("SMI") individuals who are identified as requiring RTU level of care are held—did not appear to have assigned clinical staff or otherwise receive adequate treatment.  *Id.* at *7.

Attached as Exhibit D to the P.I. Motion is a chart detailing twenty-nine Class Members' admission to the NRC, and total amount of time spent at the NRC as of July 24, 2023.  ECF No. 3723-4.  Plaintiffs assert that twenty-one of those Class Members have been confined there for three months or more.  Plaintiffs claim this is far longer than prisoners who do not suffer from mental illness, who are only held for a few weeks before being transferred.  ECF No. 3723, at *3– 4.  Plaintiffs also allege that RTU housing is available in close proximity to the NRC, at the Joliet Treatment Center (the "JTC"), and that Class Members could be transferred from the NRC to JTC. ECF No. 3723, at *17.

**B.      Defendants' Motion to Strike**

Defendants have not responded to the above allegations because they first moved to strike the P.I. Motion arguing there is a lack of standing under Article III.  Specifically, Defendants assert

that none of the Named Plaintiffs are incarcerated at the NRC—and because it is a reception center—can never expect to be housed at the NRC in the future. ECF No. 3726, at *3. As a result, Defendants argue that the Named Plaintiffs lack standing to pursue injunctive relief against the NRC facility because they did not personally suffer an "injury in fact" arising out of the alleged conduct at NRC. ECF No. 3726 at *6. In support, Defendants rely on a series of cases which hold that a plaintiff must suffer a concrete injury for each requested form of relief. *See* ECF No 3726, at *5–6 (citing *Spokeo*, 578 U.S. at 338 n.6; *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *Williams v. Reckitt Benckiser LLC,* 65 F.4th 1243, 1254 (11th Cir. 2023)); ECF No. 3729, at *3–5 (same).

In response, the Plaintiffs argue that after class certification, it is the Class Members that must have standing, not the Named Plaintiffs as individuals. *See* ECF No. 3728, at *2. Plaintiffs further argue that the Defendants conflate Article III injury-in-fact standing and class certification issues, noting that here, the class was certified under Rule 23, which was designed to test the relationship of injury between the putative class and Named Plaintiffs. *Id.* at *4–6. Plaintiffs also contend that the Named Plaintiffs and Class Members suffered the same type of injuries from the same failures of IDOC to address mental health needs, and therefore, may seek relief on behalf of the certified class. *Id.* at *7.

Following full briefing, the Court held oral argument on the narrow issue of standing and ruled that Defendant's Motion to Strike was denied. *Min. Entry* on 08/21/2023. The Parties were further informed that ruling would become final upon entry of this written Order and Opinion. *Id.*

## LEGAL STANDARD

Standing is a doctrine rooted in the traditional understanding that a party must have a "case or controversy" under Article III of the Constitution for a federal court to issue relief. U.S. Const. art. III § 2. The standing doctrine was developed "to ensure that federal courts do not exceed their

authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citations omitted). "In this way, '[t]he law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches' and confines the federal courts to a properly judicial role." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576–77 (1992)).

To have standing, "a plaintiff must show: (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560–61).

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. A "concrete" injury must be "'*de facto*, that is, to actually exist." *Id.* at 340. Only plaintiffs who have been concretely harmed by a defendant's statutory or constitutional violation may sue in federal court. *TransUnion LLC*, 141 S.Ct. at 2205. A plaintiff seeking injunctive relief must "face[ ] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (citing *TransUnion LLC*, 141 S.Ct. at 2210).

The burden of establishing each standing element is on the plaintiff. *Spokeo*, 578 U.S. at 338 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . [i]n response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must "set forth" by affidavit or other evidence 'specific facts' . . . ." *Lujan*, 504 U.S. at 561.

## DISCUSSION

**A.     Here, the Class has Been Certified and is a Separate Entity for Purposes of Standing.**

As an initial matter, it is important to underscore the effect of class certification and relationship with Article III standing.  "*Before* a class is certified, it is true, the named plaintiff must have standing, because at that stage no one else has a legally protected interest in maintaining the suit."  *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009) (citing *Sosna v. Iowa*, 419 U.S. 393, 204 (1975)).  "Threshold individual standing is a prerequisite for all actions, including class actions . . . [a] potential class representative must demonstrate individual standing *vis-as-vis* the defendant; he cannot acquire such standing merely by virtue of bringing a class action."  *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Sierra Club v. Morton*, 405 U.S. 727 (1972)).

In the class action context, the Seventh Circuit has held that class certification has a critical effect on standing because after certification, the true plaintiff is the entire class. *See Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) ("[O]nce a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs.").  Therefore, when a class is properly certified its "legal status separate from and independent of the interest asserted by the named plaintiff.'"  *Id.*  (internal citations omitted). This has been underscored by the Supreme Court, which has held that "where a class has been properly certified, even the mootness of the named plaintiff's individual claim does not render the class action moot . . . ."  *Payton*, 308 F.3d at 680 (citing *Sosna v. Iowa*, 419 U.S. 393, 399–401 (1975)).  Rather, the question becomes whether it is enough that *some* class members were injured by at least one named defendant.  *Id.* at 678.

Here, the class was certified on August 14, 2015.  ECF No. 252.  The Class Members include "[p]ersons now or in the future" that are in the custody of IDOC and identified or should have been identified as in need of mental health treatment.  *Id.* at *7.  The Court found the Class Members shared common issues of law from alleged violations of the Eighth and Fourteenth Amendments, the ADA, and the Rehabilitation Act, which stem from IDOC's deficiencies in their mental health care and treatment.  ECF No. 252, at *3.  Specifically, this Court found that the Named Plaintiffs had documented, concrete, and particularized injuries that resulted from a "state-wide culture of inadequate mental health treatment," which exposed the entire class to a substantial risk of serious harm.  *Id.* at *4–5.  This Court further acknowledged that "[w]hile there are certainly distinctions from one individual plaintiff's claims to those of another, the alleged harm arises from the same course of conduct on the part of IDOC . . . based on the same legal theory . . . [and] the claims of the named Plaintiffs have the same essential characteristics as the class at large."  *Id.* at *5.

In contesting standing, Defendants rely on several cases, including *Spokeo*, that analyze whether the named plaintiffs have standing prior to certification, not after.[2]  For the reasons set forth above, that is not the proper standing analysis at this juncture when considering an already certified class.

---

[2] *Spokeo, Inc.*, 578 U.S. at 336 (noting that the district court dismissed the complaint for lack of jurisdiction, which occurred without certification of the class); *Williams v. Reckitt v. Benckiser LLC*, 65 F.4th 1243, 1250 (11th Cir. 2023) ("The R&R never formally certified the Class that had previously been 'preliminarily certified.'"); *Curtis v. 7-Eleven, Inc.*, 2022 WL 4182384, at *8–9 (N.D. Ill. Sept. 13, 2022) (analyzing whether named plaintiff had standing to sue on behalf of putative class that had not been certified), *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922, 927 (N.D. Ill. 2022) (holding that named plaintiff did not have standing to pursue injunctive relief at motion to dismiss stage on behalf of putative class that had been certified); *Castillo v. Unilever United States, Inc.*, No. 20-c-6786, 2022 WL 704809 (N.D. Ill. Mar. 9, 2022) (declining to wait until after class certification to address standing and reasoning that "[j]urisdiction over a putative class action depends on the named plaintiff's standing"); *Portis v. City of Chi.*, 347 F. Supp. 2d 573, 575 (N.D. Ill. 2004) (noting that while class was certified, "[t]he court declined to certify a Rule 23(b)(2) injunctive relief class because plaintiffs had no standing entitling them to represent such a class *upon commencement of this litigation*") (emphasis added)).

**B.** **The Requested Relief Must be Viewed with the Appropriate Level of Specificity at the Pleading Stage.**

Rather, the better question is whether the Court may grant the requested preliminary injunction which is aimed at only *some* Class Members who are being held at the IDOC's NRC facility. *See* ECF No. 3729, at *7. This is because notwithstanding the effect of class certification, "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff [*i.e.*, the certified class] has established*." Lewis v. Casey*, 518 U.S. 343 (1996) (examining whether the remedy addresses the alleged systemwide harm). Thus, the issue is whether the relief requested at NRC fits within the broader risk of future injury that resulted from the alleged "state-wide culture" of inadequate mental health treatment for which this Class was certified, and whether the requested relief addresses that harm. The Court finds that it does.

As discussed above, the Named Plaintiffs seek relief that would redress the questions of law and common fact identified in the Complaint and the Class Certification Order; namely, violations of the ADA, Rehabilitation Act and Eighth Amendment, which arise from an alleged systemwide practice of providing inadequate medical treatment for mentally ill individuals. The Complaint and Class Certification Order broadly outline harms that the certified Class Members experience from the lack of adequate mental health treatment, including delayed mental health evaluations, delayed transfers to higher level of care (including RTUs), lack of access to medication or psychiatric care, lack of individualized treatment plans, denial of services or discrimination to mentally ill individuals compared to non-mentally ill individuals, and subjection to longstanding confinement that is imminently harmful. *See, e.g.*, ECF No. 3702 at *2, 8, 11–15, 19–21; ECF No. 252 at *3–5.

These allegations encompass harms experienced by all Class Members, including those at the NRC. Furthermore, Plaintiffs' P.I. Motion details injuries at the NRC that are nearly identical

to those outlined in the Complaint among IDOC as a whole, such as:  delayed transfers of mentally ill individuals to RTUs; prolonged solitary confinement; lack of access to medication and psychiatric care; and discrimination against mentally ill inmates.  *See* ECF No. 3723 at *3–6; ECF No. 3728 at *7.

The Court also finds Defendants' reliance heavily on the Eleventh Circuit's *Williams v. Reckitt Benckiser LLC* decision unpersuasive.  *See* ECF Nos. 3626, at *6; 3729 at *8–9.  In *Williams*, the Eleventh Circuit held that the named plaintiffs lacked standing to pursue claims for injunctive relief, in part, because the complaint only alleged *past* harms and because the Named Plaintiffs could not demonstrate that they individually would suffer harm in the future.  *See Williams*, 65 F4th 1243, 1254 (11th Cir. 2023).  The district court in *Williams*, however, did not formally certify the class as the Court has here, and therefore, "did not assure itself of the Named Plaintiffs' standing to seek injunctive relief" as a threshold matter.  *Id.* at 1253–54.  Further, the putative class in *Williams* did not include future persons as this Class does.  Thus, *Williams* is not wholly analogous to this dispute.

Defendants further argue that this Court has previously required the Named Plaintiffs to demonstrate individual standing, post-class certification, in the Court's Opinion and Order Granting in Part and Denying in Part the Defendant's Motion to Dismiss.  ECF No. 3681.  The Court's prior ruling, however, rested on the fact that the Plaintiffs added *new* claims for racial discrimination in the Fourth Amended Complaint that had not previously been raised in the case. ECF No. 3681, at *13. The Court had not, therefore, tested whether the Named Plaintiffs had threshold standing to pursue these claims when it certified the Class because the claims were part of the underlying litigation.  *Id.*

The Court notes that while Plaintiffs have standing to pursue their P.I. Motion at this juncture, the Plaintiffs must still clearly demonstrate at the evidentiary stage that the requested relief addresses actual injury for each form of relief. *See Lewis*, 518 U.S. at 349 (noting that the success of a systemic challenge rested on plaintiff's ability to show widespread actual injury).

## CONCLUSION

For the reasons stated above, Defendants' Motion to Strike [3726] is DENIED.

ENTERED this 25th day of August, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge