UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PATRICE DANIELS, *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 07-cv-1298 |
| | ) |
| ROB JEFFREYS, Director of IDOC, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

**OPINION AND ORDER**

The Court regrets having to raise the issue of jurisdiction *sua sponte*, but clearly it is the Court's duty to do so. For the reasons stated below, this case is DISMISSED WITH PREJUDICE with respect to the claims embodied in the Consent Decree and DISMISSED WITHOUT PREJUDICE with respect to the newly added claims embodied in the Fifth Amended Complaint for lack of subject matter jurisdiction. The Clerk of Court is directed to enter judgment and close this case.

**I.     BACKGROUND**

This litigation began in 2007 as a prisoner's right suit that challenged the adequacy of mental health services provided to mentally ill inmates in the physical custody and control of the Illinois Department of Corrections ("IDOC"). *See* ECF No. 1. The litigation grew into a class action against IDOC officials seeking declaratory and injunctive relief for failing to provide constitutionally adequate mental healthcare. The class was certified in August 2015, and consisted of:

> Persons now or in the future in the custody of the Illinois Department of Corrections ("IDOC") [who] are identified or should have been identified by the IDOC's mental health professionals as in need of mental health treatment as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the

1

> American Psychiatric Association. A diagnosis of alcoholism or drug addiction, developmental disorder, or any form of sexual disorder shall not, by itself, render an individual mentally ill for purposes of this class definition.

ECF No. 252 at 7.

In September 2015, Plaintiffs filed a Third Amended Complaint under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. ECF No. 260. Shortly thereafter, the Parties entered into a comprehensive agreement resolving all claims in the Third Amended Complaint, which they referred to as the "Settlement Agreement." (*See Min. Entry* on 12/17/2015). Despite the title and any belief to the contrary, the Seventh Circuit has clarified that because the agreement between the Parties was subject to judicial enforcement it was a consent decree under the PLRA:

> As such, the agreement is more accurately described as a consent decree rather than a private settlement. *See Doe v. Cook County*, 798 F.3d 558, 562–63 (7th Cir. 2015) (explaining that under 18 U.S.C. § 3626, "if an agreement is judicially enforceable—that is, if a violation means anything other than restarting the litigation on the merits—the agreement must be treated as a 'consent decree'"). That distinction is irrelevant for our purposes, so we use the terms "settlement" or "agreement" for consistency with the nomenclature adopted by the parties and the district court.

*Rasho, et al. v. Jefferys, et al.*, 22 F.4th 703, 707, n.2 (7th Cir. 2022). Following the Seventh Circuit's directive, this Court entered an order confirming the Parties' agreement was, by its terms, a consent decree. ECF No. 3597 at 5–7. Neither party has challenged that decision. Accordingly, for purposes of consistency and accuracy in this Order, going forward the settlement agreement approved on May 23, 2016, will be referred to as the "Consent Decree."

Significant to this Order, the Consent Decree included a jurisdictional limitation under the dispute resolution provision, which stated:

2

> The Court's jurisdiction shall terminate (3) three years after the Approval Date . . . with respect to any provisions of this Settlement Agreement for which there is no outstanding determination that Defendants are not in substantial compliance. If the Court determines that Defendants are not in substantial compliance with any provisions of this Settlement Agreement at any time during the three (3) year period of the Settlement Agreement, the Court's jurisdiction with respect to such provisions shall continue for the remainder of the three (3) year period or for a period to be ordered by the Court for not more than two (2) years from the date of the Court's findings that Defendants are not in substantial compliance.

ECF No. 708-1 at 29–30 (§ XXIX(e)). As applied, the Court's jurisdiction terminated over all provisions for which there was no outstanding determination that Defendants were not in substantial compliance on May 23, 2019, and could be extended, by court order, over provisions for which there was a finding of noncompliance from that date for no more than two years. *Id.*

To oversee compliance, the Parties agreed to a Court appointed monitor, Dr. Pablo Stewart. *Id.* at 25. In the event there was an issue with Defendants' compliance, the Consent Decree required the Parties to engage in informal dispute resolution; if that was unsuccessful, then Plaintiffs could seek relief from the Court. Specifically, the Consent Decree provided:

> g) to permit enforcement of the terms of this Settlement Agreement in federal court, the parties agree that, should it become necessary to seek the Court's assistance as to violations of this agreement, <u>any order granting such relief must include a finding that the relief sought is narrowly drawn, extends no further than is necessary to correct the violation of the federal right, and is the least intrusive means for doing so</u>.

*Id.* at 30 (§ XXIX(g)).[1]

In June 2017, Dr. Stewart issued an annual report outlining substantial improvements Defendants had made in some areas, and gross deficiencies in others. ECF No. 1373. These inadequacies were again emphasized in Dr. Stewart's midyear report dated November 22, 2017.

---

[1] Section XXIX(g) of the Consent Decree mirrored the PLRA's requirements for approval of prospective relief under a consent decree set forth in 18 U.S.C. § 3626(a) ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.").

3

ECF No. 1646.  On October 10, 2017, Plaintiffs moved the Court to enter a preliminary injunction on the grounds that Defendants were not in substantial compliance with the following areas: (1) Treatment Plans; (2) Evaluations; (3) Medications; (4) Segregation; and (5) Crisis Treatment and Transitions.  ECF No. 1559.  After being fully briefed, evidentiary hearings were held on December 18 and 19, 2017, and February 27 through March 2, 2018.  Following the hearing, the parties submitted findings of fact and conclusions of law, and on May 22, 2018, the Court held a hearing to discuss the forms of preliminary relief.  On May 25, 2018, the Court granted Plaintiffs' request for a preliminary injunction (the "Preliminary Injunction Order").  ECF No. 2070.  The Preliminary Injunction Order contained findings traditionally required for the issuance of a preliminary injunction and made additional findings that the PLRA's requirements were satisfied. *Id*.  The Preliminary Injunction Order further stated that it would expire ninety days after its entry, *see* § 3626(a)(2), unless the Court entered a final order on prospective relief before.  *Id.*

On June 6, 2018, Plaintiffs filed a motion asking the Court to hear the merits of its claims and convert the preliminary injunction into a permanent injunction.  ECF No. 2112.  Additional discovery was conducted, and updated briefs were submitted.  The Parties agreed that all the evidence presented at the preliminary injunction hearing would be incorporated into the trial record, and between August 27, 2018 and September 7, 2018, additional evidence and arguments were heard in support of each Parties' respective positions on Plaintiffs' motion for a permanent injunction.  The Parties were also given an opportunity to submit post-hearing briefs and provide written submissions addressing the status of Defendants' compliance in the five areas at issue.  On October 30, 2018, the Court issued a detailed order granting Plaintiffs' request for a permanent injunction (the "October 30, 2018 Order").  ECF No. 2460.  The order set forth the substantive considerations informing the Court's finding that Defendants had been "deliberately indifferent to

the medical needs of the Plaintiffs in medication management, mental health treatment in segregation, mental health treatment in crisis watch, mental health evaluations, and mental health treatment plans within the meaning of the Eighth Amendment." *Id.*

The October 30, 2018 Order deferred entering specific injunctive relief and allowed Defendants an opportunity to submit a proposed remedy order addressing their constitutional deficiencies. After the issue of proposed injunctive relief was briefed, the Court entered an "addendum order" on December 20, 2018 (the "December 2018 Order"), which summarized and incorporated the Court's earlier findings in the October 30, 2018 Order and made additional findings that the granted relief met the PLRA's requirement. *See* ECF No. 2516. Following the December 2018 Order, Defendants filed a motion for reconsideration and a Notice of Appeal. *See* ECF Nos. 2540, 2544. Defendants' motion for reconsideration was denied, and Defendants appealed that as well. ECF Nos. 2579, 2583.

On April 15, 2019, the Seventh Circuit remanded the appeal for the limited purpose of permitting this Court to modify the injunction order to conform with Federal Rule of Civil Procedure 65. *Rasho, et al. v. Jefferys, et al.*, No. 19-1145 (7th Cir. Apr. 15, 2019) (ECF No. 2628). The remand order expressly stated that the Seventh Circuit was retaining jurisdiction over the matter. *Id.* On April 22, 2019, the Court entered a final permanent injunction order (the "Permanent Injunction Order"), where the Court memorialized its prior injunction and post-judgment orders into a single order under Rule 65(d). ECF No. 2633. On May 21, 2019, Defendants filed a Notice of Appeal challenging the final Permanent Injunction Order. ECF No. 2656. The Seventh Circuit consolidated the appeals, and the case remained pending on appeal for nearly two and a half years until the Seventh Circuit's Mandate was issued on May 3, 2022. ECF No. 3560.

5

While that appeal was pending, the Parties filed a motion for leave to file an amended settlement agreement, which the Court approved on June 9, 2020 (hereinafter, "Amended Consent Decree"). *See* ECF No. 3051. The Amended Consent Decree contained several changes, one of which was a modification to the jurisdictional provisions, which stated:

> The Court's jurisdiction shall terminate April 23, 2021 with respect to any provisions of this Settlement Agreement for which the court has found that Defendants are in substantial compliance. The Court's jurisdiction over the Settlement Agreement for which no such finding has been made may be extended by the court for periods of time not more than two years from any finding of violation with respect to any provisions of this Settlement Agreement for which the Court has determined that Defendants are not in substantial compliance. As to relief governed by the Court's permanent injunction order (Dkt. 2633), the relief shall terminate as provided in that order, unless otherwise altered by court order. As to any other court ordered relief pursuant to sections XXIX(g)-(i), the court's jurisdiction shall be governed by the termination provisions of the Prison Litigation Reform Act, 18 U.S. Code § 3626(b).

ECF No. 3051 at 29–30 (§ XXIX(e)). While the Amended Consent Decree specifically referenced the PLRA, the required findings under 18 U.S.C. § 3626(a) needed to amend a consent decree were not made. *See* 18 U.S.C. § 3626(c)(1). Furthermore, the issue of what, if any, jurisdiction this Court had to enter an Amended Consent Decree was not addressed. Specifically, the parties did not address whether this Court retained jurisdiction over the case following the issuance of permanent injunction that covered all areas of substantial noncompliance and violations of Plaintiff's Federal rights prior to the Court's jurisdiction terminating under the terms of the original Consent Decree, and whether Defendants' appeal challenging the Permanent Injunction Order deprived this Court of jurisdiction.

The Parties subsequently filed two unopposed motion to extend jurisdiction under the Amended Consent Decree, which ultimately extended the Court's jurisdiction to July 22, 2022. ECF No. 3508. In the orders extending jurisdiction, the parties identified areas which they claimed were still subject to the Court's continued enforcement based on no finding of substantial

6

compliance; these areas overlapped with areas in the Permanent Injunction Order pending on appeal before the Seventh Circuit. *See* ECF Nos. 3266, 3508. Again, the above issues pertaining to this Court's jurisdiction were not raised, and no PLRA findings under § 3626(a) were made. *See* ECF Nos. 3266, 3508.

On May 3, 2022, the Seventh Circuit issued its mandate vacating the Permanent Injunction Order and reversing this Court's findings of Eighth Amendment violations. *Rasho*, 22 F.4th 703 (ECF No. 3560). On the merits, the Seventh Circuit found that because the Defendants were not violating Plaintiffs' Eighth Amendment rights in respect to the areas for which there had been a finding of substantial noncompliance and constitutional violations—staffing, crisis care, segregation, medication, and evaluation and treatment plans—judicial enforcement of prospective relief was prohibited. *Id.* at 710–12. The Seventh Circuit also pointed out that because this Court retained jurisdiction to oversee compliance of the Parties' agreement, it was, by its terms, a consent decree under the PLRA. *Id.* at 707, n.2. As a result, the Seventh Circuit issued a Final Judgment Order, which reversed this Court's order, vacated the Permanent Injunction Order, and *did not remand the case back to the Court for further proceedings*. ECF No. 3560-3 (emphasis added).

Following the issuance of the Seventh Circuit's Mandate, the Court issued an order denying Plaintiffs' third motion to extend jurisdiction over the Amended Consent Decree. ECF No. 3597. Consistent with the Seventh Circuit's ruling, the Court confirmed that the Parties' settlement agreement was a consent decree. *Id.* at 5–7. The Court also noted that the Seventh Circuit did not invalidate the Consent Decree, and that no motion to terminate or otherwise nullify the Consent Decree had been filed. *Id.* at 12. The Court next reasoned that as a Consent Decree, any additional extension of jurisdiction required specific PLRA findings, which had not been made. *Id.* at 7–9 (noting that the monitor reports did not reflect a constitutional violation, and further, that the

7

Seventh Circuit had already ruled that the substantive requirements of the Consent Decree transgress the limitations on prospective relief under the PLRA). Finally, the Court found that the Consent Decree's terms did not require the Court to extend its jurisdiction—particularly following the Seventh Circuit's findings that there were no constitutional violations and absent a new showing of ongoing violations under the PLRA—and therefore, the Court's jurisdiction was set to expire by its terms. *Id.* at 9.

Since that ruling, Plaintiffs have proceeded to file amended complaints containing the same claims from the Third Amended Complaint, while also adding new claims for violations of the Equal Protection Clause and Due Process Clause under the Fourteenth Amendment and adding Illinois Governor J.B. Pritzker as a Defendant. *See* ECF Nos. 3632, 3703. Defendants have moved to dismiss these pleadings but have not raised the issue of subject matter jurisdiction, or otherwise sought to officially close the case. *See* ECF No. 3717. As a result, after carefully reexamining the record, this Court *sua sponte* entered a jurisdictional order staying the case and directed the parties to submit briefs addressing the Court's jurisdictional concerns. *See* ECF No. 3739. This matter has been fully briefed, and the Parties' arguments were heard on October 12, 2023. At the conclusion of that hearing, the Court ruled that it no longer had subject matter jurisdiction over the case, and that its ruling would be final upon issuance of this written order.

## II.    LEGAL FRAMEWORK

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). District courts have a continuous duty investigate the existence of jurisdiction *sua sponte* when the parties fail to raise it. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004); *see also Whitney v. Riccordino Realty, Inc.*, 106 F.3d 404 (7th Cir. 1997) ("[A] district

court 'has a duty to resolve apparent jurisdictional questions even where the parties do not raise them.'") (citing *Yasuda Fire & Marine Ins. v. Cont'l Gas Co.*, 37 F.3d 345 (7th Cir. 1994); *Grabianski v. Bally Total Fitness Holding Corp.*, No. 12 C 284, 2013 WL 676334, at *2 (N.D. Ill. Feb. 21, 2013) ("Of course, were I to conclude, independently of [the parties'] arguments, that I lacked subject matter jurisdiction over this case, I would be required to dismiss it *sua sponte*."). A district court's subject matter jurisdiction "can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

### III.   DISCUSSION

A "final order" is a common legal term meaning "[a]n order that is dispositive of the entire case." *Final Order*, Black's Law Dictionary 1123 (7th ed. 1999). As discussed above, and in previous orders issued by this Court and the Seventh Circuit, the Parties' agreement resolving all claims in the Third Amended Complaint was by its terms a consent decree, rather than a private settlement agreement. Consent decrees operate as a final judgment, fully resolving the underlying matter. *See Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) (providing that "the date on which the consent decree was entered . . . is the date when all claims against all parties were resolved"). The Seventh Circuit has held that consent decrees under the PLRA are also considered final decisions of the district court. *Jones-El v. Berge*, 374 F.3d 541, 543 (7th Cir. 2004) ("The consent decree itself was a final decision for purposes of § 1291, even though, as a complex equitable decree, it lacks the trappings of a readily-identifiable-as-final money judgment."). As a result, any enforcement orders issued by a district court would be considered postjudgment orders and are treated as freestanding lawsuits. *Id.* at 541.

Under the terms of the Consent Decree entered on May 23, 2016, the Court's jurisdiction terminated three years after its approval date on May 23, 2019, for any provisions for which there

9

was no outstanding determination that the Defendants were not in substantial compliance. ECF No. 708-1, at 29–30 (§ XXIX(e)). During those three years, Plaintiffs filed a motion asking the Court to enter a preliminary injunction to enforce five areas of the Consent Decree that challenged Defendants' substantial compliance under the terms of the Consent Decree and the U.S. Constitution. *See* ECF No. 1559. These five areas included: (1) Mental Health Evaluations; (2) Treatment Planning; (3) Medication Management; (4) Mental Health Treatment in Restricted Housing/Segregation; and (5) Mental Health Treatment on Crisis Watch. *Id.* Plaintiffs' enforcement proceedings resulted in the Court entering a preliminary injunction on May 25, 2018, which Plaintiffs sought to convert to a permanent injunction less than a month later. *See* ECF Nos. 2070, 2112. The discovery, briefing, and evidence presented to the Court on those issues was extensive, as set forth in the record, and the merits of Plaintiffs' claims were fully litigated before the Court entered the Permanent Injunction Order.

The issuance of a permanent injunction involves a bench trial on the merits, followed by findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1), and the entry of a final order granting or denying the requested relief. *See Permanent Injunction*, Black's Law Dictionary 788 (defining "permanent injunction" as "[a]n injunction after a final hearing on the merits"). In contrast, preliminary injunctions are interlocutory orders entered when the plaintiff faces a great danger of irreparable injury before a permanent injunction can be issued on the merits. *See Preliminary Injunction*, Black's Law Dictionary 1123.

Here, following a bench trial on the merits, the Court entered the Permanent Injunction Order, which incorporated the findings of noncompliance the Court made in issuing the preliminary injunction, and resolved the five areas of noncompliance and ongoing violation of Plaintiffs' constitutional rights on a final basis. *See* ECF No. 2633. The Court also made the

appropriate findings for relief under the PLRA. *Id.* A month later, on May 23, 2019, the Court's jurisdiction terminated with respect to all other provisions of the Consent Decree because there was "no outstanding determination that Defendants [were] not in substantial compliance." *See* ECF No. 708-1 at 29–30 (§ XXIX(e)). Furthermore, the Court did not enter an order extending its jurisdiction beyond the May 23, 2019 date, as required under § XXIX(e) of the Consent Decree. *Id.* (providing that the Court's jurisdiction may be extended "for a period *to be ordered by the Court* for not more than two (2) years from the date of the Court's findings that Defendants are not in substantial compliance") (emphasis added).

While the Permanent Injunction Order was pending on appeal, the parties entered into the Amended Consent Decree on June 9, 2020. *See* ECF No. 3051. The Amended Consent Decree expired by its terms on April 23, 2021, over provisions for which the Court found the Defendants were in substantial compliance, and could be extended for two years over provisions for which no such findings had been made. *Id.* The Amended Consent Decree, however, was problematic for two reasons.

First, it appears that the Court's jurisdiction had already terminated under the terms of the Consent Decree over a year earlier, on May 23, 2019. *See Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002) (9th Cir. 2002) (finding the district court properly limited the scope of a consent decree to its terms)). Furthermore, even if this Court's jurisdiction had extended over the five areas that were the subject of the Permanent Injunction Order, those areas were on appeal, divesting this Court of jurisdiction. *See Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, (1982)) ("[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the

11

court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

In addition to these jurisdictional issues, the PLRA requirements under § 3626(a) to amend a Consent Decree were not made. *See* ECF No. 3057; *see also* 18 U.S.C. § 3626(b)(2) (providing that in a civil action, with respect to prison conditions, a defendant is entitled to the "immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right"). Thus, because the Court's jurisdiction under the Consent Decree expired on May 23, 2019, no order extending the Consent Decree was issued, and the Amended Consent Decree was entered after the Court's jurisdiction had lapsed (and without proper PLRA findings), the Court's jurisdiction terminated at this time following the Seventh Circuit's reversal of its noncompliance findings.

Furthermore, assuming *arguendo* that the Court had jurisdiction to enter the Amended Consent Decree, and that it complied with the PLRA, any extension of jurisdiction beyond the Amended Consent Decree's April 23, 2021 expiration date was invalid because each extension of jurisdiction required findings of an ongoing violation of Federal rights under the PLRA. Section 3626(b) of the PLRA provides that a party may modify relief under the PLRA, which includes a consent decree, "to the extent that modification or termination would otherwise be legally permissible." 18 U.S.C. § 3626(b)(4). The PLRA's prospective relief provisions require that the relief must extend no further than necessary to correct a violation of a Federal right. 18 U.S.C. § 3626(a). Importantly, these provisions apply to a motion to extend jurisdiction over a consent

decree. *Hallett v. Morgan*, 296 F.3d at 743 (holding that "the district court properly applied the PLRA's prospective-relief provisions apply to Plaintiffs' a motion to extend jurisdiction").

Here, each extension relied solely on alleged noncompliance lifted from the monitor reports and did not include the relevant PLRA findings. Additionally, shortly after the Court granted extensions of its jurisdiction over the Amended Consent Decree, the Seventh Circuit reversed the Court's findings of noncompliance based on constitutional violations of the Eighth Amendment. The Seventh Circuit's ruling, therefore, reversed the Court's determinations of noncompliance and violations of Federal rights, and accordingly, reversed the only areas of jurisdiction that survived past the expiration of the Consent Decree. At bottom, this left the Parties with no live case or controversy because no outstanding violation of a Federal right remained pending. *See United States v. Texas*, 143 S. Ct. 1964, 1969 (2023) (noting that to establish that a case or controversy exists, a plaintiff must show an injury that was in fact caused by defendant and redressable by a court order). As a result, Plaintiffs no longer had standing to pursue these claims in federal court. *See* U.S. Const., art. III, § 2, cl. 1; *see also Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) (holding a plaintiff has standing to bring a claim in federal court only if he can demonstrate that he has suffered an injury in fact caused by defendants, and the remedy he seeks is likely to be address the injury).

Ultimately, on July 21, 2022, the Court recognized the lack of an ongoing violation and declined to extend its jurisdiction any further over the Consent Decree. *See* ECF No. 3597 at 7–9 (noting that Plaintiff submitted only monitor reports alleging noncompliance and no party submitted PLRA findings). At this time, the Court's subject matter jurisdiction unquestionably ended. *See Corey H. v. Chicago Bd. of Educ.*, 528 F. App'x 666, 668–69 (7th Cir. 2013) (holding that because the consent decree expired, there was no controversy, and the case was moot); *see*

*also Ass'n for Disabled Am., Inc. v. Publix Super Mkt., Inc.*, No. 98-CV-00917, 2023 WL 3741102, at *4 (S.D. Fla. May 3, 2023) (providing that following expiration of consent decree, the case should be dismissed with prejudice).

Despite it being clear that the Court no longer has subject matter jurisdiction, Plaintiff argues the Court has jurisdiction because the appeal was taken on an interlocutory basis, the Consent Decree was potentially invalid when enforced, the parties agreed upon a return to the active docket, and without jurisdiction, the Plaintiffs are unable to fully adjudicate their claims. Each of these arguments is unpersuasive.

*First*, Plaintiffs argue that the Consent Decree cannot be understood as a final judgment because their appeal of the Permanent Injunction Order was taken on an interlocutory basis. *See* ECF No. 3741, at 5. As discussed above, however, a consent decree acts as a final judgment, despite bearing attributes of a contract. *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986) ("The question is not whether we can label a consent decree as a 'contract' or a 'judgment,' for we can do both."); *Carver*, 169 F.3d at 472 (7th Cir. 1999). Further, a permanent injunction involves entry of a final order, and relief taken after consent decrees is generally described as postjudgment. *See Rufo*, 502 U.S. at 378; *Carver*, 169 F.3d at 472.

Additionally, the Seventh Circuit did not describe the appeal as interlocutory in their mandate, or otherwise treat the appeal as interlocutory. *See* ECF Nos. 3560-1, 3650-3. Instead, the Seventh Circuit noted that they "consolidated the appeals and focused on the April 22, 2019 *final order*," and further, noted that this Court "issued a slightly modified order in response to IDOC's *postjudgment* motion and a *final order*" under Fed. R. Civ. P. 65(d). *Rasho*, 22 F.4th at

14

708 n.4 (emphasis added).  Furthermore, the Seventh Circuit has previously addressed this argument, stating:

> It is true that the consent decree, though in a sense interlocutory because it contemplated continued proceedings in the district court to effect compliance with the regulatory terms of the decree, was a final decision for purposes of section 1291. It wound up the suit, and the fact that it was a complex equitable decree rather than a simple money judgment, and that it was entered by consent, did not take it out of the class of final judgments.

*Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 839–40 (7th Cir. 2021).  Therefore, this Court had only postjudgment jurisdiction to enforce the Consent Decree for as long as it remained in effect.

***Second***, Plaintiffs' arguments that the Court retained jurisdiction in the event that the Consent Decree was unenforceable is similarly unpersuasive.  ECF No. 3741 at 11.  The Seventh Circuit did not invalidate the Consent Decree itself in its reversal order, and courts have held that an order vacating prospective relief (*e.g.*, the injunctive relief and compliance), does not vacate or otherwise terminate the underlying consent decree.  *See Jones-El v. Berge*, 374 F.3d at 545; *see also Gilmore v. People of the State of California*, 220 F.3d 987, 1000–02 (9th Cir. 2000) ("Reading the statute as such, the [PLRA] termination provisions do not require the termination of consent decrees or any other final judgments of Article III courts.  The provisions apply exclusively to prospective relief, limiting the scope of federal jurisdiction to enforce the prospective aspect of final judgments in prison conditions cases.").

***Third***, even if the Consent Decree was unenforceable as a matter of law, Plaintiffs could have sought postjudgment relief to modify or terminate the Consent Decree prior to the Court expressly declining to extend its jurisdiction over the Consent Decree in its July 21, 2022 order. *See, e.g.*, *Ass'n for Disabled Am., Inc.*, 2023 WL 3741102, at *4 ("Federal Rule of Civil Procedure 60 permits a litigant to petition the Court to modify or terminate a consent decree."); *James v. Lash*, 965 F. Supp. 1190, 1196–97 (N.D. Ind. 1997) (same).  Plaintiffs argue that they did not do

so because they had entered into a proposed negotiation plan with the Defendants at that time. *See* ECF No. 3580. Yet, Plaintiffs simultaneously sought to enforce the provisions of the Consent Decree through an extension of this Court's jurisdiction. Additionally, the Seventh Circuit did not claim that the underlying Consent Decree was invalid, and the Court provided for prospective relief entered in the form of the injunctions that complied with the restrictions under the PLRA.

***Fourth***, Plaintiffs contend that the Court was free to continue to exercise jurisdiction and return the case to the active docket because the parties agreed to terminate the Consent Decree a day after the Court issued its order declining to extend its jurisdiction. *See* ECF No. 3741, at 8–10. Yet, the Consent Decree had expired before the parties agreed to its termination. *See* ECF No. 3597. Any right to return the matter to the trial docket survived only as long as the Consent Decree did. *See Ass'n for Disabled Am., Inc.*, 2023 WL 3741102, at *4 ("The Court has no jurisdiction to extend (or revive) a consent decree that has already expired."). Additionally, a court's subject matter jurisdiction cannot be forfeited or waived upon agreement of the parties. *See Arbaugh*, 546 U.S. at 514; *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (providing that the parties cannot confer subject matter jurisdiction upon a federal court).

***Finally***, Plaintiffs argue that the dismissal for lack of jurisdiction deprives them of their opportunity to litigate their claims. ECF No. 3741 at 11–13. Consent decrees, however, expire by their own terms and parties who enter into consent decrees waive the right to litigate certain issues. *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). ("Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation."). Further, the Court's findings do not limit the

Plaintiffs' ability to seek relief for the newly added claims in the Fifth Amended Complaint. *See Magnus Elec. v. La Republica Argentina*, 830 F.2d 1396, 1400 (7th Cir. 1987) ("A judgment dismissing a suit for lack of jurisdiction does not preclude a party from litigating the same cause of action in a court of competent jurisdiction . . . however, it does preclude relitigation of the issue of whether the first tribunal had jurisdiction.") (internal citations omitted). Thus, Plaintiffs' claims for new and ongoing violations may be the subject of a new suit, regardless of this Court's loss of subject matter jurisdiction.

## CONCLUSION

The Court assumes ultimate responsibility for the erroneous developments in this case and apologizes for those errors. At the time, all parties, counsel, and the Court were making a good faith effort to resolve serious issues concerning the treatment of severely mentally ill inmates within IDOC. However, for the reasons stated above, the Court must ORDER that this action be DISMISSED WITH PREJUDICE with respect to the claims embodied in the Consent Decree and DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction with respect to the newly added claims embodied in the Fifth Amended Complaint, with each party to bear its own costs. The Clerk is directed to close the case.

ENTERED this 23rd day of October, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge