E-FILED
Thursday, 29 January, 2026  10:25:56 AM
Clerk, U.S. District Court, ILCD

IN THE
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

PATRICE DANIELS, et al.,
      Plaintiffs,

v.

LATOYA HUGHES, Director of the
Illinois Department of Corrections, in
her official capacity, et al.,
      Defendants.

Case No. 1:07-cv-01298-JEH-RLH

**Order**

      Now before the Court is the Defendants' Motion to Dismiss and Close Case as Moot (D. 3788), the Plaintiffs' Brief in Support of Resuming Proceedings on Fifth Amended Complaint (D. 3791), and the Defendants' Reply in Further Support of Motion to Dismiss and Close Case as Moot (D. 3792).[1]  For the reasons set forth *infra*, the Defendants' Motion to Dismiss and Close Case as Moot is GRANTED.

**I**

      This case, originally filed by a *pro se* prisoner – Ashoor Rasho – on November 7, 2007, has a long and winding procedural history.[2]  Rasho originally raised claims related to mental health care against Illinois Department of Corrections (IDOC) officials.  Rasho obtained counsel in November 2008, and, in May 2009, the case became a class action "on behalf of all mentally ill inmates who are now or will be incarcerated in IDOC adult correctional centers[]".  Pls.' Am. Class Action

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] That background is set forth in several instances including, somewhat more recently, in the Court's September 18, 2023 and October 23, 2023 Orders (D. 3739 & D. 3745) as well as the Seventh Circuit's opinion in *Daniels v. Hughes*, 147 F.4th 777 (7th Cir. 2025).  The Court here notes that reassignment of this case was made to the undersigned on August 20, 2025.  *See* 8/20/2025 Text Order of Reassignment (Darrow, C.J.).

Compl. (D. 54 at ECF p. 1). The Court preliminarily certified, pursuant to a stipulated motion, a class for settlement purposes in May 2011. The parties engaged in settlement discussions thereafter.

On May 8, 2013, the Court entered an Agreed Order (D. 132) (Interim Order) "to facilitate a consent decree in this matter." Interim Order (D. 132 at ECF p. 1). That Order, expressly identified therein by the parties as interim, "require[d] certain actions by the [IDOC] and include[d] selection of a monitor." *Id.* The Interim Order included a dispute resolution section which provided, among other things, "If legal action is pursued, it shall be brought in the form of a motion to enforce any terms of this Order." *Id.* at ECF p. 7. In July 2015, after speaking with counsel and permitting counsel to confer, the Court determined the parties were abandoning settlement and would proceed with litigation. *See* 7/7/2015 Min. Entry. On August 14, 2015, the Court certified a class pursuant to Federal Rule of Civil Procedure 23(b)(2) for purposes of litigation. The Plaintiffs filed their Third Amended Class Action Complaint (D. 260) on September 9, 2015. The case was set for trial on January 5, 2016. However, on December 17, 2015, the Court held a discussion with the parties regarding a proposed Class Action Settlement Agreement. *See* 12/17/2015 Min. Entry.

The Court received a final copy of the parties' Settlement Agreement on December 21, 2015, made the preliminary determination that it was "a fair, adequate and reasonable resolution of this action[]" on December 22, 2015, and set a fairness hearing for May 13, 2016. 12/22/2015 Order (D. 290 at ECF pp. 1-2). As the Defendants summarize, the Settlement Agreement "provided for comprehensive reforms to [IDOC's] mental health delivery system, along with specific and detailed requirements governing mental health treatment, staffing, bed/treatment space, medication administration, housing assignments,

2

segregation, crisis care, and more." Defs.' Mot. to Dismiss (D. 3788 at ECF p. 6) (citing D. 346-1).

Section I.f of the parties' Settlement Agreement provided:

> Without conceding any infirmity in their claims or defenses, after extensive discovery, the parties have engaged in arms length negotiations to resolve the claims raised by this action as set forth in Plaintiffs' Third Amended Complaint. Plaintiffs and Defendants have reached an agreement for settling this litigation that the parties believe is fair, reasonable, and adequate to protect the interests of all parties. The Parties believe that this Settlement Agreement will benefit mentally ill offenders who are confined in correctional facilities under Defendants' control.

Settlement Agreement (D. 346-1 at ECF p. 2). This exact same language appeared in subsequently filed versions of the Settlement Agreement. *See, e.g.,* (Docs. 696, 707-1, 708-1, 711-1, 3024-1, and 3047-2). On April 29, 2016, the Plaintiffs filed their unopposed Memorandum in Support of Approval of Class Action Settlement (D. 682) in which they stated, "The proposed Settlement Agreement is comprehensive and addresses all of the claims in the Third Amended Complaint . . . ." (D. 682 at ECF p. 4). On May 23, 2016, the Court found as to the parties' Settlement Agreement (D. 711-1):

> The Settlement Agreement . . . is a fair, reasonable, and adequate resolution of the claims. In the interests of comity the Court must respect the need to provide the Defendants with the time provided in the settlement to fulfill the obligations undertaken.
> Concomitantly in the interest of fairness to the class, the Court must continue to provide a forum to address issues of compliance and performance of the terms of the Settlement. Without the Court's participation, the settlement would not be fair and reasonable. Consequently this matter will remain on the Court's docket until the terms of the Settlement Agreement are met. At that time, this matter will be dismissed with prejudice.

5/23/2026 Order (D. 710).

3

The parties agreed to a specific process for dispute resolution in the event the Plaintiffs "believe[d] that the Defendants [were] not in substantial compliance with any provision of this Settlement Agreement . . . ."  Settlement Agreement § XXIX.a (D. 711-1 at ECF p. 29).  Among other details of that process, in the event they were unsuccessful in their efforts to resolve their dispute, the parties could "jointly or individually seek relief from the Court to effect substantial compliance with the Settlement Agreement, but not through a petition for contempt[]".  *Id.* at § XXIX.d.  In the context of dispute resolution relating to the Settlement Agreement's enforcement, the Settlement Agreement provided for the return of this case to the "active docket" under two described circumstances:  one pertaining to obligations that were "budget contingent" and one where the Plaintiffs contended the Defendants had not complied with an order entered under the preceding paragraphs of the dispute resolution section of their Settlement Agreement.  *Id.* at §§ XXIX.d and XXIX.i (D. 711-1 at ECF pp. 29, 30).

Beginning in late 2017[3], the Plaintiffs pursued enforcement motions which eventually led to the Defendants' appeal of the Court's enforcement orders. The parties negotiated substantive amendments to the Settlement Agreement in May 2020 – appearing in their "Corrected Second Amended Settlement Agreement" (D. 3047-2) – which amended the termination provision of the Agreement, and the Court twice more amended the termination date of its jurisdiction.  In January 2022, the Seventh Circuit reversed and vacated the Court's 2018 and 2019 injunction orders in their entirety.  In June 2022, the parties filed "Parties' Proposed Plan for Negotiations" (Negotiation Plan) in which they stated, among other things:

---

[3] From here, the Court summarily provides the procedural history of this case in light of the fact that it has otherwise been abundantly set forth in the parties' briefs currently before the Court, in the Court's previous orders and opinions, and the Seventh Circuit's *Daniels* opinion.

> The parties have agreed to enter a period of negotiations lasting until July 22, 2022 (the "Negotiation Period") in order to chart an agreed path forward in the above-captioned action and resolve ongoing disputes regarding Plaintiffs' allegations that Defendants are not in substantial compliance with the Corrected Second Amended Settlement Agreement, ECF 3047-2 (the "Settlement Agreement") and/or federal law. During the Negotiation Period, the parties will convene a series of meetings on the different topics at issue, with the goal of resolving these issues through a new consent decree and/or private settlement agreement consistent with the requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626. The parties agree to discuss which aspects of the Settlement Agreement would continue past July 22, 2022, as part of a new consent decree and/or private settlement agreement.

Negotiation Plan (D. 3580 at ECF p. 1). On July 20, 2022, the parties informed the Court they were at an impasse in their negotiations. 7/20/2022 Min. Entry. On July 21, 2022, the Court denied the Plaintiffs' January 2022 Motion to Extend Jurisdiction of Settlement Agreement (D. 3484), denied as moot three of the Plaintiffs' Motions for Contempt filed between November 2019 and October 2020 (D. 2790, 3078 & 3176), and returned this case "to the active docket for scheduling." 7/21/2022 Op. and Order (D. 3597 at ECF p. 12).

In September 2022, the Plaintiffs obtained leave to file their Fourth Amended Class Action Complaint (D. 3641) in which they added the Governor of Illinois as a defendant, an equal protection claim alleging that class members of color were treated differently than similarly situated white counterparts, and a due process claim. The Defendants' motion to dismiss that Fourth Amended Complaint was granted in part. In May 2023, the Plaintiffs filed a Fifth Amended Class Action Complaint (D. 3702), and the Defendants moved to dismiss all claims against the Governor and the Plaintiffs' procedural due process and equal protection claims. In August 2023, the Plaintiffs filed a Motion for Preliminary Injunction for Urgent Relief for Class Members Held at the Northern Reception

Center and in Need of a Higher Level of Mental Health Care (D. 3723), the Defendants sought to strike the motion and otherwise opposed it (D. 3726), and the Court held several status hearings with regard to the Motion for Preliminary Injunction.

On September 18, 2023, the Court stated it had "concerns relating to jurisdiction and standing that must be addressed before further proceeding with this case; specifically, in light of the previously entered Consent Decree, the subsequent orders entered declining to extend jurisdiction, and the Seventh Circuit's mandate reversing and vacating this Court's permanent injunction."[4] Jurisdictional Order (D. 3739 at ECF p. 1). The Court stayed the case to permit the parties to brief the issue and for the Court to address the issue. On October 23, 2023, the Court determined that its subject matter jurisdiction "unquestionably ended" on July 22, 2022 when it "recognized the lack of an ongoing violation and declined to extend its jurisdiction any further over the Consent Decree."[5] 10/23/2023 Op. and Order (D. 3745 at ECF p. 13). The Court ordered this action dismissed with prejudice with respect to the claims embodied in the Settlement Agreement (those in the Third Amended Class Action Complaint) and without prejudice for lack of subject matter jurisdiction with respect to the newly added claims embodied in the Fifth Amended Class Action Complaint. *Id*. at ECF p. 17. Judgment was entered in this case on October 24, 2023.

---

[4] The Settlement Agreement at the center of everything at present (January 2026) was at that time referred to as the parties' "Consent Decree". In the Seventh Circuit's August 2025 Opinion, it stated, "For our purposes . . . the distinction between a consent decree and private settlement agreement (under the Prison Litigation Reform Act or otherwise) is largely irrelevant. Even if a settlement agreement is enforceable as a judicial decree, rather than as a private agreement, the agreement 'is to be construed for enforcement purposes basically as a contract . . . .'" *Daniels*, 147 F.4th at 783 (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975)).

[5] The Court stated its recognition in a July 21, 2022 Opinion and Order (D. 3597). It had earlier stated, in its February 11, 2022 Unopposed Order Extending Court Jurisdiction Over Settlement Agreement (D. 3508), that it would continue to maintain its jurisdiction over certain sections of the Settlement Agreement until July 22, 2022.

The Court denied the Plaintiffs' two post-judgment motions, and the Plaintiffs appealed the October 24, 2023 judgment on November 1, 2023. On April 16, 2025, certain class members here, including named Plaintiffs Patrice Daniels and Jasmine (Joseph) Herman, filed a duplicative putative class action in the U.S. District Court for the Northern District of Illinois, *Hilliard v. Hughes*, No. 1:25-cv-04117 (N.D. Ill.). Their class counsel includes there, as here, Equip for Equality and Uptown People's Law Center. In that case, the plaintiffs request, among other things, a permanent injunction directing the defendant, Latoya Hughes, Director of IDOC, "to provide constitutionally adequate mental health treatment and to avoid discrimination on the basis of mental health disability[]". *Hilliard*, No. 1:25-cv-04117, at (D. 1 at ECF p. 50).

On August 8, 2025, the Seventh Circuit reversed this Court's dismissal of this action for lack of subject matter jurisdiction and remanded this case "for the court to determine whether the parties' settlement agreement moots the underlying claims and any further proceedings consistent with the [Seventh Circuit's] opinion." 8/8/2025 Final J. (D. 3785 at ECF p. 17). Following remand, the Court held a status conference on September 26, 2025, discussing with the parties the Seventh Circuit's August 2025 opinion. 9/26/2025 Min. Entry. The Court directed the parties to brief the questions posed by the Seventh Circuit's opinion and to confer regarding the overlap between this case and the *Hilliard* case in the Northern District. On October 17, 2025, the Defendants filed the instant Motion to Dismiss and Close Case as Moot arguing that ultimately, the Plaintiffs seek to evade their commitment made in 2016 via a signed class action "Settlement Agreement" to settle this litigation, and they improperly ask the Court to extend this case into its third decade. They argue the Settlement Agreement's plain language, extrinsic evidence, and the consequences of alternative constructions support the dismissal of the Plaintiffs' claims as moot.

## II

As the Seventh Circuit explained, "A binding settlement agreement generally moots a case." *Daniels*, 147 F.4th at 785 (citing *Selcke v. New England Ins. Co.*, 2 F.3d 790, 791-92 (7th Cir. 1993)). The wrinkle here, as that court highlighted, is that the Plaintiffs and Defendants litigated this case from July 2022 to September 2023 without anyone, the Court included, pointing out the Settlement Agreement as precluding such litigation. To determine whether the parties' 2016 Settlement Agreement deprives the Plaintiffs of a legally cognizable interest in the outcome of their underlying claims, the Court must rely upon principles of contract interpretation. *Id.* at 787. State law governs the Court's interpretation of the parties' Settlement Agreement. *Id.* at 784.

"In construing a contract, the primary objective is to determine and give effect to the intentions of the parties at the time they entered into the contract." *Tranzact Techs., Ltd. v. Evergreen Partners, Ltd.*, 366 F.3d 542, 546 (7th Cir. 2004) (quoting *Ancraft Prods. Co. v. Universal Oil Prods. Co.*, 427 N.E.2d 585, 588 (Ill. App. Ct. 1981)). "The language of the contract, 'given its plain and ordinary meaning, is the best indication of the parties' intent.'" *Lakeview Collection Inc. v. Bank of Am., N.A.*, 942 F. Supp. 2d 830, 842 (N.D. Ill. 2013) (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)).

Here, the parties' Settlement Agreement stated "the parties have engaged in arms length negotiations *to resolve the claims raised by this action* as set forth in Plaintiffs' Third Amended Complaint[]" and that "Plaintiffs and Defendants *have reached an agreement for settling this litigation* that the parties believe is fair, reasonable, and adequate to protect the interests of all parties." Settlement Agreement § I.f (D. 711-1 at ECF p. 2) (emphasis added). The plain and ordinary meaning of that language is that the parties were settling this action in its entirety, and that agreement to settle became effective immediately on the date the Court

8

approved it.  *See* Settlement Agreement § XXXII.b.ii (D. 711-1 at ECF p. 32) ("Unless otherwise indicated, the term of this Settlement Agreement shall commence upon the date of approval by the Court.").

The Plaintiffs argue the Settlement Agreement did not moot their claims because its terms were never met.  Per Plaintiffs, to become final, the Settlement Agreement required court findings that the Defendants had substantially complied with its terms, a condition Plaintiffs say was never met.  The Plaintiffs focus upon the terms of the Settlement Agreement which provided for the possibility of returning the case to the "active docket", the setting of a trial date, and the Court's possible application of equitable principles.  They argue the Settlement Agreement did not contain a release or waiver of claims, and on that basis alone, the Court should reject the Defendants' attempt to rewrite the Agreement to conclude that the claims are moot.  The Plaintiffs cite no authority, and certainly no Illinois cases, which states a release must be expressly included in a settlement agreement.  They parse Section I.f of the Settlement Agreement, arguing "negotiations to resolve claims" does not indicate they surrendered the right to litigate the underlying claims if the Defendants failed to perform.  Pls.' Brief (D. 3791 at ECF p. 17).  That argument is a non-starter where Section I.f goes on to state the parties "reached an agreement for settling this litigation".  They say courts are required to give "meaning and effect to every provision" of a contract and "must not reject contractual language as meaningless[]", yet the latter is exactly what they propose via the foregoing arguments.  Pls.' Brief (D. 3791 at ECF p. 13) (quoting *Platt v. Gateway Int'l Motorsports Corp.*, 813 N.E.2d 279, 283 (Ill. App. Ct. 2004)).

The Court is wholly unconvinced by the Plaintiffs' arguments that the parties did not intend to settle this case in full when they each signed, and the Court approved, their Agreement containing the language in Section I.f.  The

9

Court need not resort to extrinsic evidence in light of that express language. *See Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("If the contract language is ambiguous, a court can consider extrinsic evidence to determine the parties' intent.").

The Settlement Agreement presented intervening circumstances which mooted all of the Plaintiffs' claims. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009))). To remove any doubt, the Court underscores that this finding extends to all of the Plaintiffs' claims included in this case – those in the Third Amended Class Action Complaint controlling at the time of the parties' 2016 Settlement Agreement and those in the Fifth Amended Class Action Complaint. As there was no longer a controversy between the parties about the Plaintiffs' legal rights following execution of the Settlement Agreement in May 2106, the later filed Fifth Amended Class Action Complaint was a non-starter.

## III

The Seventh Circuit pressed that even if this Court determines on remand (as it now has) that the Settlement Agreement mooted the claims in this case, that would "not necessarily resolve the mootness issue." *Daniels*, 147 F.4th at 787. The Seventh Circuit went on, "If the parties agreed to modify or rescind the settlement agreement when they agreed to return this case to the district court's 'active trial docket,' this could justify Rule 60(b)(6) relief from a judicial decree embodying the settlement agreement." *Id.* As for the parties' subsequent behavior, they certainly conducted themselves as *if* they had agreed to modify that Agreement, but they

10

all labored under a mutual mistake. In reality, the parties never did arrive at a modified agreement.

"A valid modification must satisfy all criteria essential for a valid contract, including offer, acceptance, and consideration." *Ross v. May Co.*, 880 N.E.2d 210, 215 (Ill. App. Ct. 2007) (quoting *Nebel, Inc. v. Mid-City Nat'l Bank of Chi.*, 769 N.E.2d 45, 51 (Ill. App. Ct. 2002)). "[N]o contract can be modified [or amended] in *ex parte* fashion by one of the contracting parties without the knowledge and consent of the remaining party to the agreement." *Id*. (quoting *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180, (Ill. App. Ct. 2004)).

Indeed, the parties had the case put back on the active docket, the Plaintiffs filed a fourth and then a fifth amendment complaint, the Defendants challenged those amended complaints, etcetera. But the case was put back on the active docket because the parties had *disagreements* for which they sought court intervention. Notably, the case was put back on the active docket following the parties' failure to reach a new agreement pursuant to their Negotiation Plan. Their motions and briefs identified where they had *differences* as to what constituted "substantial compliance" under the Settlement Agreement, and where the Court could or could not order particular relief in light of the Settlement Agreement. In other words, basic Illinois contract principles show there was no actual modified agreement. While "[p]arties to a contract are generally free to modify the contract by mutual assent or agreement," the parties' conduct here, for a long time after they entered into the Settlement Agreement in May 2016, demonstrates anything but mutual assent. *Richard W. McCarthy Tr. Dated Sep. 2, 2004 v. Ill. Cas. Co.*, 946 N.E.2d 895, 902 (Ill. App. Ct. 2011); *see also Arbogast v. Chi. Cubs Baseball Club, LLC*, 194 N.E.3d 534, 543 (Ill. App. Ct. 2021) ("For a course of conduct to act as consent to a contract, it must be clear that the conduct relates to the specific contract in question."). Nor was any purported modification "ratified by acquiescence in a

11

course of conduct consistent with the existence of that modification[]", as again indicated by the parties' filings from especially July 2022 onward. *Corrugated Metals, Inc. v. Indus. Comm'n*, 540 N.E.2d 479, 484 (Ill. App. Ct. 1989).

Furthermore, even assuming there was a modified agreement with assent and acquiescence from Plaintiffs and Defendants, the terms of that modified agreement are totally unclear. For that reason, the modified agreement is unenforceable for lack of specificity. *See Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987) ("The essential terms of a contract must be definite and certain in order for a contract to be enforceable."). The parties appear to have proceeded under different modified agreement terms, evidencing that the essential terms of any modified agreement were not definite or certain. As the First District Illinois Appellate Court explained:

> Even assuming that each party admitted that there was a contract they believed to be binding, that does not remove from the court's purview the question whether the Agreement was a valid and enforceable contract . . . Although the parties manifested the intent to make a contract, if the contract is unduly uncertain and indefinite, there is no contract for a court to enforce . . . When a contract appears incomplete or ambiguous on its face, the parol evidence rule permits evidence extrinsic to the contract to establish additional terms, so long as those terms are consistent with the contract itself . . . However, where the evidence suggests that a material aspect of the contract has not been decided upon, courts ordinarily refuse to supply the missing term.

*Set Env't, Inc. v. Power Cartage, Inc.*, 225 N.E.3d 632, 640-41 (Ill. App. Ct. 2022) (internal citations omitted). Here, any purported modified agreement is incapable of being enforced in the absence of provisions which "enable the court to determine what exactly the parties have agreed to." *Seiden Law Grp., P.C. v. Segal*, 202 N.E.3d 343, 351 (Ill. App. Ct. 2021). Under these circumstances, it cannot be

that this case was somehow resurrected by reason of the parties' mutual mistake in how they proceeded as belatedly as July 2022 and onward.

The Court's conclusion does not mean the Plaintiffs are without recourse. The *Hilliard* case, brought by a class of plaintiffs including some of the named Plaintiffs here, complaining of the same types of injury as in the Plaintiffs' Fifth Amended Class Action Complaint here, and seeking much the same relief as the Plaintiffs did and do here, remains pending in the Northern District. *See Hilliard*, No. 1:25-cv-04117 (N.D. Ill.) (the latest filing, dated January 23, 2026, being the plaintiffs' sur-reply to the defendant's motion to dismiss). Also, the Seventh Circuit left open the possibility that relief pursuant to Federal Rule of Civil Procedure 60(b)(6) may provide an avenue for litigating the underlying, currently moot claims in *this* litigation. The Plaintiffs have not filed a motion pursuant to Rule 60(b)(6), and their argument as to a motion to file an amended pleading under Federal Rule of Civil Procedure 15(a) being construed as a Rule 60(b) motion loses the plot. There is no motion to file an amended pleading pending in this case, and rightly so, as this Court was tasked with first determining whether the parties' settlement agreement moots the underlying claims and it limited the parties' briefing on remand accordingly. *Daniels*, 147 F.4th at 787. This Court will not look backwards to February 2023 when it granted Plaintiffs, pursuant to Federal Rule of Civil Procedure 15(a)(2), 21 days to file a further amendment complaint (the resulting Fifth Amended Class Action Complaint). Additionally, the Seventh Circuit identified only Rule 60(b)(6) as a possible "avenue for relitigating the underlying claims." *Id.*

## IV

One final point warrants discussion. Undeniably, and as detailed earlier, under ordinary contract principles, the parties can later modify their contract by mutual assent. *Urban Sites of Chi., LLC v. Crown Castle USA*, 979 N.E.2d 480, 493

13

(Ill. App. Ct. 2012).  "A modification of a contract is a change in one or more aspects of it that introduces new elements into the details or cancels some of them but leaves the general purpose and effect of the contract intact."  *F.R.S. Dev. Co., Inc. v. Am. Cmty. Bank and Tr.*, 58 N.E.3d 26, 32 (Ill. App. Ct. 2016) (citing *Richard W. McCarthy Tr.*, 946 N.E.2d at 902)).  A contrary finding could have been reached in this case – that the parties *did* modify their agreement and did so by simply agreeing to relitigate.  But any given set of parties' power to later modify their contract cannot be unlimited, and the context of settlement agreements more than proves that point.

In its Order (D. 710) finding the parties' Settlement Agreement "a fair, reasonable, and adequate resolution of the claims[]", the Court ended by stating that upon the terms of the Settlement Agreement being met, "this matter will be dismissed with prejudice."  5/23/2016 Order (D. 710 at ECF p. 1).  That language was submitted by the Plaintiffs' counsel in an unopposed proposed order.  Thus, the parties signaled to the Court that their agreement was, in fact, for the Court to dismiss this case with prejudice as the ultimate result of their Settlement Agreement.  Black's Law Dictionary defines "with prejudice" as follows:  "With loss of all rights; in a way that finally disposes of a party's claim and bars any future action on that claim . . . ."  *with prejudice*, BLACK'S LAW DICTIONARY (12th ed. 2024).  The parties' respective conduct pursuant to the Settlement Agreement indicates the confidence they placed in that document.  Following the Settlement Agreement's execution and its approval by the Court, IDOC expended nearly $300 million in expenses in the first two years in implementing what was required of it under the Settlement Agreement.  The Plaintiffs, meanwhile, without hesitation, returned to court as they felt necessary to ensure the Settlement Agreement's enforcement.

To now say that the parties here modified their Settlement Agreement by possessing and exercising their ability to merely tell the Court to put the case back into play topples what is otherwise to be achieved by a settlement agreement. A federal district court entered an order ending this case – an order sought by *all* the parties who represented their Settlement Agreement to be a "resolution of the claims" in this case. 5/23/2016 Order (D. 710 at ECF p. 1). For the parties to come back to that federal district court with an expectation of resurrecting and otherwise relitigating this case is not enough. *See Daniels*, 147 F.4th at 785 ("When a settlement agreement resolves all claims against all parties, there is no longer a controversy between the parties about the plaintiffs' legal rights."). Indeed, there are several principles to consider in the settlement context as conveyed in the mootness doctrine as well as the Federal Rules of Civil Procedure. As for the former, the Court need not belabor the point where the Seventh Circuit reiterated in this very case: Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies", a binding settlement agreement generally moots a case, and a moot action is no longer a "Case" or "Controversy". U.S. CONST. art. III, § 2. As for the latter, Federal Rule of Civil Procedure 23 requires the court's approval for the claims, issues, or defenses of a certified class or a class proposed to be certified for purposes of settlement to be settled, voluntarily dismissed, or compromised. FED. R. CIV. P. 23(e). "A motion to reconsider does not exist under the Federal Rules of Civil Procedure." *Scott v. Bender*, 948 F. Supp. 2d 859, 864 (N.D. Ill. 2013) (citing *Talano v. Northwestern Med. Fac. Found.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001)). Federal Rule of Civil Procedure 60(b) sets forth five specific reasons that a court may relieve a party or its legal representative from a final judgment, order, or proceeding and otherwise permits such relief only if the given reason justifies it. FED. R. CIV. P. 60(b)(1)-(6). As the Seventh Circuit stated, "Relief under the Rule 60(b)(6) catchall 'requires extraordinary circumstances.'" *Daniels*,

147 F.4th at 786 (quoting *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025)). All of this taken together reveals the Federal Rules of Civil Procedure exalt the interest in finality by zealously guarding it.

**V**

For the reasons set forth *supra*, the Defendants' Motion to Dismiss and Close Case as Moot (D. 3788) is GRANTED.  The Settlement Agreement the parties entered into and which the Court approved in May 2016 mooted the underlying claims in this case.  Accordingly, this case is now DISMISSED WITH PREJUDICE in its entirety.  The Clerk is directed to enter judgment and close this case.

*It is so ordered.*

Entered on January 29, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE